UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| RALPH NADER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:07-cv-01101-JCC-TCB |
| TERRY MCAULIFFE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION OF DEFENDANT STEVE RAIKIN
TO DISMISS THE AMENDED COMPLAINT OR,
<u>IN THE ALTERNATIVE, TO TRANSFER VENUE</u>**

Plaintiffs Ralph Nader and his supporters seek to invoke the federal jurisdiction of the United States courts to relitigate, in essence, the merits of various state court and administrative proceedings in 2004 that resulted in Nader failing to appear on the general election ballots of several states during the 2004 Presidential election. The gravamen of plaintiffs' complaint is that defendants and their co-conspirators pursued "unfounded and abusive litigation against the [Nader-Camejo 2004] campaign in 18 different states," Amended Complaint (Am. Compl.) ¶ 238, thereby committing the torts of malicious prosecution and abuse of process under the laws of the various states, and conspiracy to commit abuse of process and malicious prosecution. But to invoke the federal jurisdiction of this Court, plaintiffs graft on to their complaint federal claims alleging violations under 42 U.S.C. § 1983 and conspiracy to commit such violations. They neither name any state officials as defendants or as non-defendant co-conspirators, <u>see</u> Am. Compl. ¶¶ 23-46, nor allege any conduct constituting "state action" by private parties.

Plaintiffs' Amended Complaint should be dismissed. There is no allegation of state action sufficient to support the federal section 1983 claims or their invocation of federal jurisdiction. Any such section 1983-related claim, even if viable, would in any event be time-barred under the applicable two-year statute of limitations. Similarly, each of the state-law claims for abuse of process, malicious prosecution, and conspiracy—arising out of proceedings fully litigated in 2004—is time-barred under the governing two-year limitations period. Plaintiffs' allegations of conspiracy with respect to both the alleged section 1983 and state law violations are too conclusory to withstand a motion to dismiss. Finally, defendants have protected First Amendment rights to seek redress of the government to ensure that state statutory procedures for ballot access are followed, and thus their challenged conduct is not actionable under the *Noerr-Pennington* doctrine.

In the alternative, in the interests of justice, this Court should transfer this action pursuant to 28 U.S.C. § 1404(a) to the federal district court in the District of Columbia, where a substantively identical, first-filed complaint is pending. Virginia has minimal interest in having the dispute decided here. Although the two named defendants live in the Commonwealth, each of the plaintiffs does not, and the vast majority of the additional alleged co-conspirators are in the District of Columbia and have been named as defendants in that action but not here. None of the underlying state proceedings from 2004 being challenged herein involves Virginia in any way, or would require application of Virginia substantive law. Under these circumstances, concerns of judicial economy counsel against this Court trying allegations that are virtually identical to those being heard in the first-filed action in the District of Columbia.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs initially commenced the claims in this litigation in the Superior Court of the District of Columbia. On October 30, 2007, Plaintiffs filed a complaint in the District of Columbia against the Democratic National Committee (Defendant Terry McAuliffe's employer), The Ballot Project (Defendant Steve Raikin's employer), and ten other persons or entities that are named in the Amended Complaint in this Court to be non-defendant co-conspirators. *See* Am. Compl. ¶¶ 25-36. The complaint and claims were identical to those filed in this Court; indeed, the filing of the original complaint in this Court one day later, on October 31, 2007, seemed almost to be an after-thought as it was almost entirely a copycat of the D.C. complaint, even bearing an unchanged caption reading "In the Superior Court of the District of Columbia."

Apparently to avoid having the improperly-captioned complaint dismissed or stricken, Plaintiffs one day later filed the Amended Complaint, bearing the correct name of this Court on the caption. In virtually all other respects, the Amended Complaint is identical to the complaint initially filed in this Court and in the D.C. Superior Court (with the exception of the additional named defendants in the D.C. action, as compared to additional non-defendant co-conspirators in the Virginia action). The Amended Complaint in this Court, in fact, still seeks a jury trial pursuant to the District of Columbia Rules of Civil Procedure.

This, however, was only the beginning of the Plaintiffs' ham-fisted attempts to handle the identical litigation in two forums. Because it alleged a violation of 42 U.S.C. § 1983, the District of Columbia Superior Court case was removed by the defendants to the United States District Court for the District of Columbia on December 10, 2007. After Defendants' counsel in this action conferred with Plaintiffs' counsel concerning the intended motion to transfer the

Virginia proceeding to the District of Columbia, Plaintiffs responded by a series of procedural maneuvers designed to forestall such a motion in this Court by attempting to divest the federal district court in the District Columbia of jurisdiction.  Apparently not wanting the case in D.C. federal court, Plaintiffs amended the District of Columbia complaint on January 23, 2008, to remove the counts alleging the federal section 1983 claims, and moved to remand the case back to the D.C. Superior Court. That motion remains pending.  Then, on January 30, 2008, Plaintiffs filed a motion to amend, for the second time, the Virginia complaint to include new parties and to dismiss the non-federal claims.  While the Defendants will respond to this motion separately, it appears this latest step is an attempt by Plaintiffs somehow to offset their amendment of the D.C. Complaint in a convoluted effort to shuffle the claims between forums – without any regard for judicial economy of the respective forums or the substantive merits of how the claims will be heard against what parties and where.

The Amended Complaint in this Court and the initial complaint in the District of Columbia assert four counts:  first, conspiracy to commit abuse of process and malicious prosecution; second, abuse of process and malicious prosecution under the various states' laws; third, conspiracy to violate "43 [sic] U.S.C. § 1983" and the United States Constitution; and fourth, violation of "43 [sic] U.S.C. § 1983" and the United States Constitution.  The "factual" allegations in the Amended Complaint consist largely of conclusory, generalized assertions about conspiracy—with no specificity as to the time, place or nature of the asserted agreement; parties to the agreement; or scope or duration of the agreement.  *See, e.g.,* Am. Compl. ¶ 49 ("The leaders and organizers of the conspiracy specifically agreed to sue and otherwise obstruct Nader-Comejo not only in these 'battleground' states, but also in as many other states as possible."); *id.* ¶ 55 ("That 'Game Plan,' which Defendants jointly planned and executed with their co-

Conspirators, was to file groundless and abusive lawsuits and otherwise obstruct the Nader-Camejo Campaign as many times in as many states as possible during the 2004 election.").

The Amended Complaint's allegations also include, as asserted overt acts in support of the alleged conspiracy and the alleged tortious conduct, (i) the filing of twenty-four lawsuits and administrative challenges in eighteen states; (ii) the filing of five complaints to the Federal Election Commission ("FEC"); and (iii) alleged "acts of harassment, intimidation and sabotage . . . specifically intended to prevent Nader-Camejo from complying with state election laws, and to manufacture legal grounds for the Conspirators' otherwise baseless claims" (*id.* ¶ 69) in Ohio, Oregon and Pennsylvania (*id.* ¶¶ 70-72, 158, 169-173 ).  Although the Amended Complaint frequently refers to challenges to ballot access brought by conspirators, in fact, as the Amended Complaint also details, most such challenges were brought by individuals who are not named as either defendants or co-conspirators.

The Amended Complaint admits that the challenges and litigation against Nader-Camejo's ballot access attempts succeeded in four states, where Mr. Nader did not appear on the general election ballot:  Ohio, Oregon, Pennsylvania and Illinois.  *See* Am. Compl. ¶¶ 73, 111, 164-165, 178, 192.  In Arizona, the Amended Complaint alleges that Nader-Camejo withdrew their nomination papers in response to a litigated challenge and that Nader-Camejo did not prevail on their subsequent challenge to Arizona's filing deadline; their names accordingly did not appear on the Arizona ballot either.  *See id.* ¶¶ 76-79.  In four other states, lower trial or appellate courts found in favor of challengers to Nader-Camejo's ballot access attempts, but those determinations were reversed on subsequent appeal or modified in light of subsequent parallel proceedings.  *See, e.g., id.* ¶¶ 82-83 (Arkansas); ¶¶ 91, 93-94, 99 (Florida); ¶¶ 146-149 (New Mexico); ¶¶ 225-227 (Wisconsin).  With respect to the FEC complaints, the Amended

5

Complaint states that the FEC took no action on any of the five complaints. *See id.* ¶¶ 128, 137, 229.

Virtually all of the allegations relating to litigation in the eighteen states aver that such litigation was both initiated and finally resolved in 2004—after Mr. Nader announced his candidacy on February 22, 2004 (*id.* ¶ 47) and before the November 2004 Presidential election. *See generally id.* ¶ 238 (Count I) ("Conspirators filed 24 complaints against the Nader-Camejo Campaign within 12 weeks between June and September of 2004."); *id* .¶ 241 (Count II) (similar). Only in a few instances are there allegations that even reference events beyond November 2004: one FEC complaint, filed on September 17, 2004, was dismissed on June 23, 2005 (*id.* ¶ 128); another FEC complaint, filed on August 10, 2004, was dismissed on June 23, 2005 (*id.* ¶ 137); the three other FEC complaints were dismissed on February 10, 2005, June 23, 2005, and April 21, 2006 (*id.* ¶ 229); and there was a bill of costs submitted in the Pennsylvania litigation, in which Nader-Camejo did *not* prevail, in December 2004 that was approved by the Pennsylvania court on January 15, 2005 (*id.* ¶¶ 193-196) – resulting in efforts by alleged co-conspirator Reed Smith to collect those costs, culminating in collateral litigation that remains pending (*id.* ¶¶ 204-205).

Defendant Raikin is not referenced in any of the "factual" allegations of the Amended Complaint. He is named, in conclusory fashion, only in the summary of theories in each of the legal counts. *See, e.g., id.* ¶ 244 (Count II) ("The DNC, The Ballot Project under direction of Defendant Raikin and the Kerry-Edwards Campaign coordinated with State Democratic Parties to hire or secure *pro bono* counsel to prosecute this litigation."); ¶ 249 (Count III) (similar); ¶ 255 (Count IV) (similar).

6

## ARGUMENT

I. **The Amended Complaint Should Be Dismissed**

A. **The Federal Claims (Counts III and IV) Should Be Dismissed For Failure To Allege "State Action"**

To state a claim under section 1983, a plaintiff "must demonstrate that the alleged deprivation of constitutional rights was committed by a person or entity acting under color of state law." *McManus v. District of Columbia*, 2007 U.S. Dist. LEXIS 94797, at *55 (D.D.C. Dec. 31, 2007) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Neither of the defendants named in the Amended Complaint is an officer or employee of any state or municipal government or government agency or instrumentality. Rather, both are private parties. Similarly, all of the alleged non-defendant co-conspirators, too, are private parties, and so there is no allegation that private parties have conspired with state officials.

But a deprivation of federal statutory or constitutional rights may also be actionable under section 1983 if it is "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the state is responsible." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal citations and quotations omitted). The question, then, is whether an alleged constitutional injury to Plaintiffs caused by Defendants' and co-conspirators' exercise of state court processes suffices to establish "state action" because the alleged injury is caused by the private exercise of "some right or privilege created by the State."

The answer is no. That a private party merely brings a state court action does not constitute state action. In *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), the Court made clear that the mere "private misuse of a state statute does not describe conduct that can be attributed to the State." *Id.* at 941. Thus the plaintiff in that case did *not* state a claim under

7

section 1983 by alleging that the defendants had abused a state legal procedure and acted unlawfully under state law. "That respondents invoked the statute without the grounds to do so could in no way be attributed to a state rule or state decision. Count two, therefore, does not state a cause of action under §1983 but challenges only private action." *Id.* at 940. Although the Court held that a facial due process challenge to a state procedure was cognizable under section 1983, the Court emphasized that "we do not hold today that 'a private party's mere invocation of [otherwise constitutional] state legal procedures constitutes "joint participation" or "conspiracy" with state officials satisfying the §1983 requirement of action under color of law.'" *Id.* at 939 n.21; *see also Dennis v. Sparks*, 449 U.S. 24, 28 (1980) ("[M]erely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge."); *Field Auto City, Inc. v. Gen. Motors Corp.*, 476 F. Supp. 2d 545, 555 (E.D. Va. 2007) ("Simply put, the misuse by private litigants of a state statute or rule does not constitute state action for purposes of §1983."), *aff'd*, 2007 WL 4013291 (4th Cir. Nov. 15, 2007).

The only allegations of state action in Counts III and IV consist of the assertions that Defendants and co-conspirators used court processes to violate Plaintiffs' constitutional rights. See Am. Compl. ¶¶ 247, 253. While there is also a boilerplate assertion that "Defendants engaged in state action and acted under color of state law and acted jointly and in concert with individuals who acted under color of state authority," id. ¶¶ 250, 256, none of the named entities referenced in either Count is a state actor, see id. ¶¶ 249, 255. Accordingly, the mere private use (even misuse) of state legal processes by private actors acting individually or in concert does not suffice to establish state action. Counts III and IV should be dismissed. Absent valid section 1983 claims, Plaintiffs have no other basis for federal jurisdiction.

**B.     The Amended Complaint Should Be Dismissed As Time-Barred**

With the arguable exception of certain very limited allegations relating to the

Pennsylvania litigation and one of the FEC complaints, all of Plaintiffs' claims are time-barred

under the applicable two-year statutes of limitations because they relate to events prior to

October 31, 2005.

In Virginia "questions concerning statutes of limitations are deemed to be procedural and

as such are controlled by the law of the forum state." *Holdford v. Leonard*, 355 F. Supp. 261,

263 (W.D.Va. 1973) (citing 4 Michie's Jurisprudence, Conflict of Laws § 39 (1949)); *see also*

*Barry v. Donnelly*, 781 F.2d 1040, 1041-42, n.3 (4th Cir. 1986) (same).   Under Virginia law, the

statutes of limitations for malicious prosecution and abuse of process are two years, in both

circumstances accruing from the termination of the underlying proceedings.   *See* Va. Code Ann.

§ 8.01-248 (Every personal action accruing on or after July 1, 1995, for which no limitation is

otherwise prescribed, shall be brought within two years after the right to bring such action has

accrued.); Va. Code Ann. § 8.01-249 ("The cause of action in the actions herein listed shall be

deemed to accrue as follows: . . . In actions for malicious prosecution or abuse of process, when

the relevant criminal or civil action is terminated."); *see also Morrison v. Jones*, 551 F.2d 939

(4th Cir. 1977) (favorable termination of criminal proceedings is essential element of claim for

malicious prosecution; thus, claim does not accrue until proceedings are terminated); *Blackmon v.*

*Perez*, 791 F. Supp. 1086 (E.D.Va. 1992) (malicious prosecution and abuse of process claims

<u>both</u> do not accrue until the underlying proceedings have been terminated).

Similarly, the statute of limitations for section 1983 claims in Virginia is two years.   The

federal claim under section 1983 does not have its own statute of limitations, and instead

borrows from an analogous cause of action for personal injury under Virginia law.   *See Lewis v.*

*Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991). Based on the applicable

Virginia personal injury cause of action and the statute of limitations set out in section 8.01-

243(A) of the Virginia Code, the appropriate statute of limitations for the section 1983 claim is

two years. *Justus ex rel. Estate of Justus v. County of Buchanan*, 498 F. Supp. 2d 883, 885

(W.D.Va. 2007); *see also Smith ex rel. Duck v. Isle of Wight County School Bd.*, 284 F. Supp. 2d

370 (E.D.Va. 2003), *aff'd in part, rev'd in part on other grounds, and remanded*, 402 F.3d 468

(4th Cir. 2005) (Virginia's two-year statute of limitations for personal injuries applies to section

1983 actions).

 Finally, the conspiracy claims in the Amended Complaint also are subject to the same

two-year limitations periods. The statute of limitations for a civil conspiracy claim is established

by reference to the limitations period governing the underlying tort. *See Lesner Pointe Condo.*

*Ass'n, Inc. v. Harbour Point Bldg. Corp.*, 61 Va. Cir. 609, 619 (Cir. Ct. Apr. 10, 2002) (claims of

fraud and civil conspiracy to commit fraud are subject to the same two-year period); *Cherokee*

*Corp. v. Chic. Title Ins. Corp.*, 35 Va. Cir. 19, 29 (Warren Cty. Nov. 28, 1994) (determination of

statute of limitations for conspiracy claim required an examination of the underlying cause of

action); *Hurst v. State Farm Mut. Ins. Co.*, 2007 U.S. Dist. LEXIS 21172, at *3 (W.D.Va. Mar.

23, 2007) (same). If a conspiracy to commit malicious prosecution or abuse of process is even a

cognizable claim under Virginia law, *cf. Almy v. Grisham*, 55 Va. Cir. 401, 407-408 (Cir. Ct.

2001) ("[C]onspiracy to maliciously prosecute is not a cause of action recognized by the

Commonwealth. Regardless of the facts alleged, it is a legal impossibility for the plaintiff to have

stated a cause of action upon which the relief demanded can be granted without the Court

creating a new cause of action."), it is subject to a two-year statute of limitations. Because all of

the possible underlying torts for the conspiracy claims in this case—malicious prosecution, abuse

10

of process, section 1983 violations or personal injury—are subject to a two-year limitations period under Virginia law, the same statute of limitations applies to the conspiracy claims as well. Moreover, if the underlying tort claims are dismissed on statute of limitations grounds or any other ground, then the court will be required to dismiss the conspiracy claim as well because there would be no underlying claim. *See McDonald's Corp. v. Turner-James*, 2005 U.S. Dist. LEXIS 42755, at *15-16 (E.D.Va. Nov. 29, 2005) (dismissing plaintiffs' Virginia Retail Franchise Act, unjust enrichment, and tortious interference claims, and then holding that "'[w]ithout an underlying tort, there can be no cause of action for a conspiracy to commit the tort. . . . Dismissal of the substantive tort claims defeats the related claim for a civil conspiracy.'") (quoting 15A C.J.S. *Conspiracy* § 8 (2005)).

Because the applicable limitations period for each of Plaintiffs' asserted counts is two years, virtually all of their claims are time-barred. As noted, with the exception of allegations relating to one of the FEC complaints, which was dismissed in April 2006 (Am. Compl. ¶ 229), and certain allegations relating to an alleged non-defendant co-conspirator's attempts to collect on the bill of costs in the Pennsylvania litigation, all other claims—of malicious prosecution, abuse of process, section 1983 violations, or conspiracy—related to all other factual allegations are time-barred because they relate to conduct that occurred prior to October 2005.

Neither of the remaining sets of allegations—the one FEC complaint and the enforcement actions relating to the Pennsylvania bill of costs—are tied in any way to Defendant Raikin. Moreover, inasmuch as Plaintiffs seek by this action review and rejection of a Pennsylvania state court judgment awarding costs, their claims are barred by the *Rooker-Feldman* doctrine. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005).

C.    **Counts I and III Should Be Dismissed For Failure
       To Plead Conspiracy With Requisite Particularity**

Plaintiffs' conspiracy claims should be dismissed because they have been pled in only the

most conclusory way.  Plaintiffs have simply named as co-conspirators anyone and everyone

who played a role in challenging Nader-Camejo's ballot access in 2004, including independent

expenditure groups that were required by law to act independently from and without

coordination with the national and state parties.  Because they all allegedly shared the goal of

assisting in a Kerry-Edwards or Democratic victory in 2004, Plaintiffs claim they conspired to

bring unfounded, baseless lawsuits—many of which succeeded on the merits.  Yet they plead

none of the specific facts from which one might plausibly infer the existence of an agreement

rather than mere common purpose.

"[I]t is not  enough merely to state that a conspiracy took place."  *Johnson v. Kaugars*, 14

Va. Cir. 172, 176 (Cir. Ct. 1988).  Rather, Virginia requires a plaintiff to allege "some details of

time and place and the alleged effect of the conspiracy."  *Id.* at 176.  "Where, as here, there are

only vague, conclusory allegations of conspiracy, the claim fails at the threshold."  *Firestone v.*

*Wiley*, 485 F. Supp. 2d. 694, 703-04 (E.D.Va. 2007) (citing *Connor v. Real Title Corp.*, 165 F.2d

291, 294 (4th Cir. 1947)); *see also Bell Atlantic Corp.  v. Twombly*, 127 S. Ct. 1955 (2007)

(requiring detailed allegations of facts supporting existence of agreement or conspiracy in order

to withstand motion to dismiss); *Bowman v. State Bank of Keysville*, 229 Va. 534, 541, 331

S.E.2d 797 (Sup. Ct. 1985) (dismissing plaintiffs' conspiracy claim because plaintiffs failed to

allege any factual allegations to support a conspiracy theory even based on inferences fairly and

justly drawn from the facts).

**D.    The Amended Complaint Is Directed At Constitutionally Protected Activity**

The actions allegedly taken by Defendants in filing lawsuits challenging the nomination

papers of the Nader-Camejo campaign in various states are protected by the First Amendment

right to petition the government. *See Eastern R.R. Presidents Conference v. Noerr Motor*

*Freight, Inc.*, 365 U.S. 127 (1961) ("*Noerr*"); *see also United Mine Workers v. Pennington*, 381

U.S. 657 (1968) ("*Pennington*").  The First Amendment principles announced in *Noerr* and

*Pennington* have been extended to protect coordinated action in petitioning administrative

agencies and courts, as well as executive and legislative bodies. *See Cal. Motor Transp. Co. v.*

*Trucking Unlimited,* 404 U.S. 508, 510 (1972).  Courts have also extended the immunity

provided by the doctrine beyond federal antitrust liability to include such causes of action as

federal civil rights claims, abuse of process, and civil conspiracy (among other causes of action).

*See, e.g., Barnes Foundation  v. Township of Lower Merion*, 242 F.3d 151, 160-61 (3d Cir. 2001)

(recognizing *Noerr-Pennington* immunity as a defense to causes of action arising under federal

civil rights law); *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075,

1084 (5th Cir. 1988) (finding *Noerr-Pennington* precluded defendant's liability as conspirator

with city in violation of civil rights under 42 U.S.C. § 1983); *Protect Our Mountain Env't, Inc. v.*

*District Court,* 677 P.2d 1361, 1369 (Sup. Ct. Colo. 1984) (*Noerr-Pennington* analysis

applicable to suit for abuse of process and civil conspiracy).

Pursuant to the doctrine, an individual associated with others cannot be held liable, even

if some of the other individuals involved in the joint action are engaged in wrongful conduct,

unless there is evidence that a particular individual's actions with regard to the joint action "were

intended specifically to further that wrongful conduct." *Pfizer, Inc. v. Giles* (In re Asbestos

School Litigation), 46 F.3d 1284, 1290 (3d Cir. 1994) (citing *N.A.A.C.P. v. Claiborne Hardware*

13

*Co.*, 458 U.S. 886, 919 (1982)). The court must judge whether a particular individual had the specific intent "according to the strictest law." *Claiborne Hardware*, 458 U.S. at 919.

The Supreme Court has stated that states have the "undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983); *see also Am. Party of Texas v. White*, 415 U.S. 767 (1974); *Jenness v. Fortson*, 403 U.S. 431 (1971). Therefore, citizens of a state may associate together in petitioning the government to determine whether a particular candidate is meeting the requirements of state law in demonstrating that support.

Even if Plaintiffs were to allege that other members associated in the joint action were engaged in wrongful action, they have failed to allege there was specific intent on the part of Mr. Raikin to engage in any wrongful conduct. *See Claiborne Hardware*, 458 U.S. at 919. Without an allegation of specific intent to engage in wrongful conduct, Defendant Raikin's alleged actions in assisting co-conspirators in exercising their First Amendment rights is protected by the *Noerr-Pennington* doctrine. *Id.*

## II.    Alternatively, This Court Should Transfer The Action To The District of Columbia

In the event this Court chooses not to reach the merits of the motion to dismiss, it should in the alternative transfer the action to the District of Columbia. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The decision whether to transfer an action pursuant to § 1404(a) "is committed to the sound discretion of the district court." *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 592 (E.D.Va. 1992). In exercising that discretion and determining whether to grant a motion pursuant to § 1404(a), a

14

court must consider and balance a number of factors, including: (1) ease of access to sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the interest in having local controversies decided at home; (6) in diversity cases, the court's familiarity with the applicable law; and (7) the interest of justice. *One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*, 312 F. Supp. 2d 824, 828 (E.D.Va. 2004); *BHP Int'l. Inv., Inc. v. OnLine Exch., Inc.*, 105 F. Supp. 2d 493, 498 (E.D.Va. 2000).

When cases pending in more than one district concern the same facts and issues, it has long been held in this Circuit that a "case should be transferred to the [other district court] in order to prevent an extravagantly wasteful and useless duplication of the time and effort of the federal courts by the simultaneous trial of two complex and elaborate cases involving substantially the same factual issues." *Gen. Tire & Rubber Co. v. Watkins*, 373 F.2d 361, 362 (4th Cir. 1967) (*en banc*). In *General Tire & Rubber*, the plaintiff had filed one case in the Maryland District Court and another against a different defendant in the Ohio District Court, but both cases involved the same factual and legal issues. This Circuit transferred the Maryland case to Ohio based on the "maintenance of judicial economy" principle:

> The prompt transfer of the Maryland suit to Ohio will make it available there for consolidation and trial in March with the suit against U.S. Rubber. In view of the complex and time consuming nature of patent cases, the advisability of consolidation is obvious. The district court, in its denial of General's second transfer motion, pointed out that Firestone had expressed a determination to fight consolidation if the case were transferred. While we suspect that Firestone might have a change of heart after transfer, in any event, its opposition would not be determinative of the issue. This record discloses no reason why consolidation should not be as feasible here as in the two other cases.

373 F.2d at 367-368 (internal citations omitted). The Court's "responsibility for the orderly and efficient administration of justice within this circuit is an adequate basis for the exercise of our

power" to order the transfer of a case for judicial economy. *Royster v. Food Lion*, 73 F.3d 528, 532 n.10 (4th Cir. 1996) (citing *Gen. Tire & Rubber Co.*, 373 F.2d at 369); *see also* 15 Charles Alan Wright et al., Federal Practice and Procedure § 3854 (3d ed. 2007) (noting that while the presumption is lessened when two suits are filed close in time, when two courts have concurrent jurisdiction over a dispute involving the same parties and issues, "as a general proposition, the forum in which the first-filed action is lodged [here, D.C.] has priority").

Judicial economy mandates either dismissal or transfer of this case for the same reason described by this Circuit in *General Tire & Rubber*. This Court and the District of Columbia court are faced with the same factual allegations and are being asked to resolve the same legal issues. There is no possible reason why both Courts should be asked to engage in the same time consuming effort to try identical allegations. This is especially so given that, unlike in the District of Columbia, there is little connection between the claims and this judicial district, that would militate against transfer. *See, e.g., Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1257 (E.D.Va. 1988) (plaintiff's choice of forum reduced by the absence of any substantial nexus between the forum and the plaintiff's claims). The underlying causes of action, if they arose at all, did so in the District of Columbia, where the vast majority of parties and non-party "co-conspirators" lived and worked during the 2004 campaign, or in the various states in which the ballot access litigation occurred. Although the two individual Defendants reside in Virginia, the Plaintiffs clearly do not. Nor do any of the third-party co-conspirators. Rather, as in *Intranexus, Inc. v. Siemens Med. Solutions Health Servs. Corp.*, 227 F. Supp. 2d 581 (E.D.Va. 2002), where none of the acts alleged in the complaint occurred in Virginia, and Virginia law does not control the controversy, this is plainly not a "local [Virginia] controversy," and therefore the "interest in having local controversies

16

decided at home" strongly supports transfer to the D.C. forum. *Id.* at 583 (citing *Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 623 (E.D.Va. 2002).)

## CONCLUSION

For the foregoing reasons, the motion to dismiss the Amended Complaint or, in the alternative, to transfer the action to the District of Columbia should be granted.

Dated: January 31, 2008                          Respectfully submitted,

 

 

                                                 _____/S/_____

Of Counsel:                                      Warren T. Allen II
Preeta Bansal                                    Virginia Bar Number 72691
(*Pro hac vice* - motion pending)                *Attorneys for Defendant Steven Raikin*
Lawrence M. Noble                                Skadden, Arps, Slate, Meagher & Flom, LLP
(*Pro hac vice* - motion pending)                1440 New York Avenue, N.W.
Skadden, Arps, Slate, Meagher & Flom, LLP        Washington, D.C. 20005-2111
1440 New York Avenue, N.W.                       (202) 371-7126
Washington, D.C. 20005-2111                      (202) 661-9121
(202)-371-7365                                   wtallen@skadden.com
(202)-661-0565
lnoble@skadden.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 31th day of January, 2008, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John Hardin Young, Esq.
Sandler Reiff & Young, PC
50 E Street, S.E.
Washington, D.C. 20003
(202) 479-1111
young@sandlerreiff.com
*Attorney for Terry McAuliffe*

And I hereby certify that I will mail the document by U.S. mail to the following non-filing user:

Michael Sgarlet, Esq.
216 South Patrick
Alexandria, Virginia 22314
(703) 549-2000
*Attorney for Plaintiffs*

                                        /S/
                            _____
                            Warren T. Allen II
                            Virginia Bar Number 72691
                            *Attorney for Steven Raikin*
                            Skadden, Arps, Slate, Meagher, & Flom, LLP
                            1440 New York Avenue, N.W.
                            Washington, D.C. 20005-2111
                            (202) 371-7126
                            (202) 661-9121
                            wtallen@skadden.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| RALPH NADER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:07-cv-01101-JCC-TCB |
| TERRY MCAULIFFE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## [PROPOSED] ORDER GRANTING DEFENDANT STEVEN RAIKIN'S MOTION TO TRANSFER VENUE

Having considered the Motion to Transfer Venue filed by Defendant Steven Raikin, along with the papers filed in support of and in opposition to the Motion to Transfer Venue, and having heard argument, the Court finds that the convenience of the witnesses and parties and the interest of justice would be served by a transfer of this action to the United States District Court for the District of Columbia. Therefore, the Court hereby GRANTS Defendant Steven Raikin's Motion to Transfer Venue, and it is hereby ORDERED that the Clerk of Court is directed to transfer this action to the United States District Court for the District of Columbia and notify counsel of record of this transfer.

DATED: _____, 2008

_____
JAMES C. CACHERIS
UNITED STATES DISTRICT JUDGE