UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

————————————————
                              :
Ralph  Nader, et al.          :
        v.                  :               Civ. No. 1:07cv1101
Terry McAuliffe, et unum.   :
————————————————:

## DEFENDANT TERRY MCAULIFFE'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND THEIR COMPLAINT

Defendant McAuliffe opposes Plaintiffs' motion to amend the first amended Complaint. Plaintiffs propose three changes.  First, Plaintiffs propose adding Defendants, the Democratic National Committee, Kerry-Edwards 2004, Inc. and John Kerry.  Second, Plaintiffs would drop all of the facts related to the challenges to the Nader-Camejo campaign's 2004 presidential ballot petitions except for the challenge in Pennsylvania.  Third, Plaintiffs would drop the malicious prosecution and abuse of process tort claims, which would leave only the 42 U.S.C. § 1983 and conspiracy to violate 42 U.S.C. § 1983 claims that Defendants violated the Qualifications clause, the First and Fourteenth Amendments by abusing court processes and engaging in malicious prosecution.

These changes, however, do not save the complaint from a motion to dismiss.  First, Plaintiffs have already filed a complaint in the District of Columbia against the proposed Defendants that alleges the same facts.  Judicial economy cautions against two different courts simultaneously considering the same plaintiffs' allegations against the same defendants.  Second, the proposed Second Amended Complaint ("SAC") suffers from the same basic defects as the first amended Complaint.  *See* Defendant McAuliffe's Memorandum in Support of his Motion to

Dismiss the Complaint, Document 11-3 ("Mem. to Dismiss") filed on January 31, 2008. The claims are barred by the two-year statute of limitations applicable to 42 U.S.C. § 1983 claims. Plaintiffs have not alleged a legally cognizable violation of 42 U.S.C. § 1983 because, among other things, there was no malicious prosecution or abuse of process – Plaintiffs did not prevail in Pennsylvania – and none of the Defendants or proposed Defendants is a state actor or acted under color of state action. Third, this Court lacks jurisdiction because none of the Plaintiffs have alleged a legally cognizable harmed caused by the Defendants. The net effect is that amending the Complaint would be futile, and Plaintiffs' motion to amend should be denied.

## BACKGROUND

The SAC alleges that the Defendants and proposed Defendants engaged in abuses of court processes and malicious prosecution in violation of 42 U.S.C. § 1983 by conspiring with others to file a challenge to Plaintiffs Nader's and Camejo's 2004 ballot access petitions in Pennsylvania. SAC ¶¶ 74-100. The Pennsylvania Supreme Court, *In re Nomination Paper of Nader*, 905 A.2d 450, 453-56 (Pa. 2006) ("*Nader*") (attached), summarized the decision to disqualify Ralph Nader's petitions and assess stenographic and transcription costs on Plaintiffs Nader and Camejo.[1] In short, the Commonwealth Court disqualified Nader and Camejo from the ballot because they had accepted the nomination of the Reform Party in Michigan and Ralph Nader was a member of the California Green Party, thus violating Section 951(e) of the Election

---

[1] This Court may take judicial notice of court records, Fed. R. Evid. 201, and other government records, Fed. R. Evid. 803(8). The Pennsylvania ballot access challenge litigation reported decisions are: *In re Nomination Paper of Ralph Nader*, 856 A.2d 908 (Pa. Cmwlth. 2004); *In re Nomination Paper of Ralph Nader*, 858 A.2d 58 (Pa. 2004); *In re Nomination Paper of Ralph Nader*, 858 A.2d 1167 (Pa. 2004); *In re Nomination Paper of Nader*, 865 A.2d 8 (Pa. Commw. Ct. 2004); *In re Nomination Paper of Nader,* 860 A.2d 1 (Pa. 2004) *certiorari* denied on October 23, 2004 , *Nader v. Serody,* 543 U.S. 951 (2004); *In re Nomination Paper of Nader*, 905 A.2d 450 (Pa. 2006).

Code for the reason that his candidate's affidavit falsely indicated that he was not enrolled in a

political party.  The Supreme Court reversed and remanded the case for expedited evidentiary

hearings. On October 13, 2004, the Commonwealth Court, following three weeks of hearings ,

issued its Findings, Opinion, and Order setting aside the ballot petitions. The court concluded

that:

> [T]his signature gathering process was the most deceitful and fraudulent exercise ever
> perpetrated upon this Court. The conduct of the [Appellants] through their representatives
> (not their attorneys) shocks the conscience of the Court. In reviewing signatures, it
> became apparent, that in addition to signing names such as "Mickey Mouse," "Fred
> Flintstone," "John Kerry," and the ubiquitous "Ralph Nader," there were thousands of
> names that were created at random and then randomly assigned either existent or non-
> existent addresses by the circulators. Commonwealth Court, October 13, 2004,
> Consolidated Findings, Opinion, and Order at 14 (emphasis added).

*Nader* at 455.  The Commonwealth Court also assessed costs for court stenographer appearances

and transcript preparation against the Nader/Camejo campaign, Ralph Nader and Peter Miguel

Camejo individually.  On October 19, 2004, the Pennsylvania Supreme Court afirmed the

October 13, 2004 Order of the Commonwealth Court.  On October 23, 2004, the Supreme Court

denied *certiorari*.  On January 14, 2005. the Commonwealth Court  approved the challengers

requests for costs of court reporter appearances and for handwriting expert witnesses fees.  The

Pennsylvania Supreme Court found that the Commonwealth Court had not abused its discretion

in assessing costs.

Plaintiff Nader has not paid his share of the assessed costs and is defending a suit in the

Superior Court of the District of Columbia where the Pennsylvania petition challengers are

attempting to enforce the Pennsylvania judgment (SAC ¶¶ 97-98; *Serody v. Nader*, (2007 003385

F, Sup. Ct. D.C.) on essentially the same grounds as described in the SAC, (SAC ¶¶ 90-93;96).

On October 30, 2007 the Plaintiffs filed a new complaint in the Superior Court of the

District of Columbia against the Democratic National Committee, Defendant Terry McAuliffe's employer, The Ballot Project, Defendant Steven Raikin's employer, Kerry-Edwards 2004, Inc., Reed Smith, LLP, John Kerry and eight other alleged co-conspirators. On October 31, 2007, Plaintiffs filed a complaint in the this Court, bearing the caption of the "Superior Court of the District of Columbia," and naming the same plaintiffs and defendants that were set forth in the complaint filed in the District of Columbia. On November 1, 2007, Plaintiffs filed an "Amended Complaint" in this Court. While the amended Complaint changed the caption to this Court, in all other respects it is identical to the complaint filed in this Court on October 31st and in the District of Columbia on October 30, 2007. On December 10, 2007, the D.C. Superior Court case was removed to the United States District Court for the District of Columbia. On January 23, 2008, the Plaintiffs amended the District of Columbia complaint by removing the Counts III and IV alleging a conspiracy to violate 43 U.S.C § 1983 and a violation of 43 U.S.C. § 1983. The underlying facts and the prayer for relief remained the same. The Plaintiffs also moved to remand the case to the D. C. Superior Court. On February 4, 2008, the D.C. defendants opposed the motion to remand and filed motions to dismiss.

On January 30, 2008, the day before the Defendant's response to the first amended Complaint was due, the Plaintiffs filed this motion to amend their Complaint for a second time. The SAC drops the state tort claims and would add the Democratic National Committee, Kerry-Edwards 2004, Inc., Reed Smith, LLP and John Kerry as Defendants; all of whom are already defendants in the District of Columbia complaint. Although the SAC makes general references to multiple state ballot access challenges, it dropped the specific factual allegations about all of the state ballot access challenges except for the Pennsylvania allegations.

**DISCUSSION**

Pursuant to Federal Rule of Civil Procedure 15(a), motions to amend are typically granted in the absence of an improper motive. *Harless v. CSX Hotels, Inc.*, 389 F.3d 444, 447 (4th Cir. 2004) (*citing Ward Elec. Serv., Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987)).  "While leave to amend a complaint is often granted liberally, amendments are denied when they would be futile." *Miles v. Goldschmidt Chem. Corp.*, 2007 U.S. Dist. LEXIS 75063, *8 n.2 (E.D. Va. 2007) (*citing Ward Elec. Serv., Inc.*, 819 F.2d at 497);  *National Bank of Washington v. Pearson*, 863 F.2d 322, 327-28 (4th Cir. 1988).  To survive a motion to dismiss, "a plaintiff must still provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Roe 1 v. Prince William County*, 2007 U.S. Dist. LEXIS 88405, *7 (E.D. Va. 2007) (*citing Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)).

When a "proposed Amended Complaint fails to create an actionable claim and would not survive a motion to dismiss" amending the complaint would be futile and should be denied. *Miles,* 2007 U.S. Dist. LEXIS 75063 at *8 n.2; *National Bank of Washington*, 863 F.2d at 327-28.  For example, when an alleged violation of 42 U.S.C. § 1983 "boils down to an attack on a state court judgment rendered against [a plaintiff, a] federal court is prohibited from hearing such a case." *Lewis v. Virginia*, 2007 U.S. Dist. LEXIS 50065, *5 (E.D. Va. 2007) (*citing Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923)).  Indeed, when "Court's lack of jurisdiction over [a] matter, allowing Plaintiff the opportunity to amend his Complaint would be futile." *Id.* at *6 (citing *Ward Elec. Serv., Inc.* 819 F.2d at 497).  It would be futile to accept the SAC because: the claims are based on events that occurred in 2004 and are barred by the two-year statute of limitations; the Plaintiffs do have not alleged legally cognizable harm cuased by the Defendants

that is redressable by this Court; and the SAC does not allege any of the elements of a violation of 42 U.S.C. §1983.  First, the alleged malicious prosecution and abuse of process are not constitutional violations.  Second, the Plaintiffs cannot allege the elements of a malicious prosecution or abuse of process because, among other things, the Plaintiffs did not prevail in the Pennsylvania courts.  Third, the SAC does not allege a state actor or that the Defendants acted under color of state law.

### A. THE STATUTE OF LIMIATIONS BARS PLAINTIFFS' 42 U.S. C. § 1983 CLAIMS.

As described in more detail in Mem. to Dismiss at 7, Virginia's two-year statute of limitations applies to 42 U.S.C. § 1983 claims. *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991) ("There is no federal statute of limitations for § 1983 claims, so the state limitations period which governs personal injury actions is applied. *Wilson v. Garcia*, 471 U.S. 261, 280, 85 L. Ed. 2d 254, 105 S. Ct. 1938 (1985). Virginia has a two-year statute of limitations for personal injury claims.").[2]  *See* Va. Code Ann. § 8.01-248 (2007).

The Pennsylvania Supreme Court's decision confirming the Commonwealth Court's order to deny Nader and Camejo access to the ballot occurred on October 19, 2004 and Plaintiffs' petition for *certiorari* was denied on October 23, 2004, (SAC ¶ 85) more than two years ago.  Plaintiffs, nevertheless, assert that the Pennsylvania Supreme Court's judgment was tainted, (SAC ¶ 95) because certain Defendants or proposed Defendants concealed facts that constitute a fraud on that court, (SAC ¶ 93), including that Reed Smith represented the Pennsylvania Chief Justice in an ethics inquiry; Reed Smith and co-counsel in the ballot access challenge contributed to the campaigns of some of the Pennsylvania Supreme Court Justice; and that one of the Pennsylvania Supreme Court Justices worked at Reed Smith for three years until

---

[2] In Pennsylvania the statute of limitations for a violation of 42 U.S.C. § 1983 is also two years. *Stawairski v. Borough of Summit Hill*, 2008 U.S. App. LEXIS 2018, *2-3 (3d Cir. 2008).

1993 when he was appointed to the Supreme Court, (SAC ¶ 90).  Plaintiffs assert that Reed

Smith concealed these facts, (SAC ¶ 93), and they did not become aware of these alleged facts

until September 2007, (SAC ¶ 96).

The facts, however, were not concealed and were readily discoverable.  Plaintiffs' own

memorandum in support of their motion to amend the complaint refers to a Pittsburg Post-

Gazette story on August 10, 2004 "reporting that state Democratic officials provided Reed Smith

with 'volunteers' and financial support for the effort'" (Plaintiffs' Memorandum at 2).  Plaintiffs'

allegation that Reed Smith made campaign contributions to Pennsylvania Supreme Court

Justices, (SAC ¶ 90), was disclosed to the public pursuant to Pennsylvania Election Code, 25

P.S. § 3241 *et seq.*[3]  Justice Castille employment history, moreover, with Reed Smith more than

a decade before the ballot access litigation was well publicized . *See* Biography of Justice

Castille, available at www.courts.state.pa.us/index/supreme/castille.asp.  Finally, the ethics

complaint against the judge was filed in August 2005 for a statement he made on July 7, 2005.

*See* Mark Scolforo, Probe Asked of Justice Cappy's role in Pay Raises, Pittsburgh Post-Gazette,

August 16, 2005.  All of these public notices put the Plaintiffs on notice more than two years

ago.

The decision to reject Plaintiff Nader's nominating petitions was made by the

Commonwealth Court – not by the Supreme Court or even by a member of that court who

appears to be the object of Plaintiffs' repeated complaints.   The Commonwealth Court judge

found that "the Nomination Papers did not contain the required 25,697 valid signatures and

found that the Nomination Papers contained only 18,818 valid signatures. Nearly two-thirds of

the signatures that had been submitted in support of the Appellants were struck. The court

---

[3] Plaintiffs have not alleged that they filed an ethics complaint or attempted to bring these
allegations to the attention of any Pennsylvania court.

concluded that: "[T]his signature gathering process was the most deceitful and fraudulent exercise ever perpetrated upon this Court. The conduct of the [Appellants] through their representatives (not their attorneys) shocks the conscience of the Court.  In reviewing signatures, it became apparent, that in addition to signing names such as 'Mickey Mouse,' 'Fred Flintstone,' 'John Kerry,' and the ubiquitous 'Ralph Nader,' there were thousands of names that were created at random and then randomly assigned either existent or non-existent addresses by the circulators." *Nader*, 905 A.2d at 455.  The Commonwealth Court also assessed costs on the Plaintiffs because their petitions were disqualified; a result authorized by the Pennsylvania Election Code, *Id.* at 458-59, and approved Reed Smith's stenographic and expert costs.  The Commonwealth Court, not the so-called special relationship between Reed Smith and the Supreme Court justices, dismissed Plaintiff Nader's Pennsylvania ballot access petitions and assessed costs.

## B.  PLAINTIFFS DO NOT HAVE STANDING TO LITIGATE THEIR CLAIMS.

For the reasons described in more detail in Mem. to Dismiss at 13-19, and summarized below, Plaintiffs do not have standing.

### 1. Voter Plaintiffs were not harmed.

The voter Plaintiffs are not residents of Pennsylvania and, therefore, were not harmed by Plaintiff Nader's inability to qualify for the Pennsylvania ballot in 2004.  Moreover, as described in Mem. to Dismiss at 14-16, the voter Plaintiffs' alleged "harm at issue is not only widely shared, but is also of an abstract and indefinite nature -- for example, harm to the 'common concern for obedience to law.'" *FEC v. Akins*, 524 U.S. 11, 23 (1998) (internal citation omitted). In essence, voter Plaintiffs allege a common grievance shared with all voters – the right to vote for the candidate of their choice.  In addition, Plaintiff Nader has not alleged that he will run for

President again, and if he did, the probability that the same alleged conspiracy would recur is too remote and speculative to confer standing.

### 2. Plaintiffs Nader and Camejo were not harmed.

Although both Complaints repeatedly assert that the Plaintiffs were financially injured, the Court need not accept factual inferences drawn by a plaintiff if those inferences are not supported by facts alleged in the complaint. *Roe 1*, 2007 U.S. Dist. LEXIS 88405 at *7 (citing *Bell Atlantic Corp.*, 127 S. Ct. at 1964-65). This Court needs to consider only the three specific financial losses described in the proposed Second Amended Complaint in ¶¶ 86 and 101. However, none of these alleged losses is a legally cognizable harm to the Plaintiffs sufficient for standing.

First, Plaintiffs allege that Defendants' conspiracy caused severe financial injury to "Nader-Camejo's 2004 presidential campaign," and consumed Nader-Camejo staffers' time (SAC ¶ 101 (emphasis added)). The so-called Nader-Camejo Campaign does not refer to Plaintiffs Nader and Camejo, but to a non-party entity: Nader For President 2004, the candidates' principal campaign committee, or Nader For President General Election, the candidates' other authorized committee, are both headquartered in Washington, D.C. and registered with the Federal Election Commission pursuant to 2 U.S.C. § 431(6) to accept contributions and make expenditures. Nader For President 2004 and/or Nader For President 2004 General Election made the expenditures for the litigation and its staff salaries alleged to be involved in the litigation. *See* www. FEC.gov. But, the campaign is not a Plaintiff here and its loss does not confer standing on Plaintiff Nader.

Second, Plaintiff Nader allegedly loaned the Nader-Camejo Campaign $100,000 to cover legal bills, staff salaries and operating expenses (SAC ¶ 101). Plaintiffs do not allege that the

campaign did not have sufficient funds to defend the ballot access cases or used the funds

Plaintiff Nader lent exclusively to defend the ballot access cases. The Plaintiffs do not allege the

Defendants have prevented the campaign from repaying the loan.

Third, the Pennsylvania Election Code § 2937 specifically authorizes the assessment of

costs when a ballot petitioner's papers are disqualified. *Id.* ("[I]n case any such petition is

dismissed, the court shall make such order as to the payment of the costs of the proceedings,

including witness fees, as shall deem just."); *Nader*, 905 A.2d at 458. Costs were not assessed

"to penalize [Plaintiffs'] exercise of political speech," but merely the assessment of typical

litigation costs pursuant to the Pennsylvania Election Code. *Id.* at 457. Moreover, this

assessment of costs is not a constitutional issue subject to a violation of 42 U.S.C.§ 1983. "[T]he

cost provision in Section 2937 does not impinge upon any constitutional rights in a way that

would warrant constitutional scrutiny." *Id.* at 459. Thus, none of the alleged harms is legally

cognizable.

### 3. Defendants did not cause voter Plaintiffs' alleged harm.

The voter Plaintiffs' alleged injury – the inability to vote for the Plaintiffs Nader and

Camejo – was not caused by the Defendants any more than the state officials and the judges that

decided the petitions submitted by the Nader-Camejo campaign were inadequate. As the

Commonwealth Court found, the Nader-Camejo campaign and Plaintiffs Nader and Camejo

failed to submit adequate ballot petitions. "[T]his signature gathering process was the most

deceitful and fraudulent exercise ever perpetrated upon this Court. The conduct of the

[Appellants] through their representatives (not their attorneys) shocks the conscience of the

Court." *Nader*, 905 A.2d at 455 (*citing* Commonwealth Court, October 13, 2004, Consolidated

Findings, Opinion, and Order at 14)

**4.  Defendants did not cause financial harm to the Plaintiffs.**

The Commonwealth Court's assessment of costs was not caused by the proposed Defendants, but by the Plaintiffs' own actions.  Merely asking a court to assess court costs does not cause the court to do so.  The Commonwealth Court exercised discretion based on its evaluation of the ballot access petitions and the conduct of the Plaintiffs, not the attorneys for the petition challengers.

Defendants did not cause Plaintiff Nader to loan the campaign $100,000 nor did they prevent the campaign from raising funds and re-paying the loan.[4]  *Cf. McConnell v. FEC*, 540 U.S. 93, 227 (2003) (plaintiffs' voluntary decision that harms them is insufficient to show causation by the Defendants).  Thus, even if Plaintiff Nader were financially harmed, the loss was not fairly traceable to the Defendants.

**5. This court cannot redress the alleged harms.**

"The redressability requirement ensures that a plaintiff 'personally would benefit in a tangible way from the court's intervention.' A plaintiff seeking injunctive relief shows redressability by 'alleging a continuing violation or the imminence of a future violation' of the statute at issue. . . . *Steel Co.* held that private plaintiffs may not sue to assess penalties for wholly past violations." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.,* 204 F.3d 149, 162 (4th Cir. 2000) (internal citations omitted).  This Court does not have the power to order a new 2004 presidential election, to order the campaign to re-pay its loan from Plaintiff Nader, nor to order the Commonwealth Court to alter its assessment of costs.  Thus, the alleged harms are not redressable.

---

[4] Even though the Nader-Camejo campaign is not a plaintiff, it is noteworthy that their costs were not caused by the Defendants for the same reason that they did not cause the courts to rule that the campaign failed to submit adequate ballot petitions.

### C. PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR VIOLATIONS OF 42 U.S.C. § 1983, THE QUALIFICATION CLAUSE AND THE FIRST AND FOURTEENTH AMENDMENTS.

As already described in Mem. to Dismiss at 8-12, Plaintiffs have not alleged a violation of 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, Plaintiffs must allege that they were denied their constitutional right to be on the Pennsylvania state presidential ballot in 2004 by a person acting under color of state law.

#### 1. Plaintiffs have not alleged a constitutional violation.

The SAC fails to allege a constitutional violation that is a prerequisite for a claim under 42 U.S.C. § 1983. Plaintiffs allege, at most, that Defendants engaged in malicious prosecution and abuse of process in Pennsylvania for the purpose of causing litigation costs that threatened to bankrupt Plaintiff Nader's presidential campaign. (SAC ¶¶ 108 -109,113 – 115). These allegations, even if true, are not constitutional violations.

Plaintiffs allege that the ballot access litigation was a "means to bankrupt the Nader-Camejo Campaign," (SAC ¶¶ 108, 114), However, there is no constitutional right to have sufficient funds to pay for civil litigation, or a constitutional right to have funds needed to wage an effective campaign,. For example, even assuming someone stole Plaintiff Nader's campaign's funds so that there were not any funds to pay for a campaign, that theft would not be a constitutional violation. Because the second amended complaint fails to allege a constitutional violation, the 42 U.S.C. § 1983 claim must be dismissed, as well as the claim of a conspiracy to violate Plaintiffs' constitutional rights.

Furthermore, the Commonwealth Court's assessment of stenographic and transcription costs and a fee for a handwriting expert on Plaintiffs Nader and Camejo is not a constitutional violation, and was not caused by petition challenger's attorney.

Not every statute that impinges on a political candidate in some fashion, no matter how farfetched, is unconstitutional.  The United States Supreme Court has held that "[a]lthough these rights of voters [the right to vote and to political association] are fundamental, not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally-suspect burdens on voters' rights to associate or to choose among candidates." *Anderson v. Celebrezze*, 460 U.S. 780, 788, 103 S. Ct. 1564, 75 L. Ed. 2d 547 (1983). Further, "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Id.* (citation omitted).

Appellants' constitutional challenge cannot succeed because the cost provision in Section 2937 does not impinge upon any constitutional rights in a way that would warrant constitutional scrutiny. Appellants have provided no evidence to show how the assessment of costs, following a finding by the Commonwealth Court that nearly two-thirds of the signatures on the nomination papers were invalid, penalized their exercise of free speech.

Even if the statute did burden ballot access, which it did not, the burden would be reasonable and rationally related to the interest of the Commonwealth in ensuring honest and fair elections. Unlike the provision declared unconstitutional in Anderson, where an Ohio statute imposed a disparate early filing requirement on an independent candidate for the office of President, Section 2937 allows the court to impose costs where the court deems it just. This is consistent with the interest of the Commonwealth in ensuring fair elections that are free from the taint of fraud. "[T]he right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system." *Burdick v. Takushi*, 504 U.S. 428, 441, 112 S. Ct. 2059, 119 L. Ed. 2d 245 (1992). "[L]imiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable." *Id.* at 440 n.10.

Given the magnitude of the fraud and deception implicated in Appellants' signature-gathering efforts, their claim that the Commonwealth Court acted in an unjust and unconstitutional fashion by assessing transcription and stenography costs does not pass the straight-face test. The legislature has determined that the court, in its discretion when it deems it just, can impose costs. Absent a palpable abuse of discretion, "it is not for the courts to undermine that determination by making a case by case assessment of" what the court found to be just with respect to the campaign that Appellants waged. *In re Nominating Petition of Esther M. Lee*, 578 A.2d at 1279.

*Nader*, 905 A.2d at 459-60.

The Pennsylvania ballot access challenge was not a malicious prosecution and, therefore, cannot be a constitutional violation.  As described in Mem. to Dismiss at 22-23, suits for malicious prosecution are not favored in Virginia, and the standard for "maintaining such actions

are more stringent than those applying to most other tort claims." *Lee v. Southland Corp.,* 244 S.E.2d 756, 758 (Va. 1978). *Commissary Concepts Mgmt. Corp. v. Mziguir,* 594 S.E.2d 915, 917 (Va. 2004); *Ekizion v. Microstrategy, Inc.,* 71 Va. Cir. 425, 426 (Va. Cir. Ct. 2005)*; Westreich v. McFarland*, 429 F.2d 947, 949 (4th Cir. 1970) (same)*.* "A prima facie case for malicious prosecution requires that: (i) the defendants instituted a prior proceeding against the plaintiff; (ii) the proceeding was instituted without probable cause; (iii) the proceeding was instituted with malice; (iv) the underlying proceeding terminated in the plaintiff's favor; and (v) the plaintiff sustained special damages as a result of the proceeding." *Tibbetts v. Yale Corp.,* 47 F. App'x. 648, 653 (4th Cir. 2002) (emphasis supplied); *Westreich,* 429 F.2d at 949 (same); *Wiggs v. Farme*r, 135 S.E.2d 829, 831 (Va. 1964) (same).  Mem. to Dismiss at 22-25, describes why Plaintiffs' malicious prosecution allegations fail to allege malice and special damages.  Clearly, they cannot sustain a charge of malicious prosecution in Pennsylvania because the "underlying proceeding" was not "terminated in the plaintiffs favor."  *Id.*  Therefore there cannot be a constitutional violation as a result of a malicious prosecution.[5]

There was no abuse of process in the Pennsylvania ballot access challenge, and therefore, there was no constitutional violation.  As described in Mem. to Dismiss at 21-22, "To be liable for abuse of process, Defendants must have used 'process not proper in the regular prosecution of proceedings.'" *Tibbetts v. Yale Corp.*, 47 Fed. Appx. 648, 652 (4th Cir. 2002) (citation omitted).  "Abuse of process is 'the wrongful *use* of process *after* it has been issued.'  'The gravamen of the tort lies in the abuse or perversion of the process after it has been issued.' The elements of a prima facie case of abuse of process are: (i) existence of an ulterior motive, and (ii) an act in the use of process not proper in the regular prosecution of the proceedings." *Id.*(internal

---

[5] Voter Plaintiffs cannot claim malicious prosecution for the same reason; the Nader-Camejo campaign did not prevail in the Arizona, Ohio and Oregon litigation.

citations omitted); *Cramer v. Crutchfield,* 496 F. Supp. 949, 954 (ED. Va. 1980)(same).  Thus, a court will not find abuse of process, despite evidence of bad intent, if the defendant after filing an action "engaged in any 'act in the use of the process not proper in the regular prosecution of the proceeding.'" *Tibbetts*, 47 F. App'x at 652 (citation omitted).  Plaintiffs do not cite any finding or orders that Defendants or proposed Defendants abused the legal system.  Rather, they allege that cases were filed pursuant to state statutes to test Plaintiffs' ballot petitions, which is exactly what those state statutes permit.  At most, Plaintiffs complain that litigation costs money, which, by itself, cannot be an abuse of process.  Courts have taken the position that one who seeks to enforce rights which have been violated is not thereby committing a legal wrong, but may actually be performing a moral duty, and that a citizen should have free access to the courts in having his rights determined without being forced to respond in damages when he has caused a prosecution in good faith and on reasonable grounds. *See* 54 C.J.S., Malicious Prosecution, § 3, page 955. Thus, there is no abuse of process that could be a constitutional violation.

### 2. Defendants did not act under color of state law.

The "acting under color of state law" requirement was not met by the Pennsylvania judges who considered the ballot access challenge because the "public official [is] entitled to qualified immunity where acting reasonably within discretionary function of official responsibilities." *Fulani v. McAuliffe*, 2005 U.S. Dist. LEXIS 20400, *11 (S.D.N.Y. 2005) (*referencing Hope v. Pelzer,* 536 U.S. 730, 739 (2002)).  "[M]erely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge."  *Dennis v. Sparks*, 449 U.S. 24, 28 (1980); *Fleming v. Asbill*, 42 F.3d 886, 890 (4th Cir. 1994) ("Private lawyers do not act 'under color of state law' merely by making use of the state's court system."); *Lee v. Patel*, 564 F. Supp. 755, 760 (E.D. Va. 1983) (same).  In *Lugar*

*v. Edmondson Oil Co.*, 457 U.S. 922 (1982), the Court held that the mere "private misuse of a state statute does not describe conduct that can be attributed to the State . . . . " *Id.* at 941. Specifically, the Court held that the plaintiff in that case did <u>not</u> state a claim under § 1983 by alleging (in a separate court) that defendants had *abused* the state legal procedure, and acted unlawfully under state law. "That respondents invoked the statute without the grounds to do so could in no way be attributed to a state rule or a state decision." *Id.* at 940. The Court emphasized that "we do not hold today that 'a private party's mere invocation of state legal procedures constitutes 'joint participation' or 'conspiracy' with state officials satisfying the § 1983 requirement of action under color law.'" *Id.* at 939 n.21.

Plaintiffs might argue that there is state action in the Pennsylvania case, about which they are alleging that Reed Smith's "ties" to various justices of the Pennsylvania Supreme Court corruptly influenced the state Supreme Court's decision. As noted, in *Dennis v. Sparks*, *supra*, the Court held that a section 1983 case <u>could</u> be brought alleging that private parties corruptly conspired with a judge, by bribing him, to produce a judgment against the plaintiffs. But the Court made clear that its holding was limited to the situation in which "the allegations were that an official act of the defendant judge was the product of a corrupt conspiracy involving bribery of the judge." 449 U.S. at 28. It is well settled that state court judges are absolutely immune from liability for damages under 42 U.S.C. § 1983 for their judicial acts. *See Mireles v. Waco*, 502 U.S. 9 (1991). In this case, the Plaintiffs have specifically *not* included any of the Pennsylvania Supreme Court Justices as co-conspirators and have not alleged any conspiracy between any of the Defendants and those judges. (SAC ¶¶ 181-207). In the absence of such allegations, *Dennis* is inapplicable and there is no state action.

As described in Mem. to Dismiss at 21, under this Court's *Shooting Point, L.L.C. v.*

*Cumming* analysis of the Rooker-Feldman doctrine, 238 F. Supp. 2d 729, 737 (E. D. Va. 2002),

*aff'd*, 368 F.3d 379 (4th Cir. 2004), the Plaintiffs' claims must be dismissed.  The Rooker-

Feldman doctrine is based on *D.C. Court of Appeals v. Feldman,* 460 U.S. 462 (1983) and

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

> *Rooker* and *Feldman* exhibit the limited circumstances in which this Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257 [28 USCS § 1257], precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority, e.g., § 1330 (suits against foreign states), § 1331 (federal question), and § 1332 (diversity). In both cases, the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment. Plaintiffs in both cases, alleging federal-question jurisdiction, called upon the District Court to overturn an injurious state-court judgment. Because § 1257, as long interpreted, vests authority to review a state court's judgment solely in this Court.

*Exxon Mobil Corp. v. Saudi Basic Inds. Corp.*, 544 U.S. 280, 291-92 (2005); *Brown & Root, Inc.*

*v. Breckenridge,* 211 F.3d 194 (4th Cir. 2000) (same); *Jordahl v. Democratic Party of Va.*, 122

F.3d 192, 202-03 (4th Cir. 1997) (same); *Shooting Point, L.L.C.*, 238 F. Supp. 2d at 737 (same).

The plaintiffs in *Shooting Point*, like the Plaintiffs here, did "not directly challenge or

attack the state court judgment. Indeed, the complaint barely mentions the prior state proceedings.

Rather, plaintiffs brought this section 1983 lawsuit against the defendants, alleging that they

violated the plaintiffs' constitutional rights.  Nonetheless, the court must decide whether the issues

presented in the federal claims are 'inextricably intertwined' with the state court judgment." *Id.*

This Court explained that, "[t]he state court specifically held that the plaintiffs were required to

obtain a commercial entrance permit for Shooting Point, but that the permit issued by Cumming

was invalid because Shooting Point did not meet the statutory requirements. In so doing, the state

court impliedly determined that the requirement was constitutional as applied to the plaintiffs.

This court cannot now review those decisions without violating the Rooker-Feldman doctrine."

*Id.* at 738.  The same issue is before this Court.  Various courts determined that Nader's ballot petitions were insufficient, and he was prohibited from appearing on the ballot.  Those state court decisions are "inextricably intertwined" with the Plaintiffs' § 1983 claim that Defendants violated the Constitution to keep Nader off the ballot.  Like the plaintiffs in *Shooting Point*, the Plaintiffs' § 1983 claim should be dismissed.

**3. Plaintiffs reliance on *Andrews v. Federal Home Loan Bank of Atlanta* is misplaced.**

Plaintiffs appear to rely on *Andrews v. Federal Home Loan Bank of Atlanta*, 998 F.2d 214, 217 (4th  Cir. 1993) in their memorandum in support of their motion to amend at 3, which they assert holds that "private parties who act in concert with state actors can be liable under 42 U.S.C. § 1983."  Plaintiffs have misstated the holding of *Andrews*, which held:

> In certain circumstances, a private actor can still be bound by constitutional limitations because its "conduct is fairly attributable to the state." In order to show state action by a private entity, however, it must be demonstrated that "the private party charged with the deprivation could be described in all fairness as a state actor." A private party can be deemed a state actor in four contexts: (1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen.

*Id.* (internal citations omitted). This Circuit has "recognized that there is 'no specific formula' for determining whether state action is present. 'What is fairly attributable [to the state] is a matter of normative judgment, and the criteria lack rigid simplicity.' While a variety of factors may bear upon the inquiry, none is individually dispositive; instead, they serve to inform an evaluation of the 'totality of the circumstances.'" *Holly v. Scott*, 434 F.3d 287, 291 (4th Cir. 2006) (internal citations omitted); *DeBauche v. Trani*, 191 F.3d 499, 506-08 (4th Cir. 1999) applied the *Andrews* factors to a political debate sponsored by private and state parties where the plaintiff alleged a constitutional violation because she was not invited to debate.  The court found the invitation

was made by the private party who was not coerced by the state.  There was no state action because the private party was a "willful participant."  *Id.* at 508.  The state actor did not delegate to the private party or otherwise seek to evade a clear constitutional duty.  *Id.*  Holding a private debate is not "traditionally the *exclusive* prerogative of the state." *Id.* (emphasis in original, citation omitted).  Additionally, the state actor did not enforce a right of any private party. *Id.*

Here, there is no allegation that even one of the four *Andrews* factors exist.  "First, when the state has coerced a private party to commit an act that would be unconstitutional if done by the state, it means that the state has ordered specific conduct. This is to say that '[t]he presumption in favor of respecting the private choice of individuals is dissolved by the force of state command.'" *German v. Fox,* 2008 U.S. App. Lexis 1288, *9-10 (4th Cir. 2008) *(quoting Andrews,* 998 F.2d at 217).  Here, Plaintiffs have alleged that the private Defendants created the scheme and not the government.  There is no allegation that the state forced a Defendant to do anything.  There is no allegation that a state actor delegated any duty to a Defendant.  The "'public function' theory recognizes the existence of 'narrow circumstances' where state action arises from the 'exercise by a private entity of powers traditionally exclusively reserved to the State.'" *Holly,* 434 F.3d at 292 (quoting *Andrews,* 998 F.2d at 218 (holding operating a prison is not an exclusive state function)).   Here, the Pennsylvania state courts, not the Defendants, performed the governmental function, and as shown above, they are not subject to 42 U.S.C. § 1983. Finally, there is no allegation that the state enforced a private right.  Thus none of the *Andrews* factors apply.

Thus, the SAC does not allege that any of the Defendants or proposed Defendants acted under color of state law.

## D.  ADDING ADDITIONAL DEFENDANTS WOULD WASTE JUDICIAL RESOURCES

As shown above, Plaintiffs Nader and Camejo have been alleging the same facts and manipulating the procedures in three jurisdictions.  First, they litigated the same facts and claims in the Pennsylvania courts.  Second, they defend the Pennsylvania plaintiffs' attempt to enforce te Pennsylvania judgment in the Superior Court of the District of Columbia by making the same arguments of fraud in the SAC, (SAC ¶¶ 97 and 98).  Third, they filed virtually identical complaints in this Court and in the District of Columbia against different defendants.  Fourth, they are attempting to amend their complaints to have the District of Columbia courts consider the ballot access litigation in Pennsylvania and other states as malicious prosecution and abuse process state tort claims.  At the same time, they are asking this Court to consider the Pennsylvania ballot access litigation and find some of the same "Defendants abused court processes and engaged in malicious prosecution and used other means to violate Plaintiffs' constitutional rights," (SAC ¶ 113), as a violation of 42 U.S. § 1983.

It has long been held that two cases concerning the same allegations asserted by the same plaintiff should not be heard in more than one court.  As described in Defendant McAuliffe's memorandum in support of his motion to dismiss (Document 11-3 at 27-28) and in Defendant Raikin's memorandum in support of his motion to dismiss (Document 14 at 14-16), Plaintiffs have asserted violations in two courts caused by challenges to Ralph Nader's ballot access petitions.  Permitting the addition of the proposed Defendants, who are already defendants in the District of Columbia, would be a further waste of judicial resources.  Plaintiffs are attempting to avoid this problem by dismissing their Federal claims in the District of Columbia case and their state tort claims before this Court.  However, as the original complaints before both courts made clear, the underlying allegations – that the Defendants and co-conspirators improperly filed 2004

presidential ballot petition challenges – is and remains the same.  Thus, Plaintiffs have not resolved the problem they created by requiring two different courts to determine at the same time whether their allegations can be proved.  Whether these allegations support state tort claims, Federal claims or both is not a distinction that merits expenditures by the same defendants in two different courts or the waste of judicial resources. See Fed. R. Civ. P. 1 (The Rules "should be construed and administered to secure the just, speedy, and <u>inexpensive</u> determination of every action and proceeding.") (emphasis added).

When cases pending in more than one District concern the same facts and issues, the "case should be transferred to [the other district court] in order to prevent an extravagantly wasteful and useless duplication of the time and effort of the federal courts by the simultaneous trial of two complex and elaborate cases involving substantially the same factual issues." *General Tire & Rubber Co. v. Watkins*, 373 F.2d 361, 362 (4th Cir. 1967);  *A/S J. Ludwig Mowinckles Rederi v. Tidewater Constr. Corp*., 559 F.2d 928, 933 (4th Cir. 1977).  Regardless of which court a case or cases are pending, "[28 U.S.C.] Section 1927 provides that an attorney 'who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.' Like an award under the court's inherent power, section 1927 also requires a finding of counsel's bad faith as a precondition to the imposition of fees." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1382 n. 25 (4th Cir. 1991) (citation omitted).  *See also* Fed. R. Civ. P. 11(b)(1) ("[N]eedlessly increase the cost of litigation.").

Plaintiffs have requested a trial in two jurisdictions against some of the same Defendants to resolve the same factual allegations.  As described above, two trials "involving substantially the same factual issues" would be "an extravagantly wasteful and useless duplication of the time

and effort of the federal courts," *General Tire & Rubber Co.*, 373 F.2d at 362, and unreasonably

multiply proceedings against the same defendants, 28 U.S.C. § 1927.  Accordingly, Plaintiffs'

motion to add Defendants should be denied.


## CONCLUSION

In view of the futility of the proposed amendment to the Complaint and the multiplicity

of litigation that would be caused by adding the proposed Defendants, the motion to amend

should be denied.

February 20, 2008                                Respectfully submitted,

                                                 __/s/_____
                                                 John Hardin Young, Esq.
                                                 Virginia bar number 13553
                                                 Joseph E. Sandler
                                                 Stephen E. Hershkowitz,
                                                 Virginia bar number 14648

                                                 Attorney for Terry McAuliffe

                                                 Sandler, Reiff & Young, P.C.
                                                 300 M Street, S.E., Suite 1102
                                                 Washington, D.C. 20003

                                                 Phone: (202) 479-1111
                                                 FAX: (202) 479-1115
                                                 Young@sandlerreiff.com

LEXSEE 905 A.2D 450

**IN RE: NOMINATION PAPER OF RALPH NADER AND PETER MIGUEL CAMEJO AS CANDIDATES OF AN INDEPENDENT POLITICAL BODY FOR PRESIDENT AND VICE PRESIDENT IN THE GENERAL ELECTION OF NOVEMBER 2, 2004. LINDA S. SERODY, RODERICK J. SWEETS, RONALD BERGMAN, RICHARD TRINCLISTI, TERRY TRINCLISTI, BERNIE COHEN-SCOTT, DONALD G. BROWN AND JULIA A. O'CONNELL; APPEAL OF: RALPH NADER AND PETER MIGUEL CAMEJO, AND THEIR INDEPENDENT ELECTORS**

**No. 198 MAP 2004, No. 17 MAP 2005**

**SUPREME COURT OF PENNSYLVANIA**

**588 Pa. 450; 905 A.2d 450; 2006 Pa. LEXIS 1546**

**March 1, 2006, Argued**
**August 22, 2006, Decided**

**SUBSEQUENT HISTORY:** US Supreme Court certiorari denied by Nader v. Serody, 127 S. Ct. 995, 166 L. Ed. 2d 712, 2007 U.S. LEXIS 123 (U.S., Jan. 8, 2007)

**PRIOR HISTORY:** [***1] Appeal from the Order of the Commonwealth Court entered October 14, 2004 at No. 568 MD 2004. Appeal from the Order of the Commonwealth Court entered January 14, 2005 at No. 568 MD 2004. Trial Court Judges: James Gardner Colins, Commonwealth Court President Judge.
In re Nomination Paper of Nader, 580 Pa. 134, 860 A.2d 1, 2004 Pa. LEXIS 2408 (2004)

**DISPOSITION:** The court quashed the appeal from the first order. It affirmed the second order.

**COUNSEL:** For Ralph Nader/Peter Miguel Camejo, APPELLANT: Michelle Stirman Pierson, Esq., Marcus James Lemon, Esq., J. Matthew Wolfe, Esq., Ronald Lee Hicks, Jr., Esq., Andrew Lee Noble, Esq., Basil Culyba, Pro Hac Vice, Ross A. Dreyer, Pro Hac Vice.

For Linda S. Serody, APPELLEE: William S. Gordon, Esq.,Christopher K. Walters, Esq., Ira Steven Lefton, Esq., Daniel I. Booker, Esq.

For Ronald Bergman, APPELLEE:,Nicholas R. Sabatine, III, Esq., Efrem M. Grail, Esq.

For Richard Trinclisti, APPELLEE: Andrea Beth Simonson, Cynthia E. Kernick, Esq.

For Bernie Cohen-Scott, APPELLEE: Kim M. Watterson, Esq., Melissa Joy Oretsky, Esq.

For Julia A. O'Connell, APPELLEE: Brian Anthony Gordon, Esq., Gregory M. Harvey, Esq.

For Bureau of Elections, APPELLEE: Louis Lawrence Boyle, Esq.

For Roderick Sweets, APPELLEE: Milind Madhukar Shah, Esq., Barbara Kiely, Esq.

For Donald G. Brown, APPELLEE: James P. Williamson, Esq.

For et al Linda S. Serody, APPELLEE: Kim M. Watterson, Esq., Cynthia E. Kernick, Esq., Jeffrey John Bresch, Esq., James Michael Doerfler, Esq., Jeremy David Feinstein, Esq., Mark Lawrence Tamburri, Esq., Efrem M. Grail, Esq.,Lisa M. Campoli, Esq., John M. McIntyre.

For Bureau of Commissions, Elections and Legislation, PARTICIPANTS: Louis Lawrence Boyle, Esq.

For Commonwealth of Pennsylvania, PARTICIPANTS: Thomas W. Corbett, Jr., Esq.

588 Pa. 450, *; 905 A.2d 450, **;
2006 Pa. LEXIS 1546, ***1

**JUDGES:** BEFORE: MADAME JUSTICE NEWMAN. Mr. Chief Justice Cappy and Messrs. Justice Castille and Baer and Madame Justice Baldwin join the opinion. Mr. Justice Eakin files a concurring and dissenting opinion. Mr. Justice Saylor files a dissenting opinion.

**OPINION BY:** NEWMAN

**OPINION**

[**453] [*455] **MADAME JUSTICE NEWMAN**

Appellants Ralph Nader (Nader) and Peter Miguel Camejo (Camejo) appeal two Orders of the Commonwealth Court assessing costs against them individually and against their unsuccessful campaign for the respective offices of President and Vice-President of the United States. For the reasons that follow, we affirm the Orders of the Commonwealth Court that required Appellants to pay transcription and stenography costs in the amount of $ 82,102.19 to Appellees.

FACTS AND PROCEDURAL HISTORY

Appellees are registered voters in Pennsylvania who waged a successful battle to set aside Nomination Papers that Appellants filed to secure positions as candidates on the Pennsylvania ballot for the [***2] November 2, 2004 General Election. The Commonwealth Court granted the relief that Appellees sought and found that wide-ranging fraud and deception had occurred during the signature-gathering process of Appellants. The stenographic and transcription costs that are the subject of this Opinion were incurred during hearings held regarding Appellees' challenge.

A review of the extensive litigation history regarding the campaign of Appellants is essential to understanding the issue presented today. The genesis of the controversy dates back to August 2, 2004, when Appellants filed Nomination Papers to appear as candidates on the Pennsylvania ballot for the November 2, 2004 General Election. On August 9, 2004, Appellees Linda S. Serody, *et al.*, filed a Petition alleging that the Nomination Papers contained insufficient valid, genuine, authentic, and complete signatures to qualify Nader and Camejo to appear on the ballot.

Appellants filed Initial Objections to the Petition on August 17, 2004, and on August 19, 2004, the Commonwealth Court ordered the parties to present all pre-trial evidentiary objections, including questions with regard to the manner in which [*456] the Commonwealth Court [***3] would review the challenged signatures. Appellants filed an Application to Dismiss the Petition, along with additional Objections on August 23, 2004 and August 24, 2004.

On August 30, 2004, the Commonwealth Court set aside the Nomination Papers and disqualified Nader and Camejo from the ballot because they had accepted the nomination of the Reform Party in Michigan, thus violating Section 951(e) of the Election Code. [1] The Commonwealth Court [**454] further disqualified Camejo for the reason that his candidate's affidavit falsely indicated that he was not enrolled in a political party, despite the fact that he was a member of the California Green Party. The Order also addressed Appellants' procedural objections. In re Nomination Paper of Ralph Nader, 856 A.2d 908 (Pa. Cmwlth. 2004) (rev'd, In re Nomination Paper of Ralph Nader, 579 Pa. 561, 858 A.2d 58 (Pa. 2004)).

1   Section 951(e) of the Election Code provides that:

> There shall be appended to each Nomination Paper offered for filing an affidavit of each candidate nominated therein, stating--(1) the election district in which he resides; (2) the name of the office for which he consents to be a candidate; (3) that he is eligible for such office; (4) that he will not knowingly violate any provision of this act, or of any law regulating and limiting election expenses, and prohibiting corrupt practices in connection therewith; (5) that his name has not been presented as a candidate by nomination petitions for any public office to be voted for at the ensuing primary election, nor has he been nominated by any other Nomination Papers filed for any such office; (6) that in the case where he is a candidate for election at a general or municipal election,

588 Pa. 450, *456; 905 A.2d 450, **454;
2006 Pa. LEXIS 1546, ***3

he was not a registered and enrolled member of a party thirty (30) days before the primary held prior to the general or municipal election in that same year; (7) that, in the case where he is a candidate for election at a special election, he is not a registered and enrolled member of a party.

25 P.S. § 2911(e), declared unconstitutional as applied by In re Nomination Paper of Ralph Nader, 580 Pa. 22, 858 A.2d 1167 (Pa. 2004).

[***4] Appellants appealed that Order to our Court, and on September 20, 2004, we reversed and vacated the Order and remanded the case for expedited evidentiary hearings. In re Nomination Paper of Ralph Nader, 579 Pa. 561, 858 A.2d 58 (Pa. 2004). In a subsequently issued Opinion, we addressed Appellants' procedural challenges. In re Nomination Paper of Ralph Nader, 580 Pa. 22, 858 A.2d 1167 (Pa. 2004).

[*457] On remand, the Commonwealth Court dedicated monumental effort and resources to implement the standards for signature review that we addressed. The court provided detailed and comprehensive hearing procedures and schedules to promote fairness and efficiency with respect to the challenged signatures. The Commonwealth Court held weeks of hearings across the Commonwealth, with twelve judges conducting a line-by-line review of the challenged signatures in sixty-three counties. [2]

2   President Judge Colins, Judges Smith-Ribner, McGinley, Pellegrini, Friedman, Leadbetter, Cohn Jubelirer, Simpson, and Senior Judges Mirarchi, Kelley, Jiuliante, and Flaherty presided over the signature review process. There were four counties in which no challenges to the Nomination Papers were filed.

[***5] In addition to regular business hours, the court sat on evenings and weekends. The Commonwealth Court issued continuances regarding its regular hearing schedule to enable the judges to conduct these hearings.

After the hearings commenced, Appellants filed an Application to Amend the Order, arguing that the signatures of individuals who are not registered voters should be counted in evaluating the sufficiency of the Nomination Papers. On September 27, 2004, the Commonwealth Court denied this Application.

On September 27, 2004, Appellants filed an Application for Extraordinary Relief, asking this Court to exercise King's Bench jurisdiction. We denied that request, with Mr. Justice Saylor filing a concurring and dissenting opinion.

The previously mentioned statewide hearings in Commonwealth Court that began on September 27, 2004, continued until October 12, 2004. On October 13, 2004, the Commonwealth Court, following three weeks of hearings throughout the state, [**455] issued its Findings, Opinion, and Order setting aside the Nomination Papers. The court ordered the Secretary of the Commonwealth not to certify Appellants' names as candidates in the November 2, 2004 General Election.

The [***6] Order of the Commonwealth Court concluded that the Nomination Papers did not contain the required 25,697 valid [*458] signatures and found that the Nomination Papers contained only 18,818 valid signatures. Nearly two-thirds of the signatures that had been submitted in support of the Appellants were struck. The court concluded that:

> [T]his signature gathering process was the most deceitful and fraudulent exercise ever perpetrated upon this Court. The conduct of the [Appellants] through their representatives (not their attorneys) shocks the conscience of the Court. In reviewing signatures, it became apparent, that in addition to signing names such as "Mickey Mouse," "Fred Flintstone," "John Kerry," and the ubiquitous "Ralph Nader," there were thousands of names that were created at random and then randomly assigned either existent or non-existent addresses by the circulators.

Commonwealth Court, October 13, 2004, Consolidated Findings, Opinion, and Order at 14 (emphasis added).

The Commonwealth Court issued the first Order that is the subject of this appeal on October 14, 2004. The Order stated:

> [E]xcept as otherwise ordered, all costs

588 Pa. 450, *458; 905 A.2d 450, **455;
2006 Pa. LEXIS 1546, ***6

for court stenographer [***7] appearances and transcript preparation are hereby assessed against the Nader/Camejo campaign, Ralph Nader and Peter Miguel Camejo individually. The Chief Clerk is directed to forward any future invoices filed with the court by any court stenographer involved in the hearings . . . to the Nader/Camejo campaign and Ralph Nader and Peter Miguel Camejo for payment.

Commonwealth Court Order, 568 M.D. 2004, October 14, 2004.

On that same day, Appellants appealed to our Court from the Order of October 13, 2004, setting aside the Nomination Papers. Appellants also filed an Application for Supersedeas asking this Court to stay the Commonwealth Court Order.

On October 19, 2004, we issued a *per curiam* Order affirming the October 13, 2004 Order of the Commonwealth Court. Mr. Justice Saylor filed a dissenting statement on October 22, 2004. We also denied the Application for Supersedeas.

[*459] The Commonwealth Court issued its second Order relevant to this appeal on January 14, 2005. That Order stated that "the Court having given consideration to [Appellees'] Bill of Costs and the response filed in opposition thereto, said Bill of Costs is approved and [Appellants] are [***8] directed to pay $ 81,102.19 to [Appellees]." Commonwealth Court Order, 568 M.D. 2004, January 14, 2005.

A Bill of Costs submitted to the Commonwealth Court identified $ 42,835.19 of the total amount as costs of court reporter appearances, transcription of proceedings, and transcripts. Appellees' Reproduced Record, 17 MAP 2005, Petitioners' Bill of Costs, II. "Itemized Listing of Costs." The costs imposed for handwriting expert witnesses totaled $ 38,267.00. Id.

Appellants appealed these two Orders separately, with each case assigned its own docket number. On October 13, 2005, this Court granted oral argument and consolidated the separate matters. The Court issued a briefing schedule and directed the parties to file supplemental briefs on three issues: (1) whether the Order of the Commonwealth Court dated October 14, 2004,

[**456] was an appealable Order; (2) whether the Commonwealth Court had jurisdiction to enter the Order dated January 14, 2005; and (3) whether Appellants preserved the question of the Commonwealth Court's authority to assess costs against them under 25 P.S. § 2937. [3]

3    Section 2937 (**Objections to nomination petitions and papers**) provides:

**All nomination petitions and papers** received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court specifically setting forth the objections thereto, and praying that the said petition or paper be set aside. A copy of said petition shall, within said period, be served on the officer or board with whom said nomination petition or paper was filed. Upon the presentation of such a petition, the court shall make an order fixing a time for hearing which shall not be later than ten days after the last day for filing said nomination petition or paper, and specifying the time and manner of notice that shall be given to the candidate or candidates named in the nomination petition or paper sought to be set aside. On the day fixed for said hearing, the court shall proceed without delay to hear said objections, and shall give such hearing precedence over other business before it, and shall finally determine said matter not later than fifteen (15) days after the last day for filing said nomination petitions or papers. If the court shall find that said nomination petition or paper is defective under the provisions of section 976, or does not contain a sufficient number of genuine signatures of electors

entitled to sign the same under the provisions of this act, or was not filed by persons entitled to file the same, it shall be set aside. If the objections relate to material errors or defects apparent on the face of the nomination petition or paper, **the court, after hearing, may, in its discretion, permit amendments within such time and upon such terms as to payment of costs, as the said court may specify. In case any such petition is dismissed, the court shall make such order as to the payment of the costs of the proceedings, including witness fees, as it shall deem just.**

25 P.S. § 2937 (emphasis added).

[***9] [*460] The parties presented oral argument on these issues on March 1, 2006.

DISCUSSION

"[A]ppellate review of an order of a tribunal awarding counsel fees to a litigant is limited solely to determining whether the tribunal palpably abused its discretion in making the fee award." Lucchino v. Commonwealth, 570 Pa. 277, 809 A.2d 264, 268-69 (Pa. 2002) (citing Thunberg v. Strause, 545 Pa. 607, 682 A.2d 295, 299 (Pa. 1996)). [4]

    4  In the matter *sub judice*, the Commonwealth Court Orders imposed only the actual costs of the litigation, which included the stenographic and transcription costs related to the hearings. The Orders did not encompass the legal fees that Appellees incurred in bringing their challenge.

The costs assessed to Appellants were incurred during hearings held with respect to the challenge of Appellees to their Nomination Papers. In proceedings involving challenges to a nomination paper, the appellate court will reverse a trial court order only when the findings [***10] of fact are not supported by substantial evidence, there was an abuse of discretion, or errors of law were committed. In re: Nomination of Flaherty, 564 Pa. 671, 770 A.2d 327, 331 (Pa. 2001).

The underlying issue for our examination is whether the Commonwealth Court was authorized to impose costs on Appellants, where Appellees were victorious in setting aside the Nomination Papers of those candidates. For the reasons that [*461] follow, we affirm the Orders of the Commonwealth Court, based on statutory authority set forth at 25 P.S. § 2937 and the dictates of our prior case law.

The first question we set forth in our briefing Order was whether the October 14, 2004 Order was appealable. The [**457] briefing by the parties on this issue was cursory, with Appellants and Appellees agreeing that the Order should be considered appealable. However, this Court "'has only that jurisdiction as is provided by law[,]l'" and the appealability of an order raises an issue of the jurisdiction of the Court. Commonwealth v. Saunders, 483 Pa. 29, 394 A.2d 522, 524 (Pa. 1978) (quoting, PA. CONSTIT. art. V § 2(c)). The fact that Appellees in the instant [***11] matter agreed that the Order was appealable cannot confer jurisdiction on the Court if it is otherwise lacking.

Section 723 of the Judicial Code provides this Court with jurisdiction and states that as a general rule, "[t]he Supreme Court shall have exclusive jurisdiction of appeals from **final orders** of the Commonwealth Court entered in any matter which was originally commenced in the Commonwealth Court except an order entered in a matter which constitutes an appeal to the Commonwealth Court from another court, a magisterial district judge or another governmental unit." 42 Pa.C.S. § 723(a) (emphasis added). Accordingly, for the October 14, 2004 Order to be appealable, it must constitute a "final order" of the Commonwealth Court.

Pursuant to Pa.R.A.P. 341(b)(1), a final order is "any order: that (1) disposes of all claims and all parties. . . . " The October 14, 2004 Order did not dispose of the entire case of Appellants; therefore, it was not a final order. However, the subsequent Order of January 14, 2005, which established the amount that the Appellants were required to pay, ended the litigation and is a final order [***12] from which an appeal was permitted.

Accordingly, with respect to the first issue, we hold that the October 14, 2004 Order was not a final Order and, as a result, we quash the appeal taken from that Order. Further, as to the contention of Appellees that Appellants waived [*462] the statutory argument concerning Section 2937 because they did not raise it in

their appeal of the first Order, Appellants did advance that argument with respect to their appeal of the January 14, 2005 Order, and we find that the issue was not waived.

Despite the explicit findings of the Commonwealth Court regarding the massive deception and fraud involved in Appellants' signature campaign to qualify as candidates on the Pennsylvania ballot in the 2004 General Election, Appellants adhere to their position of victimization and blamelessness. "[T]he candidates [sic] nominating papers were not set aside based on any wrongdoing by the campaign or the candidates, but rather on a serious and legitimate question of statutory construction . . . ." Brief of Appellants at 10.

Soldiering on with this same perspective, Appellants advise us that "[n]ow, their resources exhausted, [they] are assessed costs for defending [***13] their right to seek political office and, in so doing, have brought before this Court a case of first impression on a most substantive question of Pennsylvania Election Code interpretation that will inform all future elections in the Commonwealth." Id. at 10-11.

Appellants are incorrect on all points: (1) the Commonwealth Court did not assess costs in order to penalize Appellants' exercise of political speech; (2) the Election Code authorizes the assessment of costs; and (3) this Court has validated the imposition of costs where a nomination petition has been set aside in In re Nominating Petition of Esther M. Lee, 525 Pa. 155, 578 A.2d 1277, 1279 n.3 (Pa. 1990). [5]

> 5   In Lee, we reversed the Order of the Commonwealth Court that set aside the nomination petition of the candidate because the objector had failed to serve the Secretary of the Commonwealth with the petition to set aside. However, we noted that a court can impose costs, *inter alia*, when a nominating petition is set aside.

[***14] [**458] Pursuant to setting aside nomination petitions or papers, Section 2937 provides:

> If the court shall find that said nomination petition or paper is defective under the provisions of section 976, or does not contain a sufficient number of genuine signatures of electors [*463] entitled to sign the same under the

provisions of this act, or was not filed by persons entitled to file the same, it shall be set aside. If the objections relate to material errors or defects apparent on the face of the nomination petition or paper, **the court, after hearing, may, in its discretion, permit amendments within such time and upon such terms as to payment of costs, as the said court may specify. In case any such petition is dismissed, the court shall make such order as to the payment of the costs of the proceedings, including witness fees, as it shall deem just.**

25 P.S. § 2937 (emphasis added).

Thus, pursuant to Section 2937, the court, in situations it deems just, has the discretion to impose costs. Appellants' interpretation of this section is at best confusing and not well articulated.

First, Appellants claim that Section 2937 "does *not* authorize an [***15] award of costs against a candidate whose nomination *papers* are set aside." Supplemental Brief of Appellants at 4. Appellants argue that "[n]o where in § 2937 did the legislature confer subject matter jurisdiction on the court to order the payment of costs in any case where nomination papers are dismissed." Id. However, they provide no support for their position that the authority of a court to impose costs varies depending on whether it is adjudicating a challenge to a nomination petition as opposed to a nomination paper.

Appellants misconstrue that portion of Section 2937, which provides that "[i]n case any such **petition** is dismissed," costs can be awarded. Contrary to their assertion that the use of the word "petition" creates a distinction between nominating petitions and nomination papers, this Court, in discussing the meaning of "petition" at that Section, has determined that this phrase "discusses *both* nomination petitions and petitions to set aside a nomination petition. Thus, the court can impose costs, as justice requires, when either the nominating petition is set aside or the petition to set aside the nomination petition is dismissed." In re Nominating Petition of Esther M. Lee, [*464] 578 A.2d at 1279 n.3. [***16] We did not make the distinction between "nomination papers" and "nomination petitions" that Appellants proffer. Instead, we affirmed the authority of the court "to impose costs, as

justice requires" when a nominating petition is set aside. Id. In the instant case, the Commonwealth Court set aside Appellants' Nomination Papers based on "the most deceitful and fraudulent exercise ever perpetrated upon this Court." Commonwealth Court, October 13, 2004, Consolidated Findings, Opinion, and Order at 14.

In another misguided effort, Appellants argue that Section 2937 does not confer "subject matter jurisdiction on the court" to impose costs where nomination papers are dismissed, and that a court can do so only when a nomination petition is dismissed. This contention that the Commonwealth Court lacked "subject matter jurisdiction" to award costs is erroneous. Clearly, the Commonwealth Court possesses authority pursuant to the Election Code to adjudicate disputes concerning elections. Pursuant to 42 Pa.C.S. § 764 [**459] (Election contests and other matters), the Commonwealth Court has original exclusive jurisdiction of matters relating to statewide office, including [***17] the instant dispute challenging the qualification of Appellants to appear on the Pennsylvania ballot as candidates for the offices of President and Vice-President of the United States. The issue of imposition of costs is clearly related to the Commonwealth Court's adjudication of the challenged Nomination Papers of Appellants.

Finally, in their scattershot approach, Appellants allege that the Orders imposing costs are "manifestly unfair and constitute[] an unconstitutional penalty against the exercise of political speech." Brief of Appellants at 11. Appellants demonstrate their continuing state of denial regarding the findings of the Commonwealth Court that "[t]he conduct of the Candidates, through their representatives (not their attorneys) shocks the conscience of the Court." Commonwealth Court Opinion, Consolidated Findings, Opinions and Order at 13-14.

Not every statute that impinges on a political candidate in some fashion, no matter how farfetched, is unconstitutional. [*465] The United States Supreme Court has held that "[a]lthough these rights of voters [the right to vote and to political association] are fundamental, not all restrictions imposed by the States on candidates' [***18] eligibility for the ballot impose constitutionally-suspect burdens on voters' rights to associate or to choose among candidates." Anderson v. Celebrezze, 460 U.S. 780, 788, 103 S. Ct. 1564, 75 L. Ed. 2d 547 (1983). Further, "as a practical matter, there must be a substantial regulation of elections if they are to be

fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." Id. (citation omitted).

Appellants' constitutional challenge cannot succeed because the cost provision in Section 2937 does not impinge upon any constitutional rights in a way that would warrant constitutional scrutiny. Appellants have provided no evidence to show how the assessment of costs, following a finding by the Commonwealth Court that nearly two-thirds of the signatures on the nomination papers were invalid, penalized their exercise of free speech.

Even if the statute did burden ballot access, which it did not, the burden would be reasonable and rationally related to the interest of the Commonwealth in ensuring honest and fair elections. Unlike the provision declared unconstitutional in Anderson, where an Ohio statute imposed a disparate early filing [***19] requirement on an independent candidate for the office of President, Section 2937 allows the court to impose [**460] costs where the court deems it just. This is consistent with the interest of the Commonwealth in ensuring fair elections that are free from the taint of fraud. "[T]he right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system." Burdick v. Takushi, 504 U.S. 428, 441, 112 S. Ct. 2059, 119 L. Ed. 2d 245 (1992). "[L]imiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable." Id. at 440 n.10.

[*466] Given the magnitude of the fraud and deception implicated in Appellants' signature-gathering efforts, their claim that the Commonwealth Court acted in an unjust and unconstitutional fashion by assessing transcription and stenography costs does not pass the straight-face test. The legislature has determined that the court, in its discretion when it deems it just, can impose costs. Absent a palpable abuse of discretion, "it is not for the [***20] courts to undermine that determination by making a case by case assessment of" what the court found to be just with respect to the campaign that Appellants waged. In re Nominating Petition of Esther M. Lee, 578 A.2d at 1279. [6]

    6   In Lee, the provision of Section 2937 that we reviewed regarded the requirement to file a

588 Pa. 450, *466; 905 A.2d 450, **460;
2006 Pa. LEXIS 1546, ***20

petition objecting to nomination papers or petitions with the Secretary of the Commonwealth. However, the principle of respecting the determination of the legislature is analogous to the one we determine *sub judice.*

CONCLUSION

The Commonwealth Court acted pursuant to statutory authority in assessing costs to Appellants, where their signature-gathering campaign involved fraud and deception of massive proportions. Appellants have raised no cognizable constitutional claim to invalidate the issuance of the Orders that imposed the costs of the hearings on Appellants. Precedent of this Court has established that the court is authorized to impose costs when a nominating [***21] petition is set aside or a petition to set aside a nominating petition is dismissed. See In re Nominating Petition of Esther M. Lee, 525 Pa. 155, 578 A.2d 1277, 1279 n. 3 (Pa. 1990). Appellants have failed to demonstrate that the Commonwealth Court's findings of fact were not supported by substantial evidence, that there was an abuse of discretion, or that errors of law were committed.

Accordingly, we quash the appeal taken from the Order of October 14, 2004, and affirm the January 14, 2005 Order of the Commonwealth Court.

Mr. Chief Justice Cappy and Messrs. Justice Castille and Baer and Madame Justice Baldwin join the opinion.

 [*467] Mr. Justice Eakin files a concurring and dissenting opinion.

Mr. Justice Saylor files a dissenting opinion.

**CONCUR BY:** Eakin

**DISSENT BY:** Eakin; Saylor

**DISSENT**

**CONCURRING AND DISSENTING OPINION**

**MR. JUSTICE EAKIN**

I agree with Mr. Justice Saylor's analysis of 25 P.S. § 2937; however, I write separately to note certain costs the Commonwealth Court ordered appellants to pay may have been awarded under separate authority.

The Commonwealth Court's October 14, 2004 order required appellants to pay [***22] transcription and stenography costs, but did not cite any authority for that charge. The court did not write an opinion explaining its rationale. The Commonwealth Court's January 14, 2005 order directed appellants to pay $ 81,102.19 in total costs and likewise omitted any citation to authority or opinion explaining its rationale. As the majority notes, a bill of costs submitted to the Commonwealth Court identified $ 42,835.19 of the total amount as costs of court reporter appearances, transcription of proceedings, and transcripts. Majority Slip Op., at 7 (citing Appellees' Reproduced Record, 17 MAP 2005, Petitioners' Bill of Costs, II. "Itemized Listing of Costs."). The costs imposed for handwriting expert witnesses totaled $ 38,267.00. Id.

While § 2937 cannot provide the basis for the January 14, 2005 order, the court could have levied the $ 42,835.19 in costs under § 322 of its Internal Operating Procedures. [1] However, there is no alternate [**461] provision authorizing the imposition of expert witness fees in this instance; [2] thus, the Commonwealth Court lacked authority to charge appellants for the $ 38,267.00 in expert witness costs. Accordingly, I would affirm the January 14, 2005 order [***23] to the extent it awarded $ 42,835.19 in [*468] costs, and I would reverse it to the extent it awarded an additional $ 38,267.00 in costs.

> 1   Section 322 provides in relevant part, "In any proceeding where a stenographer is present, the presiding judge or duty judge shall, incident to the disposition of the proceeding, provide by order for the allocation of the costs for the stenographer. Such costs normally include the appearance fee and the cost for the transcription of the notes of testimony ...." 42 Pa.C.S. § 322.
>
> 2   The rules of civil procedure are not applicable to a challenge to a nomination petition or paper. In re Nomination Petition of Johnson, 509 Pa. 347, 502 A.2d 142, 145 (Pa. 1985).

**DISSENTING OPINION**

**MR. JUSTICE SAYLOR**

I respectfully dissent, as I believe that Section 977 of the Election Code, by its terms, authorizes an assessment of costs against objectors upon the dismissal of petitions challenging nomination petitions and [***24] papers, but not against candidates upon the setting aside of nomination petitions and papers.

588 Pa. 450, *468; 905 A.2d 450, **461;
2006 Pa. LEXIS 1546, ***24

As the majority notes Section 977 provides, in relevant part, as follows:

**Objections to nomination petitions and papers:**

All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court specifically setting forth the objection thereto, and praying that the said petition or paper be set aside. A copy of said petition shall, within the said period, be served on the officer of board with whom said nomination petition or paper was filed. Upon the presentation of such a petition, the court shall make an order fixing a time for hearing . . . If the court shall find that said nomination petition or paper is defective . . . it shall be set aside. . . . In case any such petition is dismissed, the court shall make such order as to the payment of the costs of the proceedings, including witness fees, as it shall deem just. . . .

25 P.S. § 2937 (emphasis [***25] added). It seems apparent, at least to me, that each of the three highlighted references to "said petition," "such a petition," and "any such petition" is an abbreviated reference back to the petition to set aside nomination petitions and papers that is delineated at the outset of the statutory provision.

The majority's holding, however, is apparently that the last of these encompasses not only objection petitions, but additionally serves as a generic reference also subsuming both nomination petitions and papers filed by candidates. See [*469] Majority Opinion, slip op. at 11-12. I find such reading to be implausible for several reasons.

First, the two prior references back in the statute clearly could not serve such an enlarged function, since their context (discussing the service of objections and the requirement of a hearing triggered by the filing of objections) makes plain that they refer exclusively to objectors' petitions to set aside. I therefore have difficulty with the conclusion that a third and parallel reference was intended by the Legislature to serve a much more expansive purpose. Second, nowhere else in the statute (and, at least to my knowledge, in the Election [***26] Code) did the General Assembly use the word "petition" to generically include both nomination petitions and papers, let alone nomination petitions, nomination papers, and objections to nomination petitions and papers. Indeed, the General Assembly was otherwise very careful in Section 977 [**462] to specify both nomination "petitions and papers" in every proviso in which the candidates' filings are addressed. Further, a broad, generic use of the word "petition" to address three discrete forms of documents under the Election Code spanning both candidate and objector submissions is not only uncharacteristic, but also seems to me to be unnatural. Moreover, the more natural construction of the statute is consistent with the precept that the Election Code should be construed liberally, in favor of candidates' ballot access. See In re Nomination Petition of Driscoll, 577 Pa. 501, 507, 847 A.2d 44, 48 (2004). Fourth, in delineating the consequences of the filing of defective nomination petitions and papers, Section 977 indicates that these documents should be "set aside" upon appropriate and meritorious challenge, 25 P.S. § 2937, whereas the assessment of [***27] costs is authorized by the statute only when a petition is "dismissed." Id. The phraseology of "setting aside" attaching to the treatment of nomination petitions and papers comports with their filing with the Secretary of the Commonwealth or county boards of elections as opposed to in courts of law, see 25 P.S. §§ 2873, 2913,

588 Pa. 450, *469; 905 A.2d 450, **462;
2006 Pa. LEXIS 1546, ***27

whereas, the use of the term "dismissal" in the cost-assessment provision more properly [*470] aligns with the disposition of documents submitted to the courts, here, objection petitions.

Finally, I do not find the Court's brief, footnoted expression to the contrary in In re Nominating Petition of Lee, 525 Pa. 155, 578 A.2d 1277 (1990), to be controlling. See id. at 160 n.3, 578 A.2d at 1279 n.3 (indicating that "the court can impose costs, as justice requires, when either the nominating petition is set aside or the petition to set aside the nominating petition is dismissed"). Significantly, such statement is manifestly dictum, since the Court had otherwise found no basis to support an award of costs against the

candidate, who was successful in having his nomination [***28] petition reinstated. See id. at 160, 578 A.2d at 1279. Therefore, the statement is not binding in this case, see Commonwealth v. Singley, 582 Pa. 5, 15, 868 A.2d 403, 409 (2005) (expressing the axiom that "a statement in [a] prior opinion, which clearly was not decisional but merely dicta, 'is not binding upon us'" (citation omitted)), in which the majority finds the relevant issue to be adequately preserved and squarely before the Court.

In summary, I believe that cost award against Appellants lacks a statutory basis, and therefore, I would reverse the orders of the Commonwealth Court.