UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

_____
                                            :
Ralph Nader, et al.         :
    v.                              :     Civ. No. 1:07cv1101
Terry McAuliffe, et unum.   :
_____:

## DEFENDANT TERRY MCAULIFFE'S REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### INTRODUCTION

Remarkably, Plaintiffs' Response does not even attempt to describe a violation of law. Instead, Plaintiffs rely only on a conclusory allegation about a constitutional violation regarding the right of independent candidates to have a place on the ballot.[1] This alleged constitutional violation is the underlying basis for the 42 U.S.C. § 1983 claims that the Defendants "conspired to prevent Mr. Nader and Mr. Camejo from running for public office in the 2004 general election, and to deny Plaintiff-voters the choice of voting for them, by combining with 18 state or local Democratic Parties, the Democratic National Committee and others to abuse the state nomination procedures for independent candidates as a means to bankrupt the Nader-Camejo campaign." Am. Comp. at ¶¶ 1, 56, 62. Response at 12-13. An examination of the alleged facts underlying this conclusion shows only that Plaintiffs have filed challenges to ballot access petitions in 18 states <u>pursuant to the law of those states</u>. That is not a violation of the Constitution. Plaintiffs have not alleged a violation of 42 U.S.C. § 1983.

---

[1] *e.g.* "Defendants conspired and agreed with co-Conspirators to use court processes and other means to violate Plaintiffs' constitutional rights guaranteed by the Qualification Clause, the First and fourteenth amendments and other wise secured by the United States constitution." Am. Comp. ¶ 247; ¶ 253(similar). No further explanation of the "constitutional rights" is specified.

The allegation that Defendants worked with others to oppose Nader-Camejo's election by challenging their ballot petitions in state courts and before the appropriate state agencies, moreover, does not describe a tort or a constitutional violation for several reasons. First, the allegation that Nader-Camejo's campaign expended resources for litigation to defend their ballot petitions would not describe a tort or constitutional violation even if the campaign were a plaintiff. Second, the allegation that the Nader-Camejo campaign was not well funded and it had to expend resources to defend its ballot petitions does not describe a tort or a constitutional violation. Thus, the allegation that Democrats opposed the Nader-Camejo campaign is irrelevant and certainly is not a tort or constitutional violation. To the contrary, as shown in Defendants' memoranda supporting their motions to dismiss and opposing the Plaintiffs' motion to amend the complaint, the relevant state courts found the ballot access petitions inadequate, and some courts specifically found that the Nader-Camejo campaign submitted blatantly inadequate petitions. The Complaint alleges nothing more than litigation authorized by state election statutes designed to protect the state ballot process is a constitutional violation. This is nothing more than a back door attack on state election laws that allegedly discriminate against independent candidates. Worse, it seeks financial compensation from political competitors in this Court for litigation costs and damages as a result of litigation in state courts that ended in 2004, in spite of this jurisdictions two-year statute of limitations.

We respond below to the assertions Plaintiffs made in their Response in turn.

## I. THE PLEADING STANDARD

The Plaintiffs urge this Court to use the discredited *Conley v. Gibson*, 355 U.S. 41 (1957) standard for pleadings. Although the Response at 3 and 4 nominally cites *Bell Atl. Corp. v.Twombly*, _ U.S. _, 127 S. Ct. 155 (2007), Plaintiffs continue to rely on quotations from *Conley v Gibson*, 355 U.S. 41, 47 (1957), *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) and 5 *C.Wright & A Miller* (3rd ed. 2004). Plaintiffs ignore *Twombly's* requirement that factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at, 1965. The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. As discussed below, Plaintiffs have failed to meet this threshold.

## II. CIVIL CONSPIRACY

Plaintiffs Response at 5 relies on *Firestone v. Wiley*, 485 F. Supp. 2d 694 (E.D. Va. 2007) for the elements that must be proven for a civil conspiracy.

> In Virginia, the elements of a common law civil conspiracy claim are (i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) results in damage to plaintiff. *Glass v. Glass*, 228 Va. 39, 47, 321 S.E.2d 69 (1984). And importantly, the Supreme Court of Virginia has recently held that "in Virginia, a common law claim of civil conspiracy generally requires proof that the underlying tort was committed." *Almy v. Grisham*, 273 Va. 68, 639 S.E.2d 182, 189 (2007). This is so because "[t]he gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use unlawful means." *Id*. at 190. Thus, where "there is no actionable claim for the underlying alleged wrong, there can be no action for civil conspiracy based on that wrong." *Citizens for Fauquier County v. SPR Corp.*, 37 Va. Cir. 44, 50 (1995).

*Firestone,* 485 F. Supp. 2d at 703. As this Court succinctly explained, "To determine if the pleadings sufficiently state a cause of action for civil conspiracy, 'the court must look to the allegations of that underlying wrong.'" *Johnson v. D & D Home Loans Corp.*, 2007 U.S. Dist. LEXIS 90140, * (E.D. Va. 2007) (citing *Gallop v. Sharp*, 179 Va. 335, 338, 19 S.E.2d 84 (1942).

Plaintiffs have not alleged facts describing an underlying violation of law. Instead, Plaintiffs offer the following conclusion: "Finally, plaintiffs allege that, in furtherance of the conspiracy, the conspirators filed 24 state court complaints and five FEC complaints against the Nader-Camejo campaign within 12 weeks between June and September 2004, and engaged in numerous acts of harassment, intimidation and sabotage, all of which had the purpose and effect of causing plaintiffs financial injury and other damages and violating their constitutional rights. [Am. Comp.] ¶¶ 69-234." Response at 6. Filing complaints pursuant to state election law statutes is not unconstitutional and "the expense and annoyance of litigation is 'part of the social burden of living under government.'" *FTC v. Std. Oil Co.*, 449 U.S. 232, 244 (U.S. 1980) (internal citations omitted). Plaintiffs have not alleged any plausible facts describing a constitutional – or any other – violation. Rather, Plaintiffs have alleged only that complaints were filed according to state law to test the adequacy of Plaintiffs' ballot petitions – a lawful purpose pursued by a lawful means. Accordingly, Plaintiffs have not alleged a civil conspiracy.

### III. STATUTE OF LIMITATIONS

**A. No allegations of violative conduct occurred within the two-year limitations period and none remain ongoing.**

Plaintiffs allege that the FEC administrative complaints "were not resolved until April 21, 2006." Response at 7. The administrative complaint could not have resulted in any limitation on ballot access as the FEC has no jurisdiction in this area. At most, the administrative complaints were requests to a government investigative agency to investigate. In fact, the FEC found reason to believe a violation had occurred by Nader for President 2004 and others (but not the Plaintiffs) but took no action. *See* www.FEC.gov (MURs 5489, 5581,5513, 5533) at http://eqs.nictusa.com/eqs/searcheqs?SUBMIT=page&ORDERBY=&PAGE_NO=undefined. The FEC cannot impose any sanctions on respondents and must file a civil suit in a federal

4

district court to impose sanctions for violations of the campaign finance laws. 2 U.S.C. § 437g.

Thus, the administrative complaints are not part of the alleged conspiracy to deny Plaintiffs'

access to the ballot.

Plaintiffs also allege that the conspiracy "continues to the present day in the form of attachment proceedings that co-conspirator Reed Smith initiated in an effort to seize $61,638.45 from Mr. Nader's personal accounts." Response at 7 (referring to Am. Comp. ¶¶ 181-207).[2] However, that proceeding does not meet the test for tolling the statute of limitations set forth by this Circuit in *United States v. Maryland & Virginia Milk Producers Coop. Ass'n*, 1992 U.S. App. LEXIS 22748, 1992-2 Trade Cases (CCH) ¶69,959 (4th Cir. 1992).

> In *United States v. Kissel*, Justice Holmes, writing for the Court, observed that if a conspiracy contemplates a continuance in time, the "conspiracy continues up until the time of success or abandonment." 218 U.S. 601, 608 (1910). In *Grunewald v. United States*, the Supreme Court noted: "The crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy." 353 U.S. 391, 397 (1957). "Thus, as long as some action is necessary to achieve a conspiratorial objective, a conspiracy, under the Sherman Act or otherwise, continues until the offense has been abandoned or until the objective is accomplished." *United States v. A-A-A Electric Co., Inc.*, 788 F.2d 242, 245 (4th Cir. 1986) (citations omitted). In light of this, "The statute of limitations period begins to run, not from the date of the legally cognizable harm, but from the date of the last overt act." *Id*. (citations omitted).

*United States v. Maryland & Virginia Milk Producers Coop. Ass'n*, 1992 U.S. App. LEXIS 22748, * 37-38. Plaintiffs defined the scope of the alleged conspiracy in the first paragraph of the Complaint, as a conspiracy "to prevent Plaintiffs Ralph Nader and Peter Miguel Camejo (hereinafter, "Nader-Camejo") from running for President and Vice President of the United

---

[2] The underlying case where the judgment for costs was rendered is described in detail in Defendant McAuliffe's memorandum in opposition to Plaintiffs' motion to amend their complaint. Plaintiffs allege this judgment "was wrongfully procured by means of a fraud upon the court." Response at 7 (citing Am. Comp. ¶¶ 181-207). Plaintiffs cite no authority for this Court's jurisdiction to hear and provide relief for a "fraud" upon the Supreme Court of Pennsylvania, nor do they attempt to explain what this action to enforce a judgment for costs has to do with the 2004 election.

States in 2004, in an effort to deny Plaintiff-voters and others the choice of voting for them." The conspiratorial agreement ended with the election in November 2004. The attachment action in the District of Columbia began after the 2004 election and, therefore, has nothing to do with the 2004 election.

Plaintiffs also assert that Defendants illegal activity has not ceased. Response at 9. But the only activity described is the attempt to enforce a foreign judgment. The legal issue in this case is not whether the enforcement of the judgment is proper, but whether the alleged conspiracy exists to prevent Nader-Camejo from appearing on the 2004 presidential ballot.[3]

**B. There was no fraudulent concealment that tolled the statute of limitations.**

Plaintiffs claim that they have alleged facts that toll the statute of limitations. Their sole statement of fact is: " Because Plaintiffs do in fact raise such 'factual setoffs,' including allegations of fraudulent concealment that Defendants completely fail to address, Am. Comp. at ¶¶ 66-67, Defendants' statute of limitations affirmative defense must fail." Response at 11 (citation omitted). However, Am. Comp. ¶ 66 merely alleges that Plaintiffs were misled about the Democratic National Committee's involvement, but admit that "FEC records now confirm, the DNC hired several of the state parties' law firms." Am. Comp. ¶ 67 alleges that "despite John Kerry's disavowal, the Kerry-Edwards Campaign directly participated in at least one lawsuit Conspirators filed against Nader-Camejo." The alleged participation was the drafting of a complaint and cooperation with the attorneys who filed it by the Kerry-Edwards deputy

---

[3] Even Plaintiffs do not describe this ancillary litigation as a constitutional violation. Moreover, it is Plaintiff Nader, not Reed Smith, who has failed to comply with the Pennsylvania court's order. Reed Smith on behalf of its client has not engaged in an unlawful act by asking the District of Columbia court to enforce the Pennsylvania court's judgment for court costs. It is hypocritical for Ralph Nader, who is responsible for ignoring a court order, to use his own delaying tactics as an excuse for tolling the statute of limitations.

6

national director for northern New England. Am. Comp. ¶ 61. Neither of these allegations toll the statute of limitations.

Plaintiffs cite District of Columbia cases about tolling the statute of limitations that are inapplicable here. This Court has held that:

> [The Virginia Supreme Court] has explained, "Mere silence by the person liable is not concealment, but there must be some affirmative act or representation designed to prevent, and which does prevent, the discovery of the cause of action." *Newman v. Walker*, 270 Va. 291, 618 S.E.2d 336, 338 (Va. 2005) (quoting Culpepper *Nat'l Bank v. Tidewater Improvement Co.*, 119 Va. 73, 89 S.E. 118 (Va. 1916)). Under the court's reasoning both an "affirmative act of misrepresentation" and an act "designed or intended, directly or indirectly, to obstruct" must be present to toll the statute. *Id*. at 340.

*Trident-Brambleton, L.L.C. v. PPR No. 1, L.L.C.*, 2006 U.S. Dist. LEXIS 48752, *12-13 (E.D. Va. 2006). Here Plaintiffs have not alleged any action or statement by the Kerry-Edwards campaign or the Democratic National Committee that was designed to or did conceal the cause of action. Indeed, all of the ballot access challenges were filed publicly. Even Plaintiffs admit the Democratic National Committee was not silent about its alleged participation, but rather it filed FEC reports that included a description of its alleged financial participation. Am. Comp. § 66. The complaint prepared with the alleged assistance of a person who was employed by the Kerry-Edwards campaign was made public more than two years before the Complaint was filed. This alleged Kerry-Edwards campaign participation also did not prevent discovery of the cause of action. Thus, Plaintiffs have not alleged any facts that toll the Virginia statute of limitations.

The alleged cause of action was the filing of the ballot access challenges that occurred more than two years before the complaint was filed. Indeed, the Complaint is replete with descriptions of public statements attributed to their spokespersons that the Plaintiffs allege is proof of an illegal conspiracy, and the Plaintiffs still did not name them as defendants. Am. Comp. ¶¶ 47-65. For example, Plaintiffs quote a public statement by the then-chairman of the Democratic National committee Terry McAuliffe on July 29, 2004 as an example of the

7

announcement of the "Game Plan" "to file groundless and abusive lawsuits and otherwise obstruct the Nader-Camejo campaign as many times in as many states as possible during the 2004 election. " Am. Comp. ¶55.  This and other allegations demonstrate that Plaintiffs had knowledge of the alleged conspiracy in 2004 and the alleged participation by the Democratic National Committee and others in 2004. Thus, there is no reason to toll the statute of limitations.

### IV. PLAINTIFFS FAIL TO STATE A CLAIM UNDER 42 U.S. § 1983

**A. Plaintiffs have failed to allege a tort or constitutional violation underlying a violation of 42 U.S.C. § 1983.**

Plaintiffs have not responded to Defendant McAuliffe's showing that the Complaint does not allege a constitutional violation, (Mem. at 8), an abuse of process, (Mem. at 21), or a malicious prosecution, (Mem. at 22-24).  See also Defendants' Opposition To Plaintiffs' Motion To Amend Their Complaint at 12-15.  Thus, Plaintiffs have not alleged a violation of 42 U.S.C. § 1983.

**B. Plaintiffs have failed to allege involvement of a state actor or alleged that the Defendants acted under color of state law.**

**1. Plaintiffs do not allege that Defendants acted under color of state law.**

Plaintiffs allegations do not meet any of the tests set forth by this Circuit to determine whether private parties acted under color of law under 42 U.S.C. § 1983.

Here, there is no allegation that Defendants meet even one of the four tests in *Andrews v. Federal Home Loan Bank of Atlanta*, 998 F.2d 214, 217 (4th Cir. 1993).  "First, when the state has coerced a private party to commit an act that would be unconstitutional if done by the state, it means that the state has ordered specific conduct. This is to say that '[t]he presumption in favor of respecting the private choice of individuals is dissolved by the force of state command.'" *German v. Fox,* 2008 U.S. App. Lexis 1288, *9-10 (4th Cir. 2008) *(quoting Andrews,* 998 F.2d at 217).  Here, Plaintiffs have alleged that the private Defendants created the scheme and not the

8

government. There is no allegation that the state forced a Defendant to do anything. There is no allegation that a state actor delegated any duty to a Defendant. The "'public function' theory recognizes the existence of 'narrow circumstances' where state action arises from the 'exercise by a private entity of powers traditionally exclusively reserved to the State.'" *Holly v. Scott,* 434 F.3d 287, 292 (4th Cir 2006) (quoting *Andrews,* 998 F.2d at 218 (holding operating a prison is not an exclusive state function)). Here, the state courts, not the Defendants, performed the governmental function of determining whether the ballot petitions were sufficient. There is no allegation that the state sought to evade a duty and delegated responsibility to a private party. Finally, there is no allegation that the state enforced a private right. Thus none of the *Andrews* factors apply.

Plaintiffs rely on *Rossignol v. Voorhaar*, 316 F. 3d 516 (4th Cir. 2003), where sheriff deputies purchased all of the edition of a newspaper critical of <u>their official duties</u> before the election for the office of sheriff. At the time, the deputies were off duty and the issue was whether they were acting under color of law.

> During the course of the mass purchase, a group of defendants met with an on-duty sheriff's deputy who had contacted them on their department-issued pagers in order to conduct official business. Some defendants also stopped at a Sheriff's Office outpost to use facilities there during the course of the evening. One defendant wore his Fraternal Order of Police sweatshirt with the word "Sheriff" written on top of the county seal. Two other defendants carried their service weapons during the mass purchase; those firearms are visible on two videotapes of the incident and were noticed by at least one eyewitness. Many local clerks were quite familiar with county law enforcement personnel because of 7-Eleven's policy of giving free coffee and soft drinks to police officers, even those out of uniform. Thus, many of the clerks who interacted with defendants during the night knew that they were sheriff's deputies. One clerk testified that he sold the full supply of the paper to defendants because they were police officers, had a "real intimidating attitude," and made it "real apparent [that] they could make my life here a living hell." A different clerk told one of her store's other customers that the St. Mary's deputies were taking all of the papers. A manager of one 7-Eleven was told by one of her night employees that "it was a police officer [who] bought them." A clerk at another store also explained to her manager the next morning that "cops came in and bought them all." And a police report on the incident further notes that "several of the clerks" at convenience stores and a night

      watchman at Walmart had "recognized some of [the men involved in the seizure] as St. Mary's County Deputies."

*Rossignol*, 316 F.3d at 520-21.

      Plaintiffs misconstrue the dispositive facts of that case when they assert that the issue was a conspiracy among off duty policemen "to suppress the election day edition of a local newspaper, because they believed the newspaper's criticism <u>would harm their preferred candidates</u> in the election. Response at 14 (emphasis added).  Judge Wilkins, in *Rossignol* explained: "Thus, a key consideration in determining whether a law enforcement officer's actions are attributable to the state is whether the 'defendant's purportedly private actions are linked to events which arose out of his official status.' *Rossignol*, 316 F.3d at 524, 316 F.3d at 524. In *Rossignol*, the defendants were sheriff's deputies who conducted a countywide mass purchase of the plaintiff's newspaper. *See Rossignol*, 316 F.3d at 519-20, 316 F.3d at 519-20. A panel of the Court concluded that the deputies' actions were attributable to the state because the deputies were motivated to suppress <u>criticism of their official conduct</u>. *See id*. at 524-25.. at 524-25." *Givens v. O'Quinn*, 121 Fed. Appx. 984, 988-989 (4th Cir. 2005) (Judge Wilkins concurring in part and dissenting in part) (emphasis added).  Judge Gregory, another member of the *Rossignol* panel explained: "In reaching our decision in *Rossignol*, we concluded that 'what is fairly attributed to the State "is a matter of normative judgment, and the criteria lack rigid simplicity."' *Id*. at 523. at 523 (internal citations omitted). Consequently, we held in *Rossignol* that 'where the sole intention of a public official is to <u>suppress speech critical of his conduct of official duties or fitness for public office</u>, his actions are more fairly attributable to the state.' *Id*. at 524. at 524. Further, after looking to the totality of the circumstances, we found that the deputies' conduct bore a 'sufficiently close nexus with the state to be fairly treated' as actions under the color of

10

state law or as state action, pursuant to § 1983. *Id*. at 525. at 525."*Givens v. O'Quinn*, 121 Fed. Appx. 984, 995 (4th Cir. 2005) (Judge Gregory dissenting in part) (emphasis added).

In *Rossignol* state action was found because the state employees <u>suppressed speech</u> critical of <u>their official duties</u>, not their preferred candidates. Plaintiffs have not alleged that any of the Defendants or conspirators were government officials who were suppressing speech critical of their own official conduct. Indeed, there is no allegation that any speech was suppressed. "The color of law requirement excludes from the reach of § 1983 all 'merely private conduct, no matter how discriminatory or wrongful.'" *Rossignol*, 316 F.3d at 523 (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, (1999). There is no question that states have the authority and responsibility to establish criteria for inclusion on their ballots. "States may require persons to demonstrate 'a significant modicum of support' before allowing them access to the general-election ballot, lest it become unmanageable." *N.Y. State Bd. of Elections v. Lopez Torres*, 128 S. Ct. 791, 798 (U.S. 2008) (citing *Jenness v. Fortson*, 403 U.S. 431, 442, 91 S. Ct. 1970, 29 L. Ed. 2d 554 (1971).[4] Plaintiffs have alleged that the Defendants and conspirators complied with the state statutes challenging the Plaintiffs' ballot access petitions. Thus, *Rossignol* supports Defendants' argument that the Complaint fails to allege that the Defendants or conspirators acted under color of state law by merely filing ballot access challenges.

### 2. Plaintiffs do not allege that state actors were part of the alleged conspiracy.

As described above, government employees can act in their private capacities without acting under color of law. "The color of law requirement excludes from the reach of § 1983 all 'merely private conduct, no matter how discriminatory or wrongful.' If the substance of § 1983

---

[4] Plaintiffs reference to the racial discriminatory primary cases *Terry*, *Allwright* and *Bullock* are not applicable here because the Plaintiffs are not suing the state for discriminatory laws. Indeed, Plaintiffs have not directly challenged any law as unconstitutional in this litigation.

is not to be substantially eviscerated, however, 'its ambit cannot be a simple line between States and people operating outside formally governmental organizations.' Section 1983 therefore includes within its scope apparently private actions which have a 'sufficiently close nexus' with the State to be 'fairly treated as that of the State itself.' *Rossignol*, 316 F.3d at 523 (internal citations omitted).  None of the seven examples listed in Plaintiffs' Response at 13 allege actions with a close nexus with a state function, authority or responsibility.

The Amended Complaint at ¶ 103 alleges "that Democratic Speaker of the Illinois State House Michael Madigan's staff secured copies of Nader-Camejo's nomination papers in order, on information and belief, to help prepare Mr. Tully's complaint."  Assuming this is true, obtaining public documents and providing them to the public does not implicate state action in a violation of the constitution.   The state has not coerced or prevented any illegal activity.  Thus, this allegation does not involve state action for the purpose of 42 U.S.C. § 1983 claim.

 The Amended Complaint at ¶ 146 alleges that district Judge Wendy York denied Nader-Camejo's right to run as independent candidates but did not reveal to Plaintiffs before her decision that she had donated $1,000 to Democratic presidential candidate John Kerry's campaign.  Apparently, Plaintiffs are alleging that anyone who donated to the Kerry campaign is a co-conspirator, and because the Judge was a state employee that made a decision unfavorable to the Plaintiffs, then she has linked the Defendants to a state action.[5]  Plaintiffs do not explain this conclusion, and it is too far fetched to speculate an appropriate response.

The Amended Complaint at ¶¶ 176-177 alleges that a contributor to the Democratic National Committee and a member of the Oregon Democratic Party's Presidential Council sent two letters to the Oregon Secretary of State asserting that the Nader-Camejo nomination papers

---

[5] The Kerry-Edwards campaign publicly reported all $1,000 contributions.

were defective. The Secretary of State invalidated hundreds of signatures and that decision was reversed by the County Circuit Court. In other words, Plaintiffs are alleging state involvement in a conspiracy occurs when a Democratic contributor writes a letter to a state official that is considering Plaintiffs' petition. There is no allegation of any coercion, bribery or extortion of the state official, or any allegation of contact initiated by the state official. Thus, there is no allegation of a state official involved in the conspiracy sufficient to find an action under color of law for a violation of 42 U.S.C. § 1983.

The Amended Complaint at ¶¶ 183-84 alleges that state legislators assisted in the preparation of the ballot access complaint with the support of 170 volunteers recruited by these legislators. Again, this allegation does not implicate the authority of the state and does not turn an action by state employees into state action.

The Amended Complaint at ¶¶ 196-97, 204-05 contains the allegations of impropriety by the Pennsylvania Supreme Court justices fully described in Defendant's memorandum in opposition to amending the complaint. These allegations assert bias on the part of the Justices in connection with their decision affirming the lower courts assessment of costs on the Plaintiffs. As already described, the assessment of costs cannot be legally included in the conspiracy, and the alleged bias is not legally cognizable.

The Amended Complaint at . ¶¶ 218-19 alleges that the West Virginia Secretary of State asked the West Virginia Attorney General to conduct an investigation of the Plaintiffs ballot access petitions. The Attorney General filed a complaint asking the court to order Plaintiffs to appear at a hearing. Again, Plaintiffs have merely alleged that a state official made an unfavorable decision. This does not implicate state action in a conspiracy any more than a state court judge making an unfavorable decision is involved in a conspiracy.

Plaintiffs have failed in all of their examples to allege any facts that meet the public function, nexus or public action tests of acting under color of state law.

## V. PLAINTIFS' REQUEST FOR INJUNCTIVE RELIEF IS MOOT

Plaintiffs misconstrue the "capable of repetition, yet evading review" exception to the mootness doctrine and fail to respond to Defendants' arguments. First, Plaintiffs have not responded to Defendant McAuliffe's argument that it is speculative and extremely unlikely that the series of events described in their Complaint would recur. It is not plausible that the alleged conspiracy is "capable of repetition." Second, Plaintiffs have not responded to the argument that even if the events were to recur, Plaintiffs would have an opportunity to contest them in court as they did in 2004. Third, Plaintiffs fail to acknowledge that Mr. McAuliffe is no longer the chairman of the Democratic National Committee and that the candidates in 2008 for the presidency are individuals other than John Kerry. Indeed, if they had made their constitutional claims while the ballot access cases were pending, their arguments could have been heard by the state courts most familiar with the facts and with the ability to take action before the 2004 election.[6]

---

[6] Plaintiffs also unsuccessfully attempt to refute the fact that the *Rooker-Feldman* and *Noer-Pennington* doctrines prevent recovery in this case, as well as the fact that Plaintiffs' lack standing, all of which are set forth in Mr. McAuliffe's memorandum and need not be repeated.

## CONCLUSION

In view of the above, Defendant McAuliffe requests that the Complaint be dismissed.

February 26, 2008                                   Respectfully submitted,

                                                    __/s/_____
John Hardin Young, Esq.
Virginia bar number13553
Joseph E. Sandler
Stephen E. Hershkowitz,
Virginia bar number 14648

Attorney for Terry McAuliffe

Sandler, Reiff & Young, P.C.
300 M Street, S.E., Suite 1102
Washington, D.C. 20003

Phone: (202) 479-1111
FAX: (202) 479-1115
Young@sandlerreiff.com