UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RALPH NADER, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) 1:07-cv-01101-JCC-TCB |
| TERRY MCAULIFFE, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF MOTION OF DEFENDANT STEVE RAIKIN
TO DISMISS THE AMENDED COMPLAINT OR,
IN THE ALTERNATIVE, TO TRANSFER VENUE**

Plaintiffs' opposition to Defendants' motions to dismiss and transfer purports only to address their federal claims (section 1983 and conspiracy to commit section 1983 violations). Brazenly helping themselves to the relief they seek in their pending motion for leave to file an amended complaint – which has yet to be heard by, or fully briefed in, this Court – Plaintiffs apparently see no reason to address Defendants' dismissal motion insofar as it pertains to the vast bulk of the allegations in their Amended Complaint – the dozens of paragraphs and pages addressing the various actions that had been litigated in states other than Pennsylvania in 2004, and the two counts for abuse of process and malicious prosecution, and conspiracy to commit the same.  Accordingly, they do not address the substantial statute-of-limitations and other defenses to those claims.  Having waived their response to the motion to dismiss with respect to the state-law claims, Counts I and II of the Amended Complaint should be dismissed with prejudice.

The Court should also dismiss the federal claims in the Amended Complaint or, in the alternative, transfer the action to the United States District Court for the District of Columbia.

**1.     The Court Should Dismiss The Amended Complaint.**

   A.     <u>The Federal Claims Are Time-Barred</u>.

The federal claims are time-barred by the applicable two-year statute of limitations. Try as they might to muddy the waters by now claiming an ongoing conspiracy or "fraudulent concealment" so as to withstand a motion to dismiss, the statute of limitations involves a clean legal question that must resolved on the face of the pleadings.

***The section 1983 and conspiracy claims accrued in 2004.*** Relying on paragraphs of the Amended Complaint that they drop from their proposed Second Amended Complaint (thus contradicting – whenever it suits them – their otherwise stated desire to address only the allegations of the proposed Second Amended Complaint), Plaintiffs now contend because one FEC action was not finally resolved until April 2006, and the attachment proceedings for costs in the Pennsylvania action continue to this day, their claims fall within the "ongoing conspiracy" or "continuing tort" rule governing accrual of causes of action. *See* Pl. Resp. in Opp. To Defs. Motns. To Dismiss and Mtns. To Transfer ("Pl. Resp. in Opp.") at 7-8. In support thereof, they cite case law concerning civil conspiracy in entirely different contexts.

The law is clear, however, that a plaintiff complaining of a conspiracy *under section 1983* cannot succeed simply by proving or alleging an unlawful agreement and an overt act. He must instead prove that "the conspiracy resulted in [a] deprivation of a constitutional right." *Hinkle v. City of Clarksburg,* 81 F.3d 416, 421 (4th Cir. 1996). This is important for determining when a section 1983 cause of action and related conspiracy claim accrue for statute-of-limitations purposes. "The position . . . that the continuance of a conspiracy beyond the date when injury or

2

damage occurs extends the statute of limitations *has been rejected by courts considering the issue in the context of a § 1983 action.*" *Morales v. Robinson*, 2007 WL 1074836 *8 (S.D.W. Va. Apr. 6, 2007) (emphasis added) (citing *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1106 (6th Cir. 1995)). "The rationale is that injury and damage in a civil conspiracy action flow from the overt acts, not from the mere continuance of a conspiracy." *Id.* (internal quotations omitted). And thus, according to every circuit court to have addressed the question, "the statute of limitations runs separately from each overt act that is alleged to cause damage to the plaintiff." *Id.* (citing *Lawrence v. Acree*, 665 F.2d 1319, 1324 (D.C. Cir. 1981); other citations omitted).

Here, the alleged constitutional injury flowing from the section 1983 violation – that "Defendants conspired to prevent Mr. Nader and Mr. Camejo from running for public office in the 2004 general election, and to deny Plaintiff-voters the choice of voting for them," Pl. Resp. in Opp. at 12 – would have occurred before and ceased after the general election in 2004. Any financial or other injuries allegedly suffered by Plaintiffs that does not amount to a deprivation of a federal constitutional right – including any allegations relating "to a conspiracy to bankrupt" Nader, *see* Pl. Resp. in Opp. at 8 – are not cognizable under section 1983 or a related conspiracy claim. *See Hinkle v. City of Clarksburg, supra*. Insofar as the alleged injuries resulting from the "continuing" acts after 2004 did not rise to the level of federal constitutional rights deprivations, the section 1983 and related conspiracy claims are time-barred.

***Fraudulent Concealment Theory is Unavailing.*** Plaintiffs' argument of "fraudulent concealment" is as nonsensical as it meritless. Simply stringing together case law that suggests fraudulent concealment *may* in theory defeat a statute-of-limitations defense in some jurisdictions does not make it so in any given case. Moreover, virtually all of the case law they

3

cite is from jurisdictions other than Virginia. The only relevant law from Virginia construes a statutory provision not at issue here, *see Grimes v. Suzukawa*, 551 S.E.2d 644, 646 (Va. 2001) (addressing tolling provision of Virginia Code § 8.01-229(D), which deals with when defendants affirmatively obstruct the filing of a cause of action). The other cite from within this jurisdiction, *Bireline v. Seagondollar*, 567 F.2d 260, 262 (4th Cir. 1977), while applying a North Carolina limitations period to the section 1983 claim, confirms that "[w]hile the time limitation itself is borrowed from state law, the federal rule fixes the time of accrual of a right of action." *Id.* (citing *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1965)); *see also Wallace v. Kato*, 126 S. Ct. 1091, 1095 (2007) (same). "This federal rule establishes as the time of accrual that point in time when the plaintiff knows or *has reason to know of the injury which is the basis of his action.*" *Bireline*, 567 F.2d at 562 (emphasis added) (citing *Young v. Clinchfield Railroad Company* 288 F.2d 499, 503 (4th Cir. 1961)).

Here, the alleged constitutional injury suffered by Plaintiffs would have occurred in November 2007 or before. There is no basis upon which they could allege, nor do they allege, that they did not have reason to know of such injury at that time. They offer no legal support for the proposition that mere allegations that they may not have known the identities of all of the alleged co-conspirators suffices to toll the statute of limitations under Virginia law, or to forestall accrual of the cause of action. And their "factual" allegations tell the opposite story: the entire basis upon which they rest their allegations of conspiracy, abuse of process and malicious prosecution are press reports in 2004 of a meeting at the Democratic National Convention among some of the alleged co-conspirators. Because they knew or had reason to know of these press reports in 2004, their "fraudulent concealment" argument fails as a matter of law.

4

Plaintiffs' section 1983 and related conspiracy claims accrued at the time of the alleged constitutional injury – the general election in 2004 and the states' run-up to it – and thus are time-barred under the applicable two-year statute of limitations.

### B. Plaintiffs Have Failed to Allege "State Action".

In their response in opposition to the motions to dismiss and transfer, Plaintiffs hang their "state action" claims on two theories: (1) that "state actors in several states . . . engaged in acts that furthered the goals of the conspiracy" (Pl. Resp. in Opp. at 13), and (2) that the state or local Democratic Parties "act[ed] in the state's stead whey they operate[d] in the electoral arena" (Pl. Resp. in Opp. at 16). Both theories are unavailing.

With regard to their first theory, as stated in Defendant Raikin's memorandum of law in opposition to Plaintiffs' motion for leave to amend, a private actor cannot be held liable under section 1983 unless "the claimed deprivation has resulted from the exercise of a right or privilege *having its source in state authority*" **and** the private actor can be "appropriately characterized as [a] 'state actor[].'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982) (emphasis added); *see also, e.g.*, *Mentavlos v. Anderson*, 249 F.3d 301, 321-22 (4th Cir. 2001) (holding that Citadel students – private actors – were not cloaked in state action because they were alleged to have *violated* state law). Neither showing has been made here with respect to any of the alleged co-conspirators. The Amended Complaint does not identify state law or state processes that Defendants or alleged co-conspirators are supposed to have acted pursuant to (rather than in violation of) in depriving Plaintiffs of any constitutional right, nor do they identify facts that might support a conclusion that the Defendants or alleged co-conspirators had "a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is *engaged in the state's actions*." *DeBauche*, 191 F.3d at 506 (emphasis added).

On the latter point, the Fourth Circuit's decision in *Andrews v. Fed.l Home Loan Bank of Atlanta*, 998 F.2d 214 (4th Cir. 1993) unequivocally holds that "[a] private party can be deemed a state actor" *only*:

> (1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen.

998 F.2d at 217. "If the conduct does not fall into one of these four categories," *Andrews* holds, "then the private conduct is not an action of the state." *Id.*

Applying the *Andrews* test, the bare "fact" (presumed to be true for purposes of this discussion only) that certain state officials "furthered the goals of the conspiracy" does not remotely show that any alleged co-conspirator (much less Raikin himself) was coerced by the state into unconstitutional action, that the state evaded its constitutional duties through delegation to any co-conspirator or Defendant, that any co-conspirator or Defendant conducted a traditionally and exclusively public function, or that the state committed any unconstitutional act while enforcing any co-conspirator's or Defendant's rights. It does not even show that Raikin acted in concert with state actors, which would not suffice to establish "state action" in any event. *Cf. DeBauche*, 191 F.3d at 507 (explaining that Supreme Court precedent "certainly does not stand for the proposition that all public and private joint activity subjects the private actors to the requirements of the Fourteenth Amendment"; reiterating *Andrews* test for state action).

The only case now cited by Plaintiffs, *Rossignol v. Voorhaar*, 316 F.3d 516 (4th Cir. 2003), is entirely inapposite. The defendants there were not entirely individuals acting in their private capacities, or "off-duty sheriff's deputies," as claimed by Plaintiffs. Pl. Resp. in Opp. at 15. Instead, as Plaintiffs' description of the case acknowledges, the Court relied upon the fact

6

that a state official – a local sheriff – was a defendant and "actively encouraged and sanctioned the organized censorship of his political opponents by his subordinates, . . . and placed the blanket of his protection over the perpetrators." *Id.* at 527.  Similar facts simply are not alleged here, where all of the Defendants and alleged co-conspirators are private entities.

Plaintiffs' second theory of "state action" – that the state and local Democratic Parties were somehow acting in the state's stead – is similarly misplaced.  Whether or not a party organization may be exercising "delegated state power" through the primary election or convention process because state law allows it to "certif[y] its nominee for automatic placement on [a state's] general election a ballot," *Morse v. Republican Party of Virginia*, 517 U.S. 186, 195 (1996), there is no legitimate argument that a party exercises "delegated state power" when it chooses to act as, or support, a private plaintiff in ballot access challenges against a potential general election candidate.  As the United States Supreme Court recently reiterated, a political party's rights as a private association may be "circumscribed . . . when the State gives the party a role in the election process" by statute.  *New York State Bd. of Elections v. Lopez Torres*, 128 S. Ct. 791, 797 (2008).  And yet, even then, the Court has not held a political party's actions in such circumstances are in *all instances and all capacities* imbued with state action.

Here, there is no possible suggestion that the states have given the state or local political parties a significant or unique statutory role with respect to initiating ballot access challenges against general election candidates.  Nor is there any suggestion that they have been "delegated state power" with respect to such challenges.

Plaintiffs seek to oppose the motions to dismiss by putting forth confusing legal positions and allegations in an attempt to muddy the waters enough to move forward.  Here, however, the

case law is clear and the Court is presented with clean legal questions. Plaintiffs have failed to allege "state action."

   C. The *Rooker-Feldman* Doctrine Bars Plaintiffs' Claims Relating to Pennsylvania.

  Insofar as Plaintiffs seek by their federal claims to contest post-2004 conduct relating to the propriety of the Pennsylvania courts' award of court costs to Reed Smith, and Reed Smith's subsequent collection efforts against Nader and Camejo, their claims are clearly barred by what even Plaintiffs concede constitutes the core of the *Rooker-Feldman* doctrine: a bar against "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). Plaintiffs seek, in effect, review by this Court of the propriety of the Pennsylvania courts' award of court costs. Their federal claims relating to the Pennsylvania action are barred.

**2. In The Alternative, The Motion To Transfer Should Be Granted.**

  For all the reasons set forth in Defendants' original motion, and strengthened by the Plaintiffs' motion for leave to file a second amended complaint, the Court should – if it chooses not to dismiss this case – transfer it to the United States District Court for the District of Columbia. That first-filed action, originally lodged in the District of Columbia Superior Court and later removed to the federal district court, remains pending in federal court and involves far more Defendants than named herein. Although Plaintiffs have moved to remand the D.C. case back to Superior Court, they are by no means entitled to a remand simply because they dropped their federal claims in a clear forum-shopping and claim-splitting procedural maneuver.

  Moreover, while the motion to remand will not be fully briefed until April, defendants in the D.C. action have pointed out that the circumstances of Plaintiffs' procedural tactics warrant

retention of supplemental jurisdiction by the federal district court pursuant to 28 U.S.C. § 1367(c). *See, e.g.*, *Osborn v. Haley*, 127 S. Ct. 881, 896 (2007) (district court retains discretion to exercise jurisdiction over state-law claims once federal claims have been eliminated from the action). And, if Plaintiffs' federal claims in this action are transferred to the District of Columbia and the two cases are consolidated, the purported ground for the attempted remand no longer exists and Plaintiffs' procedural maneuvers are laid bare.

In any event, so long as the first-filed case remains pending in federal district court elsewhere, pursuit of claims based upon identical underlying facts in this forum would result in "an extravagantly wasteful and useless duplication of the time and effort of the federal courts." *Gen. Tire & Rubber Co. v. Watkins*, 373 F.2d 361, 362 (4th Cir. 1967) (*en banc*) (reversing denial of writ of mandamus and issuing writ to transfer action in order to avoid simultaneous litigation of two cases involving the same underlying facts).

## CONCLUSION

For the foregoing reasons, the motion to dismiss the Amended Complaint or, in the alternative, to transfer the action to the District of Columbia should be granted.

Dated: February 27, 2008                                         Respectfully submitted,

                                                                           /S/
                                        Warren T. Allen II
                                        Virginia Bar Number 72691
                                        Preeta Bansal
                                        (Admitted *Pro Hac Vice*)
                                        Lawrence M. Noble
                                        (Admitted *Pro Hac Vice*)
                                        *Attorneys for Defendant Steven Raikin*
                                        Skadden, Arps, Slate, Meagher & Flom LLP
                                        1440 New York Avenue, N.W.
                                        Washington, D.C.  20005-2111
                                        Tel. (202) 371-7000
                                        Fax. (202) 661-9121
                                        wtallen@skadden.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of February, 2008, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John Hardin Young, Esq.
Sandler Reiff & Young, PC
50 E Street, S.E.
Washington, D.C. 20003
(202) 479-1111
young@sandlerreiff.com
*Attorney for Terry McAuliffe*

And I hereby certify that I will mail the document by U.S. mail to the following non-filing user:

Michael Sgarlet, Esq.
216 South Patrick
Alexandria, Virginia 22314
(703) 549-2000
*Attorney for Plaintiffs*

                                             /S/
                                    Warren T. Allen II
                                    Virginia Bar Number 72691
                                    *Attorney for Steven Raikin*
                                    Skadden, Arps, Slate, Meagher, & Flom, LLP
                                    1440 New York Avenue, N.W.
                                    Washington, D.C. 20005-2111
                                    (202) 371-7000
                                    (202) 661-9121
                                    wtallen@skadden.com