UNITED STATES DISTRICT COURT
FOR THE DISTICT OF COLUMBIA

_____
                                   )
Ralph Nader, et al.,               )
        v.                         )    Civ. Action 1:08-cv-428 (RMU)
Terry McAuliffe, et unum.          )
_____)

**DEFENDANT TERRY MCAULIFFE'S MOTION TO DISMISS**

    Defendant Terry McAuliffe moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Accompanying this motion is Defendant Terry McAuliffe's Memorandum In Support Of His Motion To Dismiss, which describes the bases for this motion. Also attached is a proposed order.

April 4, 2008

Respectfully submitted,

_____/s/_____
Joseph E. Sandler,
D.C. Bar No. 255919
John Hardin Young
D.C. Bar No. 190553
Stephen E. Hershkowitz
D.C. Bar No. 282947

SANDLER, REIFF & YOUNG, P.C.
300 M Street, S.E., Suite 1102
Washington, D.C. 20003
(202) 479-1111
(202) 479-1115 (facsimile)
young@sandlerreiff.com

Attorneys for Defendant
Terry McAuliffe

UNITED STATES DISTRICT COURT
FOR THE DISTICT OF COLUMBIA

_____
                                    )
Ralph Nader, et al.,                )
                                    )         Civ. Action 1:08-cv-428 (RMU)
v.                                  )
                                    )
Terry McAuliffe, et unum.           )
_____)

**ORDER**

Defendants having moved to dismiss the complaint pursuant to Fed. R. Civ. P. Rules 12(b)(1) and 12(b)(6) and the Plaintiffs having been heard, IT IS ORDERED that the complaint is dismissed.

Dated: _____                      _____
                                            United States District Court Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                              :
Ralph Nader, et al.           :
     v.                       :         Civ. No. 1:08-cv-00428-RMU
Terry McAuliffe, et unum.     :         Memorandum
                              :
_____:

**<u>DEFENDANT TERRY MCAULIFFE'S MEMORANDUM
IN SUPPORT OF HIS MOTION TO DISMISS</u>**

Defendant Terry McAuliffe requests that this Complaint be dismissed. The allegations of violations of abuse of process, malicious prosecution, conspiracy to abuse process, and conspiracy to commit malicious prosecution ("state law claims") should be dismissed for the same reasons that the identical allegations in *Nader v. Democratic National Committee*, 1:07-cv-02136-RMU should be dismissed. Accordingly, the Democratic National Committee's motion to dismiss that complaint is incorporated by reference. The allegations of violation of 42 U.S.C. § 1983 and conspiracy to violate 42 U.S.C. § 1983 should be dismissed because (1) Terry McAuliffe is not a state actor and did not act under color of state law; (2) the Plaintiffs have not alleged a Constitutional violation. Mr. McAuliffe also relies upon the grounds of dismissal set forth by Defendant Raikin.

**BACKGROUND**

On October 30, 2007, the Plaintiffs filed a complaint in the Superior Court of the District of Columbia against the Democratic National Committee, Defendant Terry McAuliffe's employer, and The Ballot Project, Defendant Steven Raikin's employer, and twelve others alleged to be co-conspirators. On October 31, 2007, Plaintiffs filed a complaint in the U.S. District Court for the Eastern District of Virginia, bearing the caption of the "Superior Court of the District of Columbia" which mirrored the District of Columbia's action. *Nader v. McAuliffe*,

No. 1:07-CV-1101 JCC/TCB.  On December 10, 2007, the Superior Court case was removed to this Court. *Nader v. Democratic National Committee, et al.* 1:07-cv-02136-RMU ("the 7-2136 Complaint").

All of the complaints set forth virtually identical factual allegations and requests for relief.  The complaints allege a conspiracy to cause the Plaintiffs Ralph Nader's and Peter Camejo's campaign to expend resources by requiring their campaign to defend their right to be on those ballots.  Six other voter Plaintiffs claim they were harmed because state officials or courts prevented them from voting for Plaintiff Nader when they found that his campaign had not submitted adequate petitions to place him on the ballot. *Compare* the 7-2136 Complaint ¶¶ 47 through 234 with this Complaint ¶¶ 45 through 232.  The other defendants in the 7-2136 Complaint are not named in this Complaint but are described as non-defendant co-conspirators in the 7-2136 complaint. *Compare* this Complaint ¶¶ 25 through 36 with the 7-2136 Complaint ¶¶ 23 through 34.   Both complaints originally alleged the same counts: conspiracy to commit abuse of process and malicious prosecution, abuse of process and malicious prosecution, conspiracy to violate 43 U.S.C § 1983, and violations of 43 U.S.C. § 1983.  *Compare* this Complaint ¶¶ 235 through 255 with the 7-2136 Complaint ¶¶ 233 through 257.  Both complaints seek identical relief: compensatory damages, punitive damages, injunctions, attorney's fees and court costs.

On January 23, 2008, the Plaintiffs amended the Complaint pending in this Court by removing the counts alleging conspiracy to violate 43 U.S.C § 1983 and violation of 43 U.S.C. § 1983, Counts III and IV.  The Plaintiffs also moved to remand the case back to the Superior Court of the District of Columbia. Plaintiffs subsequently withdrew their remand motion.  The Defendants moved to dismiss this complaint and the Plaintiffs have opposed that motion.  On January 30, 2008, Plaintiffs filed a motion to amend their Complaint in the Eastern District of

Virginia by striking the state tort claims and adding some of the defendants in the District of Columbia complaint. The Defendants opposed that motion and filed motions to transfer the Eastern District of Virginia case to this Court. The motion to transfer was granted and this case was transferred to this Court on March 12, 2008.

The factual allegations are described at length in Defendants' Motions to Dismiss and Plaintiffs' Opposition in the 7-2136 Complaint. For the Court's convenience, the following is the Plaintiffs' first paragraph of their description of the facts in that complaint (Plaintiffs' Opposition to Defendants' Motions to Dismiss, Docket No. 44 page 2), which summarizes their view of the facts:

> Plaintiffs' Amended Complaint alleges that Defendants unlawfully conspired to prevent Ralph Nader and Peter Miguel Camejo (hereinafter, "Nader-Camejo") from running for President and Vice President of the United States, respectively, during the 2004 General Election, in an effort to help Democratic candidates John Kerry and John Edwards win that election by denying voters an alternative choice at the polls. In furtherance of this conspiracy, Defendants jointly planned and executed a nationwide assault of unfounded and abusive litigation against the Nader-Camejo Campaign, pursuant to which conspirators filed twenty-four complaints in eighteen state courts and five complaints before the Federal Election Commission (FEC), all within a twelve-week period between June and September of 2004. The purpose of these complaints was not to vindicate valid legal claims, but rather to use the sheer burden of repetitive and abusive litigation as a means to drain and distract the Nader-Camejo Campaign in the months immediately preceding the election, and to restrain Nader-Camejo from running for public office, *in spite of their qualification* for such office, and *with reckless disregard for their rights* under state and federal law.

Defendants' memoranda do not provide much more clarification of how their alleged facts describe a violation of the Constitution.

> Defendant McAuliffe thus denies that Plaintiffs allege a constitutional violation, because "there is no constitutional right to have sufficient funds to pay for civil litigation, or to wage an effective campaign." McAuliffe Opp. at 12. Here, Defendant McAuliffe simply mischaracterizes Plaintiffs' claims. Plaintiffs allege that Defendants engaged in a conspiracy, *inter alia*, to prevent them from exercising their First Amendment rights during the 2004 general election. Am. Comp. at ¶¶ 47-68. In so doing, "there can be no question that, if defendants acted under color of state law, they violated [Plaintiffs'] constitutional rights." *Rossignol v. Voorhaar*, 316 F. 3d 516, 521-23 (4th Cir. 2003)

3

> (conspiracy to suppress political criticism during an election is a "classic example" of conduct the First Amendment was intended to prohibit).

Plaintiffs' Reply To Defendants' Oppositions to Plaintiffs' Motion For Leave to Amend their Complaint, Docket No. 34 at 6. The Complaint summarizes the allegations in ¶ 68 but does not allege that Defendant McAuliffe prohibited the Defendants from speaking or assembling except by "conspir[ing] to cause financial injury and other damages to the Nader-Camejo 2004 presidential campaign," (Compl. ¶ 68 (i)), and to Mr. Nader and Mr. Camejo personally." (*Id*. at ¶ 68(ii)). Paragraph 68 also alleges that Nader-Camejo's constitutional rights were violated "by preventing them from appearing on the ballot as candidates in the 2004 presidential election," (*id*. at 68(ii)), but the Complaint only alleges that state authorities, without Mr. McAuliffe's participation, following appropriate judicial procedures found Plaintiffs' ballot petitions did not meet state standards. Finally, the Complaint alleges that the Nader-Camejo campaign denied "voters their free choice of candidates in the 2004 presidential election." (*Id*. at 68(iv)) in violation of the Constitution.

As described below, these allegations do not describe a constitutional violation by Terry McAuliffe.

### ARGUMENT

"To state a claim under section 1983, a plaintiff must allege both (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the defendant acted 'under color of' the law of a state, territory or the District of Columbia." *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991).

**A. Defendant Terry McAuliffe is not a state actor and did not act under color of state law.**

Plaintiffs' allegations that these facts violate 42 U.S.C. § 1983 have already been litigated and dismissed, albeit brought by a different Nader supporter in a different court, and Terry

4

McAuliffe and the other defendants were not found to be state actors or acting under color of state law. In *Fulani v. McAuliffe*, 2005 U.S. Dist. LEXIS 20400 (S.D.N.Y. 2005), the plaintiffs alleged that the Terry McAuliffe and others "conspired to keep Ralph Nader ("Nader") and Peter Camejo ("Camejo") off of the ballot in states across the country as independent candidates for the offices of President and Vice President of the United States" in the 2004 election in violation of 42 U.S.C. §§ 1983 and 1985. *Id*. at *3.[1] The court found that:

> Sections 1983 and 1985 do not in themselves create any substantive right but merely provide remedies for deprivations of rights established elsewhere. *See Albright v. Oliver,* 510 U.S. 266, 271, 127 L. Ed. 2d 114, 114 S. Ct. 807 (1994); *United Bhd. of Carpenters and Joiners, Local 610 v. Scott,* 463 U.S. 825, 833, 77 L. Ed. 2d 1049, 103 S. Ct. 3352 (1983). Both sections, therefore, require a plaintiff to establish with specificity the rights of which he has been deprived. *See Albright,* 510 U.S. at 271; *Scott,* 463 U.S. at 833.

*Fulani*, 2005 U.S. Dist. LEXIS 20400 at *8-9. "Plaintiffs seem to argue that the various lawsuits initiated to challenge the Nader/Camejo nominating petitions deprived Plaintiffs of their

---

[1] The alleged facts in *Fulani* are remarkably similar to the allegations here: "According to Plaintiffs, in early 2004, once Nader declared his intention to run for President, Defendants began a concerted, organized conspiracy to 'prevent Nader from obtaining a line on the ballot in as many states as possible, and, thereby, impede the development' of a third national political party. Plaintiffs allege that: (1) Defendant McAuliffe issued public statements 'about the importance of eliminating Nader as a factor' in the election; (2) Defendant Jones 'orchestrated a paid media and propaganda campaign' to combat Nader-Camejo's efforts at ballot access; (3) Defendant Moffet coordinated a national plan to "drain [Nader's] resources" and trained lawyers to help in that effort; (4) Defendant Clifford announced that he was commencing a criminal investigation of persons collecting Nader-Camejo petition signatures in West Virginia; (5) Defendant McGraw announced that he would file a lawsuit challenging the Nader-Camejo petition in West Virginia; (6) Defendant Merrick caused the Nader-Camejo nominating caucus in Portland to be crowded with Democratic activists, thus preventing Nader-Camejo from reaching the required 1000 supporter threshold; (7) Defendant Madigan directed government workers to challenge the Nader-Camejo petition in Illinois; (8) various defendants persuaded the Michigan Secretary of State not to recognize Nader-Camejo as the 2004 Reform Party candidates; (9) various defendants caused an organization called Citizens for Ethics and Responsibility in Washington to file complaints with the Federal Election Commission ("FEC") against Nader-Camejo; and (10) Democratic Party lawyers and operatives generally reviewed Nader-Camejo nominating petitions 'with a fine tooth comb' and instituted challenges against the petitions in Arizona, Colorado, Illinois, Iowa, Maine, Michigan, Missouri, Nevada, New Jersey, New Mexico, Oregon, Pennsylvania and Wisconsin." *Fulani*, 2005 U.S. Dist. LEXIS 20400 at *5-6 (citations omitted).

voting and equal protection rights. However, 'merely resorting to the courts and being on the winning side of a lawsuit does not make a party' responsible for depriving a plaintiff of his rights." *Id.* at *11 n.4 (citing *Dennis v. Sparks,* 449 U.S. 24, 28 (1980)). "Consequently, to the extent that Plaintiffs accuse Defendants of using State election law to impede the Nader/Camejo candidacy and violate Plaintiffs' equal protection rights or right to vote, that claim fails as a matter of law." *Id.* at *11 (citation omitted). The court further explained that:

> To state a claim under 42 U.S.C. § 1983, a plaintiff must not only allege a deprivation of a federal right, privilege or immunity, but must allege that the deprivation was attributable, at least in part, to a person acting under color of state law. *See, e.g., Rendell-Baker v. Kohn,* 457 U.S. 830, 835, 73 L. Ed. 2d 418, 102 S. Ct. 2764 (1982); *Parratt v. Taylor,* 451 U.S. 527, 535, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981); *Gomez v. Toledo,* 446 U.S. 635, 640, 64 L. Ed. 2d 572, 100 S. Ct. 1920 (1980); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970). A private actor may be subject to liability under § 1983 if he or she willfully collaborated or conspired with an official state actor in the deprivation of the federal right. *Dwares* [*v. The City of New York*, 985 F. 2d 94, 98 (2d Cir. 1993)]. Defendants here are predominantly non-state actors, private individuals or organizations. Plaintiffs' sole effort to show that Defendants are acting "under color of state law" appears to be an assertion that "public funds are being used in furtherance of the conspiracy" -- *i.e.,* that the "Democratic Party convention and the Kerry-Edwards campaign are funded with federal moneys through the Federal Election Commission." (Compl., PP30, 35.) However, the Supreme Court has held that mere receipt of public funds is insufficient to transform private entities or individuals into state actors. *See, e.g., Rendell-Baker,* 457 U.S. at 841; *San Francisco Arts & Athletics, Inc. v. United States Olympic Committee,* 483 U.S. 522, 97 L. Ed. 2d 427, 107 S. Ct. 2971 (1987); *Polk County v. Dodson,* 454 U.S. 312, 70 L. Ed. 2d 509, 102 S. Ct. 445 (1981).

*Fulani*, 2005 U.S. Dist. LEXIS 20400 at *17-18.

In addition, just because state officials considered the ballot access cases, that does not satisfy the "acting under color of state law" requirement because the "public official [is] entitled to qualified immunity where acting reasonably within discretionary function of official responsibilities." *Id.* at *11 (quoting *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)).[2]

---

[2] Because the Defendants are alleged to have filed challenges with state officials and judges to take action in all of the ballot access cases and the federal officials in the FEC action, the

The state action principle is succinctly stated as follows: "At base, constitutional standards are invoked only when it can be said that the [government] is *responsible* for the specific conduct of which the plaintiff complains." *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 632 (1991) (O'Connor, J., dissenting) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). Put differently, deciding whether there has been state action requires an inquiry into whether "there is a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the state itself." *Blum*, 457 U.S. at 1004 (citation omitted).

Merely filing civil complaints is not acting under color of state law. In *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922 (1982), the Court held that a plaintiff could bring a § 1983 action to challenge use of a constitutionally defective state court procedure for attachment, because the deprivation of due process was attributable to the authority of the state. At the same time, the Court made clear that the mere "private misuse of a state statute does not describe conduct that can be attributed to the State…." *Id.* at 941. Specifically, the Court held that the plaintiff in that case did not state a claim under § 1983 by alleging (in a separate court) that defendants had *abused* the state legal procedure, and acted unlawfully under state law. "That respondents invoked the statute without the grounds to do so could in no way be attributed to a state rule or state decision. The Complaint, therefore, does not state a cause of action under § 1983 but challenges only private action." *Id.* at 940. The court emphasized that "we do not hold today that 'a private party's mere invocation of state legal procedures constitutes 'joint participation' or 'conspiracy' with state officials satisfying the § 1983 requirement of action

---

Defendants are protected by the *Noerr-Pennington* doctrine. "The *Noerr-Pennington* doctrine grants First Amendment immunity to those who engage in petitioning activity." *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 310 (4th Cir. 2003) (citations omitted).

7

under color law.'" *Id.* at 939 n.21; *see also Dennis*, 449 U.S. at 28 ("[M]erely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge.").³ It makes no difference whether the defendant in the § 1983 case won or lost in the prior state court action. *See Lugar,* 457 U.S. at 940.

In *Hoai v. Vo*, 935 F.2d 308 (D.C. Cir. 1991), this Circuit similarly held "what is alleged is an abuse of the D.C. court system by private litigants and their attorneys" and that "[t]his allegation is insufficient to support a finding of action under color of law for purposes of section 1983." *Id.* at 313. "It is well established that mere recourse to state or local court procedures does not by itself constitute 'joint activity' with the state sufficient to subject a private party to liability under section 1983." *Id.* The District Court for the Eastern District of Pennsylvania

---

³ Other jurisdictions have uniformly followed this same approach. In *Dahlberg v. Becker*, 748 F.2d 85 (2d Cir. 1984), the court held that plaintiff could not bring a section 1983 action to challenge the alleged abuse of New York judicial procedures by plaintiff's ex-wife, resulting in his being held in contempt of court and briefly imprisoned. "A private party's misuse of New York's Judiciary Law that causes plaintiff to be imprisoned overnight is not fairly attributable to New York State." *Id.* at 90. In *Henry v. First Nat'l Bank of Clarksdale*, 444 F.2d 1300 (5ᵗʰ Cir. 1971), *cert denied*, 405 U.S. 1019 (1972), a baseless state court action had been filed by a group of white merchants against a civil rights ground for boycotting the merchants. The merchants filed a federal court action seeking to enjoin the state court action. The Fifth Circuit held there was no state action for purposes of §1983: "merely by holding its court open to litigation of complaints, regardless of how baseless they eventually prove to be, [the state] does not clothe persons who use its judicial processes with the authority of the state." *Id*. at 1309. *See Paisey v. Vitale*, 807 F.2d 889, 893-95 (11th Cir. 1986); *Stevens v. Frick*, 372 F.2d 378 (2d Cir. 1967), *cert denied*, 387 U.S. 920 (1967). In *O'Bradovich v. Village of Tuckahoe*, 325 F. Supp.2d 413 (S.D.N.Y. 2004), a village attorney, in his personal capacity, sued a group of activists for defamation in retaliation for their pressing various causes against the village. The defamation suit was frivolous and the village attorney lost it. The activists sued the attorney under section 1983. The court held there was no state action: *Id*. at 424. More recently, in *Montesano v. New York*, 2006 U.S. DIST. LEXIS 18677 (S.D.N.Y. 2006), the court held that a plaintiff who lost a state court case could not bring a federal action under section 1983 on the grounds that the state court judgment was obtained fraudulently. "A private party is not acting under color of state law by simply instituting litigation in state court seeking a judicial determination." *Id*. at *10. *See also, Nelson v. Smith*, 2006 U.S. DIST. LEXIS 71029 at *7 (W. D. Wash. 2006)("[I]t is well established that mere recourse to state court procedures does not by itself constitute 'joint activity' with the state and subject a private party to liability under §1983.").

8

applied this Circuit's *Hoai* decision in dismissing a complaint alleging state action in a 42 U.S.C § 1983 case where " (1) the defendant had a 'political history,' 'influence,' and a 'special relationship' with Judge Maier; and (2) that Judge Maier was biased and made a series of unconstitutional rulings in favor of defendant and against plaintiff." *Spencer v. Steinman*, 968 F. Supp. 1011, 1017 (E.D. Pa. 1997). The allegation of a judicial bias based on a relationship with the defendant in the *Spenser* case is the same issue raised by the allegations that various state officials, including judges were biased against Mr. Nader's candidacy, or favored defendants and their lawyers. In *Spencer*:

> [U]nlike the plaintiff in *Lugar* who challenged the constitutionality of a state created procedure followed by the defendants in obtaining the prejudgment attachment, the plaintiff is challenging the conduct of a particular state actor. Under *Lugar*, therefore, a challenge based on "abuse or misuse" of a state procedure by a state actor, such as in this case, does not state a cause of action for conspiracy under § 1983. *See* e.g., *Hoai v. Vo*, 290 U.S. App. D.C. 142, 935 F.2d 308 (D.C. Cir. 1991) (finding that allegations of mere recourse to state court procedures absent any allegations challenging a state created procedure were insufficient to establish joint participation state action under *Lugar* and therefore it was appropriate for the district court to grant the Rule 12(b)(6) motion for failure to state a claim); *Crabtree v. Muchmore*, 904 F.2d 1475, 1476, 1481-82 (10th Cir. 1990) (same); *Smith v. Wood*, 649 F. Supp. 901, 905 (E.D. Pa. 1986) (Scirica, J.) (same).

*Spencer*, 968 F. Supp. at 1019. Similarly, Plaintiffs' allegations, that various election officials, counsel representing the state and judges who were involved in the ballot access cases, do not allege a an abuse by a state actor that meets the criteria of a violation or a conspiracy to violate 42 U.S.C. § 1983.

Plaintiffs allege that there is state action in the Pennsylvania ballot access judicial proceedings because Reed Smith's "ties" to various justices of the Pennsylvania Supreme Court corruptly influenced the state Supreme Court's decision. But those alleged historical ties and special relationship are insufficient to meet the "acting under color of law" test in 42 U.S.C. § 1983. As noted, in *Dennis v. Sparks*, the Court held that a § 1983 case <u>could</u> be brought

9

alleging that private parties corruptly conspired with a judge, by bribing him, to produce a judgment against the plaintiffs. The Court made clear that its holding was limited to the situation in which "the allegations were that an official act of the defendant judge was the product of a corrupt conspiracy involving bribery of the judge." 449 U.S. at 28. It is well settled that state court judges are absolutely immune from liability for damages under 42 U.S.C. § 1983 for their judicial acts. *See Mireles v. Waco*, 502 U.S. 9 (1991). In this case, the Plaintiffs have specifically *not* included any of the Pennsylvania Supreme Court Justices as co-conspirators and have not alleged any conspiracy between any of the Defendants and those judges. (Complaint ¶¶ 181-207). As described in *Spencer*, the alleged historical ties are insufficient to satisfy the agreement element of a conspiracy to change a judge into a co-conspirator. To satisfy the *Dennis* requirement of a judge as a co-conspirator, the plaintiff must plead that a defendant had reached an agreement with a judge to violate the plaintiff's constitutional rights. In *Spencer*, like here:

> The gist of plaintiff's complaint is that Mr. Crumlish and Judge Maier shared a "political history" and a "special relationship" which allowed Mr. Crumlish through ex parte communications to obtain upon request favorable rulings from Judge Maier, and that the rulings issued by Judge Maier at the behest of Mr. Crumlish were legally incorrect. Nowhere among the prolix allegations of the sixty-page amended complaint, however, does plaintiff claim, much less proffer any specific facts to support a claim, that Mr. Crumlish acted through a "combination, agreement, or understanding" or "plot" or "plan" or "conspiracy" with Judge Maier. Nor does plaintiff supply any similar formulation that would support a claim that Mr. Crumlish and Judge Maier had reached a meeting of the minds to violate plaintiff's civil rights. Allegations similar to those of the amended complaint were found by the Tenth Circuit to be insufficient to state a cause of action for conspiracy under § 1983.

*Spencer*, 968 F. Supp. at 1020-21 (following *Crabtree v. Muchmore*, 904 F.2d 1475 (10th Cir. 1990)). In the absence of an allegation of an agreement to violate the Plaintiffs constitutional rights, *Dennis* is inapplicable and there is no state action.

Because the allegations do not state a claim that Defendant Terry McAuliffe was a state

10

actor or acted under color of state law, Plaintiffs do not state a cause of action under § 1983 or a conspiracy to violate § 1983.

**B. Defendant Terry McAuliffe did not deprive the Plaintiffs of their constitutional rights.**

Plaintiffs' ambiguous allegations of constitutional violations appear to fall into two categories: (1) Plaintiffs' Nader and Camejo were illegally denied a place on various state ballots, (Compl. ¶ 68(iii)), and (2) thus, the Plaintiff-voters were denied the ability to vote for the candidates of their choice, (Compl. ¶ 68 (iv)). The Plaintiffs specifically disavowed making any allegation of a constitutional violation based on an allegation of being required to expend resources by the candidates or the Nader-Camejo campaign.

> Defendant McAuliffe thus denies that Plaintiffs allege a constitutional violation, because "there is no constitutional right to have sufficient funds to pay for civil litigation, or…to wage an effective campaign." McAuliffe Opp. at 12. Here, Defendant McAuliffe simply mischaracterizes Plaintiffs' claims. Plaintiffs allege that Defendants engaged in a conspiracy, *inter alia*, to prevent them from exercising their First Amendment rights during the 2004 general election. Am. Comp. at ¶¶ 47-68.

Plaintiffs' Reply To Defendants' Oppositions to Plaintiffs' Motion For leave to Amend their Complaint, Docket No. 34 at 6. Thus, the constitutional violation is based on the decision of state courts that the Nader-Camejo petitions were inadequate. The Plaintiffs are not challenging the constitutionality of the state laws or the courts' procedures. Instead, they are attacking the right (some might say the civil responsibility) of private citizens to challenge ballot access petitions that state courts did find inadequate. However, there is no constitutional right to be free of such challenges. Accordingly, the Plaintiffs have failed to meet the first element of a 42 U.S.C. ¶ 1983 violation – to allege a violation of the Constitution.

**CONCLUSION**

In view of the above, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b).

April 4, 2008                                   Respectfully submitted,

_____/s/_____
Joseph E. Sandler,
D.C. Bar No. 255919
John Hardin Young
D.C. Bar No. 190553
Stephen E. Hershkowitz
D.C. Bar No. 282947

SANDLER, REIFF & YOUNG, P.C.
300 M Street, S.E., Suite 1102
Washington, D.C. 20003
(202) 479-1111
(202) 479-1115 (facsimile)
young@sandlerreiff.com


Attorneys for Defendant
Terry McAuliffe