UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **RALPH NADER, et al.,** : | |
| **Plaintiffs** : | |
| v. : | Case No. 08-cv-00428-RMU |
| **TERRY MCAULIFFE, et unum.** : | |
| **Defendants.** : | |

### PLAINTIFFS' RESPONSE IN OPPOSITION
### TO DEFENDANTS' MOTIONS TO DISMISS

#### INTRODUCTION

Defendants Terry McAuliffe and Steven Raikin have each filed separate motions to dismiss Plaintiffs' Amended Complaint. Both motions expressly rely upon the arguments set forth in the other motion. Therefore, for the sake of efficiency and as a convenience to the Court, Plaintiffs address both motions in this one Response in Opposition. Specifically, Plaintiffs address the following questions raised by Defendants: 1) whether Plaintiffs allege a Constitutional violation sufficient to state a claim under 42 U.S.C. § 1983; and 2) whether Plaintiffs allege "state action" sufficient to state a claim under 42 U.S.C. § 1983.

In a related action Plaintiffs filed before this Court, Defendants Democratic National Committee and The Ballot Project filed motions to dismiss Plaintiffs' state law claims for civil conspiracy, abuse of process and malicious prosecution. *See Nader v. Democratic National Committee*, 1:07-cv-2136-RMU (hereinafter, the "7-2136 action"). Defendants McAuliffe and Raikin incorporate those motions by reference. Accordingly,

Plaintiffs incorporate by reference their Response in Opposition to those motions. Thus, to the extent that Defendants' motions in the above-captioned matter rely upon defenses that Plaintiffs have previously addressed, including the *Rooker-Feldman* doctrine, the *Noerr-Pennington* doctrine, the statute of limitations and whether Plaintiffs allege that Defendants engaged in a conspiracy with sufficient specificity, Plaintiffs rest on the merits of their prior Response.

## **INTRODUCTION**

On July 17, 2007, the arm of the State extended from Pennsylvania all the way to the District of Columbia, where it reached into the private bank accounts of Plaintiff Ralph Nader and seized $61,638.45 of his personal funds, which the State seeks to pay over to Reed Smith, LLP. Reed Smith is one of at least fifty-three law firms that Defendants Terry McAuliffe and Steven Raikin recruited to sue Mr. Nader during the 2004 General Election, in a deliberate attempt to bankrupt his campaign and prevent him from running for public office. While Reed Smith is a joint participant in the State's action, having initiated attachment proceedings in the District of Columbia Superior Court to enforce a judgment that the firm fraudulently procured from the Pennsylvania Supreme Court, the judgment itself marks the first time in American history that the *State* has effectively penalized a candidate for attempting to run for public office, by ordering him to pay tens of thousands of dollars in litigation costs to parties that sued to remove him from the general election ballot. Indeed, this judgment functions much like a poll tax, penalizing candidates for attempting to gain access to the ballot, just as poll taxes once penalized voters for attempting to gain access to the polls. *See Harper v. Virginia Bd. of Elections*, 383 U.S. 663 (1966) (striking down poll tax of $1.50).

The foregoing facts, although extraordinary in themselves, merely hint at the enormity of the constitutional violations that Defendants perpetrated in this case. As Plaintiffs' Amended Complaint alleges in comprehensive and specific detail, Defendant McAuliffe, the former Chairman of the Democratic National Committee (DNC), and Defendant Raikin, the Director, Treasurer and Secretary of a Section 527 organization called The Ballot Project, presided over a nationwide conspiracy to suppress voter choice during the 2004 General Election that is without precedent in its magnitude and scope. Plaintiffs' Response in Opposition in the 7-2136 action summarizes these allegations, as well as the facts that Plaintiffs allege in support. For purposes of opposing Defendants' motions in the above-captioned matter, however, Plaintiffs also summarize herein certain allegations concerning the involvement of the State in Defendants' conspiracy.

First, with respect to the State's unprecedented seizure of Mr. Nader's personal bank accounts, which has now deprived him of his personal funds for *nine full months*, Defendants assert that "Neither Mr. McAuliffe nor Mr. Raikin is not alleged [*sic*] to be involved in that litigation." Raikin Mem. at 9. This is false. Plaintiffs' Amended Complaint specifically alleges that the DNC, under Defendant McAuliffe's leadership, retained Reed Smith during the 2004 General Election, and that both the DNC and Reed Smith denied and fraudulently concealed this fact. Am. Comp. at ¶¶ 66, 193, 206-07. Additionally, Plaintiffs' Amended Complaint alleges that The Ballot Project, under Defendant Raikin's leadership, was "incorporated specifically for the purpose of coordinating and financing [Defendants'] nationwide assault of unfounded and abusive litigation," and that The Ballot Project made at least one payment during the 2004 General Election to a law firm that served as Reed Smith's co-counsel in the

Pennsylvania litigation, up to and including submission of their bill of costs. *Id.* at ¶¶ 5, 62, 207.

The State's seizure of Mr. Nader's personal funds is only the latest example of state action in a conspiracy that involved the State from its inception, and which implicates the State in its very nature. As discussed *infra*, courts have long recognized that the Democratic Party is no mere private actor, particularly in the context of its regulation of public elections. Moreover, as the case at bar vividly illustrates, the Democratic Party has taken significant steps to install itself as the gatekeeper to State ballots, with the power not only to exclude its competitors from the electoral process, but also, for the first time in American history, to penalize candidates who seek ballot access against the Party's wishes. Having so far insinuated itself into a position of interdependence with the State, the Democratic Party – and by extension these Defendants – cannot now hide behind the fig leaf of "private" action. Rather, Defendants were engaged in a *public function* when they conspired, by and through the DNC and its state Democratic Party affiliates, to suppress voter choice in the 2004 presidential election by preventing a competing candidacy from gaining ballot access. Accordingly, Defendants are properly before this Court as state actors, and they may be held liable under Section 1983 for their conspiracy to violate Plaintiffs' constitutional rights.[1]

---

[1] Defendants continue to rely on *Fulani v. McAuliffe*, but do not actually claim that the decision in that case has any *res judicata* effect on the case at bar. *See* McAuliffe Mem. at 5-6, *citing Fulani v. McAuliffe*, 2005 U.S. Dist. LEXIS 20400 at *17-18. Defendants' discussion of *Fulani* therefore continues to be irrelevant, and their reliance on the case is not warranted. Moreover, once again *Fulani* is plainly distinguishable, because in that case, "Plaintiffs sole effort to show that Defendants are acting "under color of state law" appears to be an assertion that "public funds are being used in furtherance of the conspiracy – *i.e.* that the "Democratic Party convention and the Kerry-Edwards campaign are funded with federal moneys through the Federal Election Commission." Plaintiffs' Amended Complaint, by contrast is replete with allegations that state actors engaged in acts that furthered Defendants' conspiracy.

To the extent that state actors in various states engaged in acts that furthered Defendants' conspiracy, the element of state action in the case at bar is even more explicit. Plaintiffs' Amended Complaint is replete with allegations of such acts. Specifically:

- In Illinois, state employees recruited by Democratic State House Speaker and DNC official Michael Madigan helped prepare conspirators' complaint challenging Nader-Camejo's nomination papers, *id.* at ¶¶ 58, 103;

- In New Mexico, a judge disqualified Nader-Camejo's nomination papers, but the judgment was vacated and the judge was forced to recuse herself after several voters revealed that she had contributed to the Kerry-Edwards Campaign, *id.* at ¶ 146:

- In Oregon, state officials from Democratic Secretary of State Bill Bradbury's office unlawfully restricted access to Nader-Camejo's nomination convention, refusing entrance to their supporters, and thereby causing the convention to fail to qualify the candidates for the state's ballot, *id.* at ¶ 170;

- In Oregon, Democratic Secretary of State Bill Bradbury disqualified Nader-Camejo's nomination petition in an action that was "inconsistent with both the state elections policy as established by the Legislature…and with the prior policy of the Secretary of State," *id.* at ¶¶ 176-77;

- In Pennsylvania, Democratic State House leaders H. William DeWeese and Michael Veon recruited approximately 170 "volunteers" to help prepare conspirators' complaint, *id.* at ¶ 183;

- In Pennsylvania, co-conspirator Reed Smith procured an unprecedented judgment from a judge who was elected to the bench as a Democrat, ordering Nader-Camejo to pay $81,102.19 in litigation costs in proceedings that plainly violate the candidates' right to due process, *id.* at ¶¶ 196-200;

- In the District of Columbia, co-conspirator Reed Smith initiated and continues to pursue attachment proceedings, invoking the apparatus of the State to garnish Mr. Nader's personal bank accounts in satisfaction of its tainted judgment, *id.* at ¶¶ 204-05;

- In West Virginia, "accompanied by intense political pressure from the Democratic Party," Democratic State Attorney General Darrell McGraw filed a Complaint in Quo Warranto "in the name of the state of West Virginia," which stated that "the state of West Virginia prays that this Court immediately issue an order requiring Defendant Ralph Nader to appear at said hearing and

show why he should not be precluded from being nominated," *id.* at ¶¶ 218-221.

Finally, information indicating that state actors knowingly and willfully joined Defendants' conspiracy continues to emerge, the latest allegations surfacing *after* Plaintiffs filed their complaint in the case at bar. Specifically, in December 2007, an ongoing investigation by the Attorney General of the State of Pennsylvania reportedly disclosed emails and payroll documents indicating that employees of the State of Pennsylvania may have received taxpayer-funded compensation for their efforts to remove Mr. Nader and Mr. Camejo from Pennsylvania's ballot. Accordingly, on April 4, 2008, Plaintiffs filed new claims before this Court, supported by these newly discovered allegations of state action associated with Defendants' conspiracy. *See Nader v. Democratic National Committee*, 1:08-cv-00589-RMU.

As described below, the foregoing allegations, together with other allegations in Plaintiffs' Amended Complaint, plainly state the elements of a claim under Section 1983.

## ARGUMENT

To prevail on their motions to dismiss Plaintiffs' Section 1983 claims, Defendants must prove that Plaintiffs fail, as a matter of law, to allege a constitutional violation or the requisite element of "state action." Defendants cannot carry this burden. As set forth above, Plaintiffs' Amended Complaint is replete with allegations that Defendants conspired to violate Plaintiffs' constitutional rights, and that state actors engaged in acts in furtherance of Defendants' conspiracy. *See supra*, at 4-5. Whether such acts were done by chance or by design is a question of fact, but at this stage of the proceedings, the Court must "grant plaintiffs the benefit of all inferences that can be derived from the facts alleged." *Chandler v. Welch and Associates, Inc.*, 533 F. Supp. 2d 94 (D.D.C. 2008)

(citations omitted). Consequently, because Defendants cannot demonstrate that Plaintiffs fail, as a matter of law, to allege the elements of a claim under Section 1983, their motions must be denied. *See International Action Center v. United States of America*, 2002 U.S. Dist. LEXIS 4614, *3-4 (D.D.C. 2002) (in the context of Section 1983 actions, this Circuit has concluded that "[a] complaint…need not allege all that a plaintiff must eventually prove") (quoting *Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996)); *Robinson v. King*, 629 F. Supp. 546, 553 (D.D.C. 1986) (even bare allegations of Section 1983 violation, "unsupported by any facts, are nonetheless sufficient to weather [a] motion to dismiss") (citations omitted).

    **I.**    **Plaintiffs Allege Constitutional Violations Sufficient to State a Claim Under Section 1983.**

Plaintiffs allege that Defendant McAuliffe, as Chairman of the DNC, and Defendant Raikin, as Director, Treasurer and Secretary of The Ballot Project, conspired to prevent Mr. Nader and Mr. Camejo from running for public office in the 2004 General Election, and to deny Plaintiff-voters the choice of voting for them, by combining with eighteen state or local Democratic Parties and others to wage a nationwide assault of groundless and abusive litigation with the specific intent of bankrupting the Nader-Camejo Campaign and forcing the candidates from the race. Am. Comp. at ¶¶ 1, 56, 62. Defendants' conspiracy thus targeted "two different, although overlapping, kinds of rights – the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Anderson v. Celebreeze*, 460 U.S. 780, 787 (1983), *quoting Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968). Plainly, therefore, Plaintiffs allege that Defendants

violated their constitutional rights. *See id.* ("Both of these rights, of course, rank among our most precious freedoms").

Defendants attempt to evade this conclusion by employing what amounts to a rhetorical bait-and-switch. First, Defendants quote from a summary of facts that Plaintiffs wrote in support of their *state law* claims. *See* McAuliffe Mem. at 3. Then, Defendants assert on this basis that Plaintiffs' *constitutional* claims are somehow "ambiguous" and in need of "clarification." *See id.* at 3, 11. Notably, however, Defendants do not cite a single case to support their assertion that Plaintiffs fail to allege a constitutional violation. *See id.* at 11. Nevertheless, it is beyond dispute that a conspiracy to interfere with the lawful exercise of the rights of speech, petition and assembly is actionable under Section 1983. *See*, *e.g.*, *International Action Center*, 2002 U.S. Dist. LEXIS 4614 (presidential inaugural committee's plan to 'neutralize' protestors' lawful speech and assembly actionable); *see generally Makenta v. Affiliated Computer Services*, 2007 U.S. Dist. LEXIS 70855, *2 (D.D.C. 2007) (conspiracies specifically intended to deprive others of their civil rights actionable) (citing *United States v. Price*, 383 U.S. 787 (1966)).

Accordingly, Plaintiffs allege constitutional violations sufficient to support their claims under Section 1983.

## II.   Plaintiffs Allege State Action Sufficient to State a Claim Under Section 1983.

Ostensibly private actors such as Defendants may be held liable under Section 1983, provided that their conduct is "fairly attributable" to the State. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). The Court has fashioned several tests for determining fair attribution in such cases. *See id.*, citing *Terry v. Adams*, 345 U.S. 461 (1953) (applying a "public function" test); *Adickes v. S. H. Kress & Co.,* 398 U.S. 144,

8

170 (1970) (applying a "state compulsion" test); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974) (applying a "nexus" test); *Flagg Brothers, Inc. v. Brook*, 436 U.S. 149 (1978) (applying a "joint action" test). As an initial matter, therefore, Defendants face a particularly heavy burden in attempting to prove that Plaintiffs fail, *as a matter of law*, to allege state action. This is because "each case must be decided on its own, for only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." *Kolinske v. Lubbers*, 712 F.2d 471, 477 (D.C. Cir. 1983), *citing Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 172 (1972); *see also Daskalea v. Washington Humane Society*, 480 F. Supp. 2d 16, 25 (D.D.C. 2007) (resolution of state action question requires "a fact-intensive inquiry"); *Harris v. District of Columbia*, 1989 U.S. Dist. LEXIS 4868, *30 (D.D.C. 1989) ("Whether the conduct of a private individual is under color of law for the purpose of § 1983 *depends upon the facts of each case*") (emphasis added).

    Defendants attempt to meet their burden by asserting that abuse of court processes can *never* support a claim under Section 1983. *See* McAuliffe Mem. at 4-10; Raikin Mem. at 6-8. In effect, Defendants argue that because abuse of process has been found insufficient to support Section 1983 claims in prior cases, the Court should conclude that abuse of process cannot support such claims as a matter of law. *See id*. The Court, however, has explicitly rejected this sweeping approach to the analysis of state action cases. *See Kolinske*, 712 F.2d at 479 ("The search for the presence of the state does not stop…with only a comparative analysis of factors found determinative of the state action

question in other cases").[2] The case at bar illustrates the wisdom of the Court's approach, for Defendants are not merely private actors who abused court processes, but agents and affiliates of the Democratic Party.

The Supreme Court has long held that the Democratic Party may be a state actor subject to constitutional restraints when it performs a public function within the electoral arena. *See Terry v. Adams*, 345 U.S. 461 (1953) (holding Jaybird Democratic Association to be a state actor); *Smith v. Allwright*, 321 U.S. 649 (1944) (holding Texas Democratic Party to be a state actor). *Terry* and *Allwright* both involved racially discriminatory practices in a one-party state, but the Court has also found state action in the choice of the Democratic Party to charge nondiscriminatory candidate filing fees in a two-party state. *See Bullock v. Carter*, 405 U.S. 134, 140 (1972) ("the mechanism of [primary] elections is the creature of state legislative choice and hence 'state action' within the meaning of the Fourteenth Amendment"). Likewise, the Court has found state action in the Republican Party's choice (in a two-party state) to charge a registration fee to delegates attending its convention. *See Morse v. Republican Party of Virginia*, 517 U.S. 186, 195 (1996) ("the Party exercised delegated state power when it certified its nominee for automatic placement on Virginia's general election ballot"). In *Morse*, the Court made explicit the thread running through these cases: "the operative test" for determining whether to attribute state action to a private political party is whether the party "exercises power over the electoral process." *Id.* at 218.

A nationwide effort by the Democratic Party to prevent a competing candidate from gaining ballot access, in which numerous state actors participated, therefore

---

[2] Even if the Court adopted this approach, Plaintiffs do not allege that Defendants abused the processes of the District of Columbia courts by initiating attachment proceedings, but only that such proceedings were

implicates state action as an exercise of power over the electoral process. *See id.* Indeed, the Democratic Party has taken significant steps to install itself as the gatekeeper of State ballots, with the unilateral power to challenge competing candidates' qualification for state office. First, the ballot access statutes under which Defendants and their co-conspirators brought suit against Nader-Camejo were enacted by state legislatures that are completely dominated by members of the Democratic and Republican Parties.[3] Second, these statutes do *not* provide a cause of action for minor party or independent candidates to challenge major party candidates' qualification for office. *See*, *e.g.*, 25 P.S. § 2937 (2006) (Pennsylvania statute); 10 ILCS 5/10-8 (2007) (Illinois statute). Finally, as in Pennsylvania and Illinois, the statutes often provide that minor party or independent candidates' nomination papers "shall be deemed to be valid" unless a challenge is filed against them. *See id.* Thus, when the Democratic Party brought suit against Nader-Camejo under these statutes, it not only exercised a unilateral power delegated by the State to challenge competing candidates, but also, it engaged in the public function of testing the candidates' qualification for public office.

This Court has previously addressed the precise issue raised by the case at bar – namely, whether the Democratic Party and its agents may properly be regarded as state actors. *See LaRouche v. Fowler*, 152 F.3d 974 (D.C. Cir. 1998) (assuming without deciding that former DNC chairman is a state actor); *see also The Ripon Society, Inc. v. National Republican Party*, 525 F.2d 567, 576 (D.C. Cir. 1975). Defendants

---

initiated in furtherance of Defendants' conspiracy.

[3] *See* National Conference of State Legislatures, "2008 Partisan Composition of State Legislatures," available at http://www.ncsl.org/statevote/partycomptable2008.htm (last visited April 18, 2008). Not counting Nebraska, which does not hold partisan elections for state legislature, fewer than a dozen out of 7,382 members of the fifty state legislatures are independent or members of a minor party. The Court may take judicial notice of public information. *See Heliotrope General, Inc. v. Ford Motor Co.*, 189 F. 3d 971, 981 (9th Cir. 1999).

conspicuously fail to cite these cases, however, because they undermine Defendants' assertion that Plaintiffs fail, as a matter of law, to allege state action. In *Ripon Society*, a case involving a challenge to the Republican Party's allocation of delegates at its national convention, the Court expressly reserved the "difficult and highly important question" of whether the Party is a state actor under the facts of that case. *Ripon Society*, 525 F.2d at 576. In *LaRouche*, which also involved a delegate allocation challenge, the Court, citing *Morse*, found "grounds for concluding that the Democratic Party's conduct here constituted state action," because "the states have delegated substantial control over the delegate-selection process to the state party," and because "[t]he states also have given the candidates that emerge from the national party conventions various forms of preference in access to the states' general election ballots." *Larouche*, 152 F.3d at 992. Once again, however, the Court did not decide the question of state action. *See id.* at 993.

The Court's reluctance to decide the state action question in *Ripon Society* and *LaRouche* stems from its recognition that the internal affairs of private political parties "themselves have a First Amendment dimension," which limits the power of the State to intervene. *LaRouche*, 152 F. 3d at 993; *see Ripon Society*, 525 F.2d at 575. No such concern exists in this case. Rather, the concern raised by allegations that the DNC, through its state party affiliates, engaged in a nationwide conspiracy to prevent a competing candidate from running for public office is that "those in power may be using electoral rules to erect barriers to electoral competition." *Clingman v. Beaver*, 544 U.S. 581 (2005) (O'Connor, J. concurring). Accordingly, not only are the Court's countervailing concerns in *Ripon Society* and *LaRouche* inapposite, but also, the case at

bar presents a clear "threat to the integrity of the electoral process" that justifies judicial intervention. *Id.*

A finding of state action in this case is further justified by the joint participation of state officials in several states. To the extent that Defendants and their co-conspirators are "willful participant[s] in joint activity with the state or its agents," they are liable under Section 1983 as state actors. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001); *see also West v. Atkins*, 487 U.S. 42, 49 (1988) ("[S]tate employment is generally sufficient to render the defendant a state actor"). Plaintiffs' Amended Complaint is replete with such allegations. *See supra* at 4-6. Defendants entirely fail to address these allegations. As this Court has noted, however, in deciding state action questions, the Supreme Court frequently attends to whether or not state officials (executive or judicial) participated in the challenged activity. *Franz v. United States of America*, 707 F.2d 582, 594 n.45 (D.D.C. 1983). While the Supreme Court has never made clear why such involvement, particularly when it is only ministerial in nature, should be important, this Court has provided a lucid explanation:

> [W]e think the explanation is to be sought in the symbolic effect of such participation. The Constitution was designed to embody and celebrate values and to inculcate popular acceptance of them, as much as to compel governments to abide by them….It is thus appropriate, even essential, that, when expounding the Constitution, we be alert to situations in which a government, by sanctioning activities by a private party that it is forbidden to do directly, undermines the "constitutive" function of the document. Ministerial involvement of governmental officials is relevant to a "state action" inquiry, in other words, because it increases the likelihood that government will be perceived as approving of the private actor's behavior and the values that underlie it.

*Id.*

Taken together, therefore, Plaintiffs' allegations are sufficient to establish state action under a "public function" test or a "joint action" test. *See Terry*, 345 U.S. 461;

13

*Flagg Brothers, Inc.*, 436 U.S. 149. Accordingly, Defendants cannot prevail on their motion to dismiss, because they cannot prove, as a matter of law, that Plaintiffs' allegations fail to establish state action.

## **CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss should be denied.

Dated: April 18, 2008                                              Respectfully Submitted,

/s/ Oliver B. Hall

Oliver B. Hall
D.C. Bar No. 976463
1835 16th Street, N.W.
Washington, D.C. 20009
(617) 953-0161
oliverbhall@gmail.com

*Counsel for Plaintiffs*

Bruce Afran, Esquire
10 Braeburn Drive
Princeton, NJ 08540
*Of Counsel*

Mark R. Brown, Esquire
303 East Broad Street
Columbus, OH 43215
*Of Counsel*

Carl J. Mayer, Esquire
Mayer Law Group, LLC
1040 Avenue of the Americas, Suite 2400
New York, NY 10018
*Of Counsel*

Gonzalez & Leigh, LLP
Matt Gonzalez, Esquire
G. Whitney Leigh, Esquire
Bryan Vereschagin, Esquire
Two Shaw Alley
San Francisco, CA 94105
*Of Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of April 2008, I electronically served a copy of the foregoing Response in Opposition to Defendants' Motions to Dismiss by means of the Court's CM/ECF system, or by first class mail, upon the following parties:

Joseph E. Sandler
D.C. Bar No. 255919
John Hardin Young
SANDLER, REIFF & YOUNG
50 E Street, S.E. #300
Washington, D.C. 20003

*Attorneys for Defendant Terry McAuliffe*

Lawrence Noble
D.C. Bar No. 24434
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
1440 New York Ave., N.W.
Washington, D.C. 20005-2111

*Attorneys for Defendant Steven Raikin*