UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
Ralph Nader, et al.,            )
    Plaintiffs,              )
                                )
v.                              )   Case No. 08-cv-00428 RMU
                                )
Terry McAuliffe, et unim.       )
    Defendants.              )
_____)

**DEFENDANT TERRY MCAULIFFE'S REPLY IN
SUPPORT OF HIS MOTION TO DISMISS**

Plaintiffs' Response in Opposition to Defendants' Motions to Dismiss ("Opp.") fails to claim a constitutional violation or show that Mr. McAuliffe is a state actor. Regardless of how Plaintiffs attempt to frame the issues in their various complaints involving §1983, the central issue is the same: Is Mr. McAuliffe a state actor who was involved in violating plaintiffs' constitutional rights? The answer is clearly "no."  First, the ballot access laws of the various states and their enforcement do not violate the Constitution.  Second, Mr. McAuliffe is not a "state actor."

**I.      Filing Ballot Access Challenges Does Not Violate The Constitution**

Plaintiffs have not challenged the constitutionality of any ballot access statutes in this litigation, and they only accuse the Defendants and their alleged co-conspirators of complying with the state statutes for challenging ballot petitions.  Complying with a constitutional statute is not a constitutional violation.

Plaintiffs argue that they have a constitutional right not to have to spend campaign funds to defend their ballot petitions, and the challengers should pay their legal fees.  Plaintiffs attempt to camouflage their argument by alleging that the <u>intent</u> of the alleged conspiracy was to prevent

Plaintiff Nader from running for office and to prevent his supporters from voting for him because expending funds for litigation expenses to defend ballot petitions is akin to racial discrimination and poll taxes that prevent citizens from voting. Candidates, however, do not have a constitutional right to have sufficient campaign funds, or to have their political opponents pay their litigation costs for taking action authorized by statute.

First, all of the cases cited by the Plaintiffs are irrelevant to the facts in the Complaint. Plaintiffs cite no case where the issue concerned a candidate's ability to expend campaign funds, e.g. *Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983) (the requirement to pay a poll tax); *International Action Center v. U.S.*, 2002 U.S. Dist. Lexis 4614, *8 (D.D.C. Mar. 15, 2002) (preventing protesters form speaking). Here, the only citizens who were prevented from voting were in states where state court judges found that the Nader-Camejo campaign submitted inadequate ballot petitions pursuant to constitutional state statutes. The Plaintiffs have not alleged that Defendants made any decisions or issued any orders preventing or inhibiting anyone from voting – nor could they have. Nor have the Plaintiffs alleged that the Defendants prevented anyone from assembling and speaking as in cases cited by the Plaintiffs, or prevented protestors from speaking. Opp. at 8.

Second, the Plaintiffs argue that it is unconstitutional for the Nader-Camejo campaign to have to pay their own lawyers and to pay costs in Pennsylvania to defend their ballot petitions because doing so might have bankrupted their campaign. Their solution is to require the Defendants to pay for Plaintiffs' lawyers and to prevent Defendants (and discourage anyone else) from filing challenges to ballot petitions. Of course, they provide no support for this argument because there is no constitutional right to have someone else pay Plaintiffs' litigation costs or to be immunized from having to defend their ballot petitions.

Third, Plaintiffs are attempting to curtail the Defendants' constitutional right to file claims in court. The *Noerr-Pennington* doctrine protects the filing of claims in courts based on the First Amendment right to petition the government as long as this Court does not find that the challenges were known to be false or fraudulent or filed for an improper purpose. *Whelan v. Abell*, 48 F. 3d 1247, 1254 (D.C. Cir. 1995). No state court found that the challenges were false or fraudulent, which is in sharp contrast to states like Pennsylvania where the court found the Plaintiffs' petitions were fraudulent. *See* Defendant Reed Smith's Memorandum Supporting His Motion To Dismiss, docket No. 31-2, *Nader v. Democratic National Party*, 1:07-cv-02136.

Fourth, Plaintiffs have failed to meet their burden to show that filing challenges to ballot access petitions is unconstitutional even if the Plaintiffs have to pay their own litigation costs and court costs. *McConnell v. Fed. Election Comm'n*, 540 U.S. 93 (2003), addressed a similar argument about a governmental scheme that diminished plaintiffs' campaign funds. The plaintiffs in *McConnell* were a candidate and his supporters, like the Plaintiffs here, and they also relied on the Court's voting rights cases. The Court held that the Constitution does not protect them from a government action that diminished campaign funds because, in the context of standing, there is no constitutional harm. The Supreme Court found plaintiffs' "reliance on this Court's voting rights cases is misplaced. They rely on cases requiring nondiscriminatory access to the ballot and a single, equal vote for each voter. None of these plaintiffs claims a denial of equal access to the ballot or the right to vote." *Id.* at 227 (citations omitted). The Court also rejected plaintiffs' allegation of "a curtailment of the scope of their participation in the electoral process" due to a government imposed scheme that decreased their funds for their political campaign. *Id.*; *see also Fed. Election Comm'n v. Mass. Citizens for Life, Inc.*, 479 U.S. 238, 257 1986) ("Political 'free trade' does not necessarily require that all who participate in the political

3

marketplace do so with exactly equal resources."); *Buckley v. Valeo*, 424 U.S. 1, 48 (1976) (per curiam) (rejecting the asserted government interest of "equalizing the relative ability of individuals and groups to influence the outcome of elections" to justify the burden on speech presented by expenditure limits). The Court also found that the lack of campaign funds, which "mak[es] it more difficult for them to compete in elections . . . and, consequently, the plaintiffs-candidates' ability to compete or participate in the electoral process is diminished," was caused by the plaintiffs' inability to raise contributions and is not a constitutional right. *McConnell*, 540 U.S. at 228.

Finally, Plaintiffs have not demonstrated that any provision of the Constitution is violated when a ballot access petition is challenged, or that there is a constitutional harm related to the expenditure of funds for litigation expenses to defend ballot petitions. Indeed, everyone, including the Defendants and the alleged co-conspirators, have a constitutional right of access to the courts. Plaintiffs' request is, in effect, a request for attorney's fees and to enjoin the Defendants from filing complaints in court authorized by state ballot statutes. In other words, Plaintiffs are asking this Court to curtail the Defendants' constitutional rights, and this request should be denied.

## II. Defendants And Alleged Co-conspirators Are Not State Actors.

### A. Defendants and alleged co-conspirators did not perform a public function by challenging Plaintiffs' ballot petitions.

Private parties such as the Defendants and co-conspirators are not capable of violating 42 U.S.C. § 1983 because the statute only applies to actions by the states that violate an individual's constitutional rights. Plaintiffs argue that this statute applies here because the Defendants and the alleged co-conspirators engaged in a state action by performing a public function that is

normally carried out by the states and acting jointly with state officials to engage in an action performed by the state. The facts alleged in the Complaint do not support this theory.

There are no Section 1983 cases that come close to describing the facts here, so the Plaintiffs have relied on cases involving state political party primaries and conventions where there was racial discrimination or the requirement to pay a fee to vote. These cases are not analogous to the issues here. In *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 158 (1978), "[t]hen-Justice Rehnquist attributed the Court's finding of state action in the White Primary Cases to a conclusion that the elections in those cases constituted 'public functions.' A public function, he said, is not simply one 'traditionally performed by governments,' but rather one 'traditionally exclusively reserved to the State.'" *LaRouche v. Fowler*, 152 F.3d 974, 990, 332 U.S. App. DC 25 (D.C. Cir. 1998) (citations omitted).

The challenges to ballot petitions in state courts in this case are not "exclusively reserved to the State," *Id.* (citation omitted), and have no relationship to the facts in the cases cited by the Plaintiffs where the Democratic or Republican Party conducted primaries or conventions to choose candidates. Opp. at 9-10, 12. Nor has this Circuit decided that "the Democratic Party and its agents may properly be regarded as state actors" in any case challenging ballot petitions. Opp. at 10-11.

This case is about private citizens filing ballot access challenges with state officials, such as the Secretary of State, or in state court as prescribed by constitutional state statutes. These acts by individuals who may be supporters of the Democratic Party have no relationship to the state political parties that chose candidates in racially discriminatory primaries in *Terry v. Adams*, 345 U.S. 461 (1953) and *Smith v. Allwright*, 321 U.S. 649 (1944). Nor is it similar to charging fees to vote as in *Bullock v. Carter*, 405 U.S. 134 (1972) and *Morse v. Republican Party of Va.*, 517

U.S. 186 (1996). Filing challenges to ballot petitions by individuals has nothing in common with those facts and is <u>not</u> a function traditionally performed by the state or traditionally employing state powers. The Defendants and the alleged co-conspirators did not make decisions whether a candidate was qualified to be on the ballot. That decision was made by the state judiciary. The state statutes that govern ballot access have maintained for the state through their courts the decision of whether a candidate has complied with the states' ballot access laws. The state judiciary has the unilateral power to determine whether a candidate has qualified for the state ballot – not the Democratic Party or any of its supporters. Stated another way, no state authority has been delegated to the individual citizens that filed challenges, and the Plaintiffs have not alleged any other action was performed by the Defendants and the alleged co-conspirators.

Plaintiffs' argument is, in reality, a complaint about the fairness and constitutionality of the ballot access statutes, which is not at issue in this litigation. The Plaintiffs note that: (1) the ballot access statutes were enacted by state legislatures dominated by Democratic and Republican Party members. Opp. at 11; (2) the ballot access statutes do not provide a cause of action for independent candidates to challenge major party candidates' ballot qualifications. *Id.*; and, (3) in some states, the ballot access statutes deem ballot petitions to be valid unless challenged. *Id.* From these observations, the Plaintiffs allege that the Democratic National Committee, through its state party affiliates, "prevent a competing candidate from running for public office" because "those in power may be using electoral rules to erect barriers to electoral competition." Opp. at 12 (citing *Clingman v. Beaver*, 544 U.S. 581 (2005)). Whether elected members of state legislatures, only some of whom are members of the Democratic Party, enacted unconstitutional legislation is an issue for a different case. It is not a description of the Democratic Party performing a state function.

Filing ballot access challenges is not a function exclusively performed by the state. Rather it is a right provided to citizens by constitutional state ballot statutes. Thus, the Defendants have not performed a state function that is cognizable under 42 U.S.C. § 1983.

**B. Defendants did not engage in joint state action with state officials.**

Plaintiffs' reliance on *Franz v. United States*, 707 F.2d 582 (D.D.C. 1983), to support their allegation that the Defendants and the alleged co-conspirators joined with state officials to engage in state action is misplaced. In *Franz*, the U.S. Marshals, with the assistance of state law enforcement officials, entered into a witness protection agreement that included relocating the witness and her children and keeping their location a secret. *Id.* at 594. The federal and state government agents were acting within their prescribed authority pursuant to a federal statute that created the Witness Protection Program. "[T]his is the classic case of government action, where a federal statute is the source of the power and authority by which . . . private rights are lost or sacrificed. . . . The enactment of the federal statute authorizing [the federal Witness Protection Program] . . . is the government action on which the Constitution operates. . . ." *Id.* at 593 (quotation marks and citations omitted). Thus, the participation of U.S. Marshals "at least seem to have lent their imprimatur" to the witness's actions to keep their location secret. *Id.* at 594. In *Franz* and the Supreme Court cases relied upon by the *Franz* court, the government employees were acting within their assigned duties pursuant to statute, whether they were U.S. Marshals, state officials or clerks performing ministerial governmental functions, and they were all performing actual, sanctioned or symbolic governmental functions. *Id.* at 594 n. 45.

Another case the Plaintiffs rely upon, *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001), also supports the Defendants' position. The *Brentwood Academy* Court summarized cases where it found state action, *see id.* at 296, and said "that state action

may be found if, though only if, there is such a "close nexus between the State and the challenged action" that seemingly private behavior "may be fairly treated as that of the State itself." *Id.* at 295.  One of the examples provided by the Court, which may be relevant here, is "when a private actor operates as a "willful participant in joint activity with the State or its agents.'" *Id.* at 296 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982) (where a county sheriff executed a writ of attachment effectively seizing disputed property)).

    Plaintiffs allege that the Defendants and co-conspirators became state actors when they allegedly engaged in joint activity with state officials.  The identified state officials fall into two categories: (1) employees of state legislatures who assisted the alleged co-conspirators to draft ballot access challenges, and (2) state court judges, secretaries of state and state attorneys with responsibility to see that the state's statutes were enforced.  Opp. at 5.

    In the first group, the state legislative employees are not alleged to have a state job related to drafting ballot access challenges or to assisting ballot access challengers.  Their alleged state responsibility was to participate in the legislative function of the state legislature.  They are not alleged to have been acting as agents of the state or for the state when they allegedly assisted in the drafting of the ballot access challenges, and drafting those complaints did not give the appearance or imprimatur of state action on those challenges.  Thus, the individuals who filed the challenges were not willfully participating with a person designated by the state as an employee or agent to draft ballot access challenges.  Indeed, filing the ballot access challenges cannot be fairly treated as an action of the state.  The Plaintiffs themselves pointed out that "the statutes often provide that minor party or independent candidates' nomination papers 'shall be deemed to be valid' unless a challenge is filed against them" by a citizen, not the state.  Opp. at 11.  Thus, persons who happen to be employed by state legislatures do not perform a state function when

they are performing acts that are <u>not</u> part of their state responsibilities, such as drafting civil complaints.  Individuals not employed by the state do not engage in state action (1) merely because state legislative employees on their own time participate in drafting a civil complaint, or (2) because the individuals participate with state employees (even if they are both supporters of a local Democratic Party) in actions that are not a state function.

    The second group of state officials alleged to have participated in state action includes state court judges, secretaries of state and state attorney's enforcing the states' ballot access laws. These individuals did perform state functions, but they have qualified immunity to do so. Thus, individuals and their lawyers who filed the challenges to the Plaintiffs' ballot access petitions did not participate with them in a state action reviewable under 42 U.S.C. § 1983 by filing those challenges, as described in Defendant McAuliffe's initial memorandum at 6-10 that cited cases showing that Plaintiffs have failed to allege state action.  Plaintiffs did not respond to that part of Defendant McAuliffe's memorandum.

## CONCLUSION

In view of defendant McAuliffe's opening memorandum and this memorandum, Plaintiffs' Complaint should be dismissed.

April 28, 2008                                             Respectfully submitted,


                                                           _____/s/_____
                                                           Joseph E. Sandler
                                                           D.C. Bar No. 255919
                                                           John Hardin Young
                                                           D.C. Bar No. 190553
                                                           Stephen E. Hershkowitz
                                                           D.C. Bar No. 282947

                                                           SANDLER, REIFF & YOUNG, P.C.
                                                           300 M Street, S.E., Suite 1102
                                                           Washington, D.C. 20003
                                                           (202) 479-1111
                                                           (202) 479-1115 (facsimile)
                                                           young@sandlerreiff.com


                                                           Attorneys for Defendant
                                                           Terry McAuliffe