# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

RALPH NADER *et al.*,                                  :
                                                       :
                Plaintiffs,           :        Civil Action No.:        08-0428 (RMU)
                                                       :
                v.                    :        Document Nos.:           47, 48
                                                       :
TERRY MCAULIFFE *et al.*,                              :
                                                       :
                Defendants.           :

## MEMORANDUM OPINION

### GRANTING THE DEFENDANTS' MOTIONS TO DISMISS THE PLAINTIFFS' AMENDED COMPLAINT

## I. INTRODUCTION

This matter is before the court on the motions to dismiss filed by defendants Terry McAuliffe, former Chairman of the Democratic National Committee ("DNC"), and Steven Raikin, Director, Treasurer and Secretary of a political organization called the Ballot Project. The plaintiffs – Ralph Nader, his former running mate Peter Camejo and six of their supporters – brought the instant suit and many others following Nader's unsuccessful presidential bid in 2004. They claim that the defendants committed conspiracy, abuse of process, malicious prosecution and violations of the United States Constitution[1] and 42 U.S.C. § 1983.  The defendants have moved to dismiss.  Because the court's dismissal of the plaintiffs' claims in Civil Action No. 07-2136 bar the state law claims raised in this action under the doctrine of res judicata, the court grants the defendants' motions to dismiss those claims.  And because the court rejects the plaintiffs' allegation that the defendants acted "under color of state law" as required for a § 1983 claim, the court grants the defendants' motions to dismiss the plaintiffs' federal claims.

---

[1]     Specifically, the plaintiffs allege that the defendants violated the Qualifications Clause and the First and Fourteenth Amendments.  Am. Compl. ¶¶ 252-257.

## II.  FACTUAL & PROCEDURAL BACKGROUND

The facts giving rise to the plaintiffs' claims have been set forth in greater detail in several prior opinions.  *See Nader v. Democratic Nat'l Comm.*, 2008 WL 5273109, at *1-*2 (D.D.C. Dec. 22, 2008); *Nader v. Democratic Nat'l Comm.*, 555 F. Supp. 2d 137, 144-46 (D.D.C. 2008); *Nader v. McAuliffe*, 549 F. Supp. 2d 760, 761-62 (E.D. Va. 2008).  In short, the plaintiffs allege that supporters of the Kerry-Edwards 2004 campaign "presided over a nationwide conspiracy to suppress voter choice during the 2004 General Election" by filing ballot eligibility complaints to undermine Nader's candidacy.  Pls.' Opp'n to Defs.' Mots. to Dismiss ("Pls.' Opp'n") at 3-4.  To rectify the alleged violations of state and federal law, the plaintiffs brought suit in this court, in the Superior Court of the District of Columbia and in the United States District Court for the Eastern District of Virginia against various individuals associated with the Democratic ticket.

More specifically, the plaintiffs filed suit in the D.C. Superior Court against the DNC and three DNC officials, Kerry-Edwards 2004, John Kerry individually, Reed Smith LLP ("Reed Smith"), the Ballot Project and two Ballot Project officials, America Coming Together ("ACT") and the Service Employees International Union ("SEIU"), alleging conspiracy, abuse of process, malicious prosecution and violations of 42 U.S.C. § 1983 and the Constitution.  The defendants removed the action to this court, where it was docketed as Civil Action No. 07-2136.  The plaintiffs then amended their complaint and removed the federal claims, leaving only the allegations of civil conspiracy, abuse of process and malicious prosecution.  *See* Am. Compl., *Nader v. Democratic Nat'l Comm.*, 555 F. Supp. 2d 137 (No. 07-2136).  On May 23, 2008, the court dismissed Civil Action No. 07-2136, determining that it lacked jurisdiction to consider the

2

plaintiffs' malicious prosecution claims that directly attacked prior state court judgments, and

that the First Amendment barred the plaintiffs' remaining claims.  *Nader v. Democratic Nat'l*

*Comm.*, 555 F. Supp. 2d at 145.

The day after the plaintiffs filed suit in the D.C. Superior Court, they filed the instant

complaint against defendants McAuliffe and Raikin in the Eastern District of Virginia.[2]  The

amended complaint in this action, which is nearly identical to the original complaint in Civil

Action No. 07-2136 save for the identities of the defendants, *compare* Compl. *with* Compl.,

*Nader v. Democratic Nat'l Comm.*, 555 F. Supp. 2d 137 (No. 07-2136), was later transferred

from the Eastern District of Virginia to this court, *see* Mem. Op. (Mar. 7, 2008) (granting the

defendants' motion to transfer venue to this court).  Finally, after this court dismissed the

plaintiffs' amended complaint in Civil Action No. 07-2136, the plaintiffs filed Civil Action No.

08-0963 against the DNC, Kerry-Edwards 2004, John Kerry and Reed Smith in this court,

alleging conspiracy and violations of 42 U.S.C. § 1983 and the Constitution.  After determining

that its dismissal of Civil Action No. 07-2136 was res judicata as to the claims raised in Civil

Action No. 08-0963, the court dismissed the latter action on December 22, 2008.  *See generally*

*Nader v. Democratic Nat'l Comm.*, 2008 WL 5273109 (D.D.C. Dec. 22, 2008).

Defendants McAuliffe and Raikin have moved to dismiss the instant amended

complaint.[3]  With respect to the state law claims, they incorporate by reference the defendants'

---

[2]     Because the complaint filed in the Eastern District of Virginia bore the caption "In the Superior
Court of the District of Columbia," *see* Compl., the plaintiffs amended the complaint to correct
the caption, *see* Am. Compl.

[3]     Each defendant's motion to dismiss incorporates the other by reference.  *See* Def. McAuliffe's
Mot. to Dismiss ("McAuliffe Mot.") at 1; Def. Raikin's Mot. to Dismiss ("Raikin Mot.") at 2.

motions to dismiss in Civil Action No. 07-2136.  *See* Def. McAuliffe's Mot. to Dismiss Am.

Compl. ("McAuliffe Mot.") at 1; Def. Raikin's Mot. to Dismiss Am. Compl. ("Raikin Mot.") at

1.  And in support of their motions to dismiss the plaintiffs' federal claims, the defendants

contend that the claims fail to allege state action, *see* McAuliffe Mot. at 4-11; Raikin Mot. at 6-8;

fail to allege a constitutional violation, *see* McAuliffe Mot. at 11; are time-barred, *see* Raikin

Mot. at 8-10; and are conclusory, *see id.* at 10.  The court now turns to these arguments.

## III.  ANALYSIS

### A.  Legal Standard for Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint.  *Browning v.*

*Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  The complaint need only set forth a short and plain

statement of the claim, giving the defendant fair notice of the claim and the grounds upon which

it rests.  *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing

FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Such simplified notice

pleading is made possible by the liberal opportunity for discovery and the other pre-trial

procedures established by the Rules to disclose more precisely the basis of both claim and

defense to define more narrowly the disputed facts and issues."  *Conley*, 355 U.S. at 47-48

(internal quotation marks omitted).  It is not necessary for the plaintiff to plead all elements of his

prima facie case in the complaint, *Swierkiewicz v. Sonoma N.A.*, 534 U.S. 506, 511-14 (2002), or

"plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134,

136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, the plaintiff must allege "any set of facts consistent with the allegations." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-56, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief"); *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) (affirming that "a complaint needs *some* information about the circumstances giving rise to the claims"). While these facts must "possess enough heft to 'sho[w] that the pleader is entitled to relief,'" a complaint "does not need detailed factual allegations." *Twombly*, 127 S. Ct. at 1964, 1966. In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 40 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242. The court's resolution of a Rule 12(b)(6) motion represents a ruling on the merits with res judicata effect. *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).

## B. The Court Grants the Defendants' Motions to Dismiss
## Counts I and II of the Amended Complaint

### 1. Legal Standard for Res Judicata

"The doctrine of res judicata prevents repetitive litigation involving the same causes of action or the same issues." *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983). Res judicata has two distinct aspects – claim preclusion and issue preclusion (commonly known as collateral estoppel) – that apply in different circumstances and with different consequences to the litigants. *NextWave Pers. Commc'ns, Inc. v. Fed. Commc'ns Comm'n*, 254 F.3d 130, 142 (D.C. Cir. 2001); *Novak v. World Bank*, 703 F.2d 1305, 1309 (D.C. Cir. 1983). Under claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Drake v. Fed. Aviation Admin.*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Under issue preclusion or collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Allen*, 449 U.S. at 94). In short, "claim preclusion forecloses all that which might have been litigated previously," while issue preclusion "prevents the relitigation of any issue that was raised and decided in a prior action." *I.A.M. Nat'l Pension Fund*, 723 F.2d at 949; *Novak*, 703 F.2d at 1309. In this way, res judicata helps "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and [] prevent serial forum-shopping and piecemeal litigation." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981); *see also Allen*, 449 U.S. at 94.

6

Because "res judicata belongs to courts as well as to litigants," a court may invoke res judicata *sua sponte*. *Stanton v. D.C. Ct. of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997); *see also Tinsley v. Equifax Credit Info. Servs., Inc.*, 1999 WL 506720, at *1 (D.C. Cir. 1999) (per curiam) (noting that a district court may apply res judicata upon taking judicial notice of the parties' previous case).

### 2. The Res Judicata Doctrine Bars Counts I and II of the Amended Complaint

Presumably because the parties briefed the motions to dismiss in April 2008 – that is, before the court dismissed Civil Action No. 07-2136 on May 27, 2008 – the defendants did not raise res judicata as a bar to the plaintiffs' claims of conspiracy, abuse of process and malicious prosecution. *See generally* McAuliffe Mot.; Raikin Mot. All parties, however, agree that the claims raised in Civil Action No. 07-2136 are identical to the state law claims brought in Counts I and II of the instant action. *See* McAuliffe Mot. at 1; Raikin Mot. at 1; Pls.' Opp'n at 1-2. The court's dismissal of Civil Action No. 07-2136 was based on its determination that it lacked jurisdiction to consider the plaintiffs' malicious prosecution claims that directly attacked prior state court judgments and that the First Amendment barred the plaintiffs' remaining claims. *Nader v. Democratic Nat'l Comm.*, 555 F. Supp. 2d at 145. Because Counts I and II of the instant complaint are identical to the state law claims dismissed in Civil Action No. 07-2136, the court will not permit the parties to relitigate those claims here. *See I.A.M. Nat'l Pension Fund*, 723 F.2d at 949. Accordingly, the court grants the defendants' motions to dismiss Counts I and II of the amended complaint.

### C.  The Court Grants the Defendants' Motions to Dismiss Counts III and IV of the Amended Complaint

### 1.  Legal Standard for § 1983 Claims

Section 1983 creates a cause of action against

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983.  A plaintiff bringing a § 1983 claim "must allege both (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the defendant acted 'under color of' the law of a state, territory or the District of Columbia." *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)). Although § 1983 ordinarily does not create a cause of action related to the conduct of private parties, private conduct may be deemed to be "under color of state law" when it is "fairly attributable" to the state. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982).  This occurs in two circumstances: when private parties "conspire with state officials, and when they willfully engage in joint activity with a state or its agents." *Hoai*, 935 F.2d at 313.  A showing of state action required to demonstrate a violation of the Fourteenth Amendment encompasses a showing of action "under color of state law" for the purposes of § 1983. *LaRouche v. Fowler*, 152 F.3d 974, 988 n.18 (D.C. Cir. 1998).  Courts must adhere carefully to the dichotomy between state action and private action, as it "preserves an area of individual freedom by limiting the reach of federal law and federal judicial power." *Lugar*, 457 U.S. at 936.  Thus, a § 1983 claim brought against a private party cannot survive a motion to dismiss if the plaintiff fails to allege

that the defendant was engaged in state action or acted under color of state law.  *Hoai*, 935 F.2d at 312.

### 2. The Defendants Are Not State Actors and Did Not Act Under Color of State Law

The defendants move to dismiss Counts III and IV of the amended complaint – which allege conspiracy and violations of § 1983 and the Constitution – contending that they are not state actors and did not act under color of state law.  McAuliffe Mot. at 4-11; Raikin Mot. at 6-8.[4] The plaintiffs disagree, *see* Pls.' Opp'n at 8-14, arguing that their "allegations are sufficient to establish state action under a 'public function' test or a 'joint action' test," *id.* at 13.  The court now addresses each of these two theories.

First, the plaintiffs allege that the defendants "were engaged in a public function when they conspired, by and through the DNC and its state Democratic Party affiliates, to suppress voter choice in the 2004 presidential election by preventing a competing candidacy from gaining ballot access."  *Id.* at 4.  Noting that the "operative test" for whether a private party has engaged in a public function in this context is whether the party "exercise[d] power over the electoral process," the plaintiffs maintain that the defendants satisfied this standard by "exercis[ing] a unilateral power delegated by the State to challenge competing candidates," as well as by "engag[ing] in the public function of testing the candidates' qualifications for public office."  *Id.* at 11.

---

[4]   The defendants advance three other arguments in support of their motions to dismiss: first, they contend that the plaintiffs have failed to allege a constitutional violation because there is no constitutional right to be free of challenges to ballot access petitions, McAuliffe Mot. at 11; second, they assert that the plaintiffs' claims are time-barred, Raikin Mot. at 8-10; and third, they submit that the plaintiffs failed to plead with sufficient particularity their allegations of conspiracy, *id.* at 10.  As a result of its determination that the defendants' conduct is not actionable under § 1983 because it did not take place under color of state law, the court has no occasion to reach these contentions.

The defendants refute the plaintiffs' characterization, noting that "[f]iling challenges to ballot petitions . . . is not a function traditionally performed by the state or traditionally employing state powers;" to the contrary, state ballot access statutes give private citizens the right to file challenges of the sort that the defendants filed here.  Def. McAuliffe's Reply in Support of Mot. to Dismiss ("McAuliffe Reply") at 6.  Further, citing *Fulani v. McAuliffe*, a case brought against defendant McAuliffe by supporters of the Nader-Camejo ticket in 2004, the defendants argue that "to the extent that Plaintiffs accuse Defendants of using State election law to impede the Nader/Camejo candidacy and violate Plaintiffs' equal protection rights or right to vote, that claim fails as a matter of law" because "'merely resorting to the courts and being on the winning side of a lawsuit does not make a party' responsible for depriving a plaintiff of his rights." McAuliffe Mot. at 6 (quoting *Fulani v. McAuliffe*, 2005 WL 2276881 (S.D.N.Y. Sept. 19, 2005)).  In the defendants' view, the plaintiffs' true grievance is with the "fairness and constitutionality of the ballot access statutes," but that "is an issue for a different case."  *Id.*

As a preliminary matter, the court agrees with the defendants' observation that merely filing, and winning, a lawsuit does not give rise to a constitutional claim unless the plaintiff alleges that the judge presiding over the lawsuit was a co-conspirator or a joint actor with a private party.  *Dennis v. Sparks*, 449 U.S. 24, 28 (1980).  The plaintiffs make no such allegation; therefore, to the extent that the plaintiffs' reliance on the "public function" test stems from the defendants' appeal to the courts, *see, e.g.*, Pls.' Opp'n at 7 (declaring that the defendants "conspired to prevent Mr. Nader and Mr. Camejo from running for public office . . . and to deny Plaintiff-voters the choice of voting for them, by . . . wag[ing] a nationwide assault of groundless and abusive litigation"), their § 1983 claim fails.  Further, it is well-settled that a public function

"is not simply one 'traditionally employed by governments,' but rather one 'traditionally exclusively reserved to the State.'" *LaRouche*, 152 F.3d at 990 (quoting *Flagg Bros. v. Brooks*, 436 U.S. 149, 157 (1978)). The plaintiffs offer no facts that plausibly suggests that filing ballot access challenges is a function "traditionally exclusively reserved to the States." *See Twombly*, 127 S. Ct. at 1965 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (stating that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'")).[5] Moreover, the fact that private citizens may file challenges under the ballot access statutes[6] is antithetical to the assertion that doing so is a function traditionally exclusively reserved to the States. As a result, the court rejects the plaintiffs' assertion that the defendants engaged in an exclusively public function by filing challenges under the state ballot access statutes.

In addition to arguing that the defendants are liable under § 1983 based on a "public function" theory, the plaintiffs also contend that "[a] finding of state action . . . is further justified by the joint participation [in the defendants' alleged conspiracy by] state officials in several states." Pls.' Opp'n at 13. They cite eight specific acts of state officials in Illinois, New Mexico, Oregon, Pennsylvania, the District of Columbia and West Virginia that, in their view,

---

[5] The plaintiffs make much of the fact that the act of conducting and regulating an election has been held to be an exclusively public function, Pls.' Opp'n at 10; *see also Flagg Bros. v. Brooks*, 436 U.S. 149, 158 (1978), but because the allegedly unconstitutional conduct here consisted of filing challenges to eligibility for office rather than actually conducting or regulating an election, that authority is not on point.

[6] Although the pleadings do not provide the text of all of the state ballot access statutes under which the defendants challenged the Nader candidacy, they cite two such statutes as examples, one of which provides that "[a]ny legal voter . . . having objections to any certificate of nomination or nomination papers or petitions filed, shall file an objector's petition [with] the State Board of Elections," 10 ILL. COMP. STAT. 5/10-8, and the other of which places no limit on who may object to a nomination paper or petition, *see* 25 PA. STAT. ANN. § 2937.

demonstrate that the defendants were engaged in joint action with state officials and can therefore be held liable under § 1983. *Id.* at 4-6, 13.

The defendants counter that although the plaintiffs argue that the defendants engaged in joint activity with state officials, they fail to name any state actors as defendants or as non-defendant co-conspirators. Def. Raikin's Reply in Support of Mot. to Dismiss at 4. Further, the defendants note that the state officials the plaintiffs identify "fall into two categories: (1) employees of state legislatures who assisted the alleged co-conspirators to draft ballot access challenges, and (2) state court judges, secretaries of state and state attorneys with responsibility to see that the state's statutes were enforced." McAuliffe Reply at 8. As to the former category, the defendants aver that the employees of state legislatures who helped draft ballot access challenges did not lend the imprimatur of the state to the ballot access challenges. *Id.* at 8-9. And as to the latter, while the defendants concede that the state officials performed a state function by enforcing the states' ballot access laws, they submit that these officials' actions are protected by qualified immunity. *Id.* at 9.

A private party can be held liable under § 1983 when he or she conspires or acts in concert with state actors. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 & n.6 (1982) (contrasting cases in which the Supreme Court upheld § 1983 suits based on the joint activity principle with cases in which it declined to apply the principle because the state officials' role in the conduct was not sufficiently prominent); *see also Adickes*, 398 U.S. at 152 (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)) (explaining that "[t]o act 'under color' of law does not require that the accused be an officer of the State[, because] [i]t is enough that he is a willful participant in joint activity with the State or its agents"). Here, despite advancing vague assertions that the

12

defendants engaged in a "conspiracy that involved the State . . . and which implicates the State," Pls.' Opp'n at 4, and accusing state actors of "engag[ing] in acts that furthered Defendants' conspiracy," *id.* at 13, the plaintiffs do not contend that state officials entered into a conspiracy with the defendants to violate the plaintiffs' constitutional rights, *see* Am. Compl. ¶¶ 25-46 (failing to list any state officials as alleged "non-defendant co-conspirators"); *cf. Adickes*, 398 U.S. at 152 (holding that private defendants could be held liable as state actors if they "reached an understanding" with state officials to deny the plaintiffs' constitutional rights); *Hoai*, 935 F.2d at 313 (rejecting the plaintiff's claim that the defendant acted under color of state law because the plaintiff failed to allege that the defendant conspired with state officials).  Nor do they "identify any facts that are suggestive enough to render a . . . conspiracy plausible." *Twombly*, 127 S. Ct. at 1965.  As a result, the court rejects the plaintiffs' assertion that the defendants acted in concert with state actors.

Furthermore, although the plaintiffs acknowledge that a key factor in the joint action analysis is whether the private conduct received the imprimatur of the state, *see Blum v. Yaretsky*, 457 U.S. 991, 1003 (1982); *Franz v. United States*, 707 F.2d 582, 594 n.45 (D.C. Cir. 1983), they fail to articulate how the defendants' conduct here received the public imprimatur of the state. As the defendants correctly point out, the public officials who were involved in the ballot access challenges – state court judges, secretaries of state and state's attorneys – are shielded from liability.  *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983").  And the sole remaining allegation on which the plaintiffs' joint activity theory rests – that some individuals employed by state legislatures assisted in drafting ballot access challenges – fails to establish "a

13

sufficiently close nexus between the State and [the defendant] . . . so that the action of the latter may be fairly treated as that of the State itself." *Blum*, 457 U.S. at 1004 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974) (affirming the dismissal of the complaint because the defendant's conduct did not constitute state action)); *see also Griffin v. Maryland*, 378 U.S. 130, 135 (1964) (noting that "[i]f an individual is possessed of state authority *and purports to act under that authority*, his action is state action") (emphasis added).  Accordingly, the court rejects the plaintiffs' claim that the defendants' conduct is actionable under § 1983 and grants the defendants' motions to dismiss Counts III and IV of the amended complaint.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendants' motions to dismiss the plaintiffs' amended complaint.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 7th day of January, 2009.

RICARDO M. URBINA
United States District Judge

14